GREENBERG TRAURIG, LLP
IAN C. BALLON (SBN 141819)
REBEKAH S. GUYON (SBN 291037)
1840 Century Park East, Suite 1900
Los Angeles, CA 90067
Telephone: 310-586-7700
Facsimile: 310-586-7800
E-mail: *Ballon@gtlaw.com*
*GuyonR@gtlaw.com*

GREENBERG TRAURIG, LLP
DAVID S. BLOCH (SBN 184530)
101 Second Street, Suite 2200
San Francisco, CA 94105-3668
Telephone: 415-591-5110
Facsimile: 415-488-1178
E-mail: *BlochD@gtlaw.com*

Attorneys for defendant
BIGO Technology Limited

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BMG RIGHTS MANAGEMENT (US) LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>JOYY INC., a Delaware corporation; BIGO TECHNOLOGY LIMITED, a Delaware corporation, and DOES 1 through 25, inclusive,<br><br>Defendants. | Case No. 2:22-cv-01578-MCS-RAO<br><br>Assigned to Hon. Mark C. Scarsi<br><br>**DEFENDANT BIGO TECHNOLOGY LIMITED'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>(Filed Concurrently with [Proposed] Order)<br><br>Date: September 19, 2022<br>Time: 9:00 a.m.<br>Place: Courtroom 7C<br><br>Complaint Filed: March 9, 2022 |

1

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on September 19, 2022, at 9:00 a.m., in Courtroom 7C of the above-captioned Court, located at 350 W. 1st Street, Los Angeles, California 90012, Defendant BIGO Technology Limited ("BIGO" or "Defendant") will and hereby does move to dismiss Plaintiff BMG Rights Management (US) LLC's ("BMG" or "Plaintiff") Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) with prejudice.

This motion is based on this Notice, the accompanying Memorandum of Points and Authorities, all pleadings and filings in this matter, and upon such other oral or documentary materials as may be presented to the Court at or prior to the hearing on this Motion.

This motion is made following the conference of counsel pursuant to C.D. Cal. LR 7-3, which occurred on June 30, 2022 at 3:00 p.m.

DATED:                           GREENBERG TRAURIG, LLP

                          By   */s/ Ian C. Ballon*
                               Ian C. Ballon
                               Rebekah S. Guyon
                               David S. Bloch
                               Attorneys for Defendant BIGO Technology Limited

# **TABLE OF CONTENTS**

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................... 1

I.   INTRODUCTION ............................................................................................. 1

II.  FACTUAL BACKGROUND ............................................................................ 2

    A.   The Likee App ......................................................................................... 2
    B.   BMG And Its Claims Against The Likee App ........................................ 3

III. LEGAL STANDARD ....................................................................................... 4

IV.  ARGUMENT ..................................................................................................... 4

    A.   BMG Fails To State A Claim For Direct Copyright Infringement .......... 4
    B.   BMG Fails To State A Claim For Contributory Infringement ................ 6
    C.   BMG's State Law Claims Are Preempted By The CDA ......................... 9

        1.   The Likee App Is An Interactive Computer Service Provider ........ 9
        2.   The Videos Using The Works At Issue Are Uploaded By Third
            Parties .............................................................................................. 10
        3.   The Likee App Published Content Provided By Another
            Information Content Provider (Likee App users) ......................... 11

    D.   BMG's California Civil Code Section 980 Claim Fails ........................ 11

V.   CONCLUSION ................................................................................................ 13

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*A&M Records, Inc. v. Napster, Inc.*,
   239 F.3d 1004 (9th Cir. 2001) ............................................................................... 6

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................. 4

*Barnes*, 570 F.3d at 1101–1102 ............................................................................. 10, 11

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................. 4

*Davis v. Pinterest, Inc.*,
   No. 19-CV-07650-HSG, 2021 WL 879798 (N.D. Cal. Mar. 9, 2021) ............. 6, 7, 9

*Dyroff v. Ultimate Software Grp., Inc.*,
   934 F.3d 1093 (9th Cir. 2019) ......................................................................... 9, 10

*Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*,
   521 F.3d 1157 (9th Cir. 2008) ....................................................................... 10, 11

*Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*,
   9 F.4th 1167 (9th Cir. 2021) ............................................................................... 12

*Fox Broad. Co., Inc. v. Dish Network L.L.C.*,
   747 F.3d 1060 (9th Cir. 2014) ....................................................................... 1, 5, 6

*Harrington v. Pinterest, Inc.*,
   No. 5:20-CV-05290-EJD, 2021 WL 4033031 (N.D. Cal. Sept. 3, 2021) ............. 7

*Harrison v. Facebook, Inc.*,
   No. C 19-01547 JSW, 2019 WL 11343562 (N.D. Cal. July 2, 2019) .................. 5

*Long v. Dorset*,
   854 F. App'x 861, 863 (9th Cir. 2021) ................................................................. 6

*Luvdarts, LLC v. AT&T Mobility, LLC*,
   710 F.3d 1068 (9th Cir. 2013) ......................................................................... 1, 6, 7

*Park v. Thompson*,
   851 F.3d 910 (9th Cir. 2017) ................................................................................ 4

*Perfect 10, Inc. v. CCBill LLC*,
   488 F.3d 1102 (9th Cir. 2007) .............................................................................. 9

*Perfect 10, Inc. v. Giganews, Inc.*,
  847 F.3d 657 (9th Cir. 2017) ............................................................................. 4, 5, 6, 8, 9

*Ponderosa Twins Plus One v. Iheartmedia*,
  Inc., No. 16-CV-05648-VC, 2020 WL 3481737, at *1 (N.D. Cal. June 26, 2020) .... 12

*Sikhs for Justice, Inc. v. Facebook, Inc.*,
  144 F. Supp. 3d 1088 (N.D. Cal. 2015) ................................................................. 10, 11

*VHT, Inc. v. Zillow Grp., Inc.*,
  918 F.3d 723 (9th Cir. 2019) ............................................................................................. 5

*Zeran v. Am. Online, Inc.*,
  129 F.3d 327 (4th Cir. 1997) ........................................................................................... 11

**Federal Statutes**

17 U.S.C. § 501(a) ................................................................................................................. 4

47 U.S.C. § 230(c) ................................................................................................................. 9

47 U.S.C. § 230(f)(2) ............................................................................................................. 9

47 U.S.C. § 230(f)(3) ........................................................................................................... 10

**State Statutes**

Cal. Civ. Code § 980 ..................................................................................................... 11, 12

Cal. Civ. Code § 980(a)(2) ........................................................................... 2, 4, 9, 11, 12

**Rules**

Fed. R. Civ. P. § 12(b)(6) ..................................................................................................... 4

**TABLE OF AUTHORITIES**

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Likee is a mobile application that allows its hundreds of millions of users worldwide to create and upload original short form video content to share with a global community of users. Plaintiff BMG Rights Management (US) LLC ("BMG") concedes that it is Likee users—not defendant BIGO Technology Limited ("BIGO")—who "upload or link music from their personal music library" to accompany their original video content on the App. First Amended Complaint ¶ 29 ("FAC"). Yet BMG is seeking to impose broad infringement liability against BIGO, the alleged operator of the Likee App, for any video content that Likee users upload using BMG's alleged works without authorization, while refusing to identify a single video out of the hundreds of millions on the App that BMG contends infringes its rights. The law does not allow BMG to hold BIGO directly or contributorily liable for allegedly infringing musical works that its users upload to the App under these circumstances.

*First*, BMG fails to allege any volitional conduct by BIGO, a necessary element of a direct infringement claim in the Ninth Circuit. Rather, BMG concedes that it is Likee users, not BIGO, who create and upload the allegedly infringing content at issue. Ninth Circuit law is clear that passive, technical copying, which is all that BMG alleges, is insufficient to impose direct infringement liability. *Fox Broad. Co., Inc. v. Dish Network L.L.C.*, 747 F.3d 1060, 1067 (9th Cir. 2014).

*Second*, BMG's claim for contributory copyright infringement fails because BMG does not (and cannot) allege that BIGO had actual knowledge of any specific allegedly infringing video files on the Likee App. *Luvdarts, LLC v. AT&T Mobility, LLC*, 710 F.3d 1068, 1072 (9th Cir. 2013). It is simply not plausible to infer that BIGO has actual knowledge of the hundreds of millions of videos that Likee users upload to the app on a daily basis worldwide. Generalized knowledge that an application can be used to conduct infringement, which is all that BMG alleges, is insufficient to impose contributory liability for copyright infringement under Ninth Circuit law. Indeed, BMG appears to be

deliberately withholding exactly the information that the operators of the Likee App need to respond to infringement claims in good faith—identification of the specific allegedly infringing video files at issue.

*Third*, BMG's claim for violation of California Civil Code section 980(a)(2) fails because Section 230 of the CDA immunizes providers of interactive computer services, such as Likee, against liability under state law arising from content created by third parties.

*Fourth*, BMG's claim for violation of California Civil Code section 980(a)(2) fails because (1) the statute grants no right of public performance for sound recordings fixed prior to 1972, and (2) BMG fails to allege that the pre-1972 sound recordings at issue in the First Amended Complaint were unpublished.

Accordingly, BIGO respectfully requests that the Court dismiss BMG's First Amended Complaint with prejudice.

## II. FACTUAL BACKGROUND

### A. The Likee App

BMG's claims arise from the Likee social media application (the "Likee App") where "[u]sers post videos of themselves doing dances, completing 'challenges,' or short attempts at comedy." *See* FAC ¶ 27. The Likee App is designed to foster positivity amongst its community of global users. FAC ¶ 24.

When Likee App users create their original shortform video content, the users can select music to accompany their video from a library available on the App, or upload music stored locally on their personal devices (for example, on their personal iTunes) to accompany their original video content. FAC ¶ 29.

BMG contends that musical content used on the App that is the subject of a license is labeled as "licensed music," which BMG argues demonstrates that BIGO has "actual knowledge" that the use of BMG works by Likee users is unauthorized because the videos using the works do not label the music as "licensed." FAC ¶ 44. But that allegation does not plausibly allege knowledge by BIGO because all that designating a work as "licensed" demonstrates is that it is licensed, not that unlicensed works are infringing, as opposed to

original pieces of music or music in which Likee users (not BIGO) own the license. Moreover, simply because a user uploads a piece of music that is not allegedly licensed by BIGO does not mean that BIGO has actual knowledge of the content or its allegedly unauthorized nature, especially given the hundreds of millions of Likee users who upload original video content to the App on a daily basis. FAC ¶ 25.

### B.    BMG And Its Claims Against The Likee App

BMG alleges that it is the copyright owner to over three million musical works. FAC ¶ 1. BMG contends that an unidentified number of its allegedly copyrighted musical works are used by Likee users to accompany their original shortform video content on the App without BMG's permission. FAC ¶ 50. However, BMG concedes that it is Likee users—not BIGO—who "upload or link music from their personal music library" to accompany their videos and then publish their videos to share with their friends. *See* FAC ¶ 29.

Although BMG alleges it "promptly notified BIGO of its wrongful conduct in October of 2020," and lists several musical works that it claims to own that are used on the Likee App without BMG's authorization, BMG does not allege that it has ever provided BIGO notice of any specific videos out of the hundreds of millions uploaded to the Likee App on a daily basis that use BMG works without permission. FAC ¶ 45; *see generally* FAC (devoid of any factual allegations that BIGO knew or had reason to know of specific acts of infringement concerning its alleged copyrighted songs). Rather, it appears that this is a case about *one* user account ("HouseofBrooklyn") that has allegedly used *one* work owned by BMG ("Nevermind" by Nirvana), FAC ¶ 41, but BMG has not even identified a single video uploaded by HouseofBrooklyn that uses that one song or any other content owned by BMG without permission. *See* FAC ¶¶ 41-42. BMG is deliberately obstructing the ability for the operators of the Likee App to remove any allegedly infringing content in good faith, choosing instead to file this lawsuit claiming that musical works owned by BMG (of which it only identifies a handful, FAC ¶ 50) are allegedly infringed by an unidentified number of the hundreds of millions of Likee users worldwide.

Nonetheless, BMG contends that the Likee App is responsible for its users' allegedly unauthorized use of BMG's musical works, giving rise to claims against BIGO for (1) direct copyright infringement; (2) contributory copyright infringement; (3) violation of California Civil Code section 980(a)(2).

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows an attack on the pleadings for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

The determination of whether a complaint satisfies the plausibility standard is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Generally, a court must accept the factual allegations in the pleadings as true and view them in the light most favorable to the plaintiff. *Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017). But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678.

### IV. ARGUMENT

#### A. BMG Fails To State A Claim For Direct Copyright Infringement

BMG's first claim, direct copyright infringement, seeks to impermissibly hold BIGO liable for the conduct of others—specifically the users of the Likee App. BMG fails to plausibly allege any volitional conduct by BIGO in connection with alleged infringement conducted by its users. This claim, therefore, must be dismissed.

To state a claim for direct copyright infringement, a plaintiff must allege (1) ownership of a valid copyright, and (2) violation by the alleged infringer of at least one of the exclusive rights granted to copyright owners under the Copyright Act. 17 U.S.C. § 501(a); *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 666 (9th Cir. 2017).

Additionally, a plaintiff must demonstrate causation, also known as volitional conduct. *Perfect 10*, 847 F.3d at 666. In other words, BMG is required to plead facts showing that BIGO, and not the users of the Likee App, is the "direct cause" of any infringement of BMG's alleged copyrights. *See, e.g.*, *Harrison v. Facebook, Inc.*, No. C 19-01547 JSW, 2019 WL 11343562, at *1 (N.D. Cal. July 2, 2019), *aff'd*, 816 F. App'x 228 (9th Cir. 2020) ("To assess whether the provider has engaged in an infringing act, the court must determine whether the provider has engaged in affirmative, volitional conduct that violates the Copyright Act.").

BMG's claim for direct copyright infringement is based upon the allegations that "Likee allows users to upload or link music from their personal music library, such as iTunes to videos," FAC ¶ 29; the "unauthorized use includes but is not limited to publishing video content featuring the works," FAC ¶ 53; and the Likee App "copies the underlying copyrighted material and directly publishes the copy on the [App]," FAC ¶ 32. These allegations fall short of plausibly alleging volitional conduct under Ninth Circuit law.

First, the Ninth Circuit has expressly declined to find direct infringement where, as here, an online service provider is merely a passive host of allegedly infringing material. *See, e.g.*, *Fox Broadcasting*, 747 F.3d at 1067 (finding that "operating a system used to make copies at the user's command does not mean that the system operator, rather than the user, caused copies to be made."). "Passive" activities include the "automatic copying, storage, and transmission of copyrighted materials." *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 732 (9th Cir. 2019) ("courts have found no direct liability where an online system 'responds automatically to users' input . . . without intervening conduct' by the website owner. Under these conditions, courts have analogized online facilities, like Internet service providers, to a copy machine owner, who is not liable, '[w]hen a customer duplicates an infringing work.'" (citation omitted); *see also id.* (finding no volitional conduct because it was the website's users that "selecte[d] images to add to their personal boards and instigated the automatic caching process by saving a particular image." (internal quotation marks omitted)).

For example, in *Long v. Dorset*, the Ninth Circuit recently held that the plaintiff failed to state a claim for direct infringement against Facebook because the facts pleaded did not "assert that the 'distribution [of the copyrighted material did] not happen automatically'" or that the defendant "exercised control, selected any material for upload, download, transmission, or storage; or instigated any copying, storage, or distribution." 854 F. App'x 861, 863 (9th Cir. 2021) (quoting *Perfect 10*, 847 F.3d at 669–670).

As in *Long*, BMG expressly alleges that it is the Likee App users who "upload or link music from their personal music library" that BMG contends infringes its rights. FAC ¶ 29. Even the technical copying that BMG alleges occurs in the Likee App when users upload music from their personal devices, *see* FAC ¶ 29, constitutes nothing more than "operating a system used to make copies at the user's command," which the Ninth Circuit has rejected as insufficient to liability for direct copyright infringement. *Fox Broadcasting*, 747 F.3d at 1067.

### B. BMG Fails To State A Claim For Contributory Infringement

BMG's claim for contributory copyright infringement fails because BMG does not allege that BIGO had knowledge of any *specific acts* of infringement. Rather, BMG has chosen to file suit by identifying itself as the owner of over "three million" musical works that it claims are broadly infringed by users of the Likee App, but BMG fails to identify which (if any) of its alleged three million works are infringed in which (if any) of the hundreds of millions of videos uploaded to the App by Likee users. These allegations are insufficient to state a claim for contributory infringement as a matter of law.

To state a claim for contributory copyright infringement, the plaintiff must allege (1) the defendant knew of direct infringement, and (2) they either induced, caused, or materially contributed to the infringing conduct. *Luvdarts, LLC v. AT&T Mobility, LLC*, 710 F.3d 1068, 1072 (9th Cir. 2013). In an online context, "actual knowledge of specific acts of infringement is required" for the operator to be liable for contributory copyright infringement. *Davis v. Pinterest, Inc.*, No. 19-CV-07650-HSG, 2021 WL 879798, at *3 (N.D. Cal. Mar. 9, 2021) (quoting *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004 (9th

Cir. 2001)). Even if constructive knowledge was sufficient to state a claim for contributory copyright infringement against an online provider, the plaintiff must allege the defendant knew or had reason to know of the *specific acts* of infringement. *See id.* at *3; *Harrington v. Pinterest, Inc.*, No. 5:20-CV-05290-EJD, 2021 WL 4033031, at *4 (N.D. Cal. Sept. 3, 2021) ("Harrington identifies two specific examples of his photographs appearing on Pinterest ... [however] Harrington does not allege that he ever notified Pinterest about these two instances of alleged infringement or any other instances of infringement of his other Works.").

But BMG fails to allege that BIGO had knowledge of any specific user uploads that actually infringe BMG's rights. Even assuming that the FAC, which fails to identify any specific user content that infringes BMG's rights, were to confer knowledge on BIGO of specific acts of infringement, notice of infringement that is only provided for the first time in a complaint is insufficient to find a defendant contributorily liable. *See, e.g.*, *Harrington*, 2021 WL 4033031, at *4. Similarly, BMG's theory that BIGO should have known about infringement because the App allows users to upload music from their personal devices, FAC ¶ 29, is nothing more than an allegation of "generalized knowledge by the [defendant] of the possibility of infringement," which the Ninth Circuit has rejected as insufficient to impose liability for contributory infringement. *Ludvarts*, 710 F.3d at 1072 ("[M]ore than a generalized knowledge by the [defendant] of the possibility of infringement" is required to allege contributory infringement.).

For similar reasons, BMG fails to state a claim for contributory infringement based on alleged "willful blindness." "To allege willful blindness, Plaintiff must allege that Defendant (1) subjectively believed that infringement was likely occurring on [its website] and that [it] (2) took deliberate actions to avoid learning about the infringement." *Davis*, 2021 WL 879798, at *3 (N.D. Cal. Mar. 9, 2021 (quoting *Luvdarts, LLC*, 710 F.3d at 1073). However, willful blindness "still requires allegations that Defendant was willfully blind to the *specific instances* of infringement at issue in the case, and not just to copyright infringement generally." *Id.* (emphasis added). As discussed above, BMG does not allege

that it notified BIGO of any *specific videos* infringing its works in its initial October 5, 2020 communication. Nor does BMG allege in the FAC specific videos that allegedly infringe its rights, as opposed to a handful of works that BMG alleges are infringed (FAC ¶ 50), or a single account containing thousands of videos (none of which BMG alleges in particular is infringing (FAC ¶ 41), which is not enough to give BIGO notice of alleged infringement on the App. Indeed, BMG appears to be purposefully failing to identify which (if any) specific user-uploaded videos infringe which (if any) of BMG's alleged works, which is exactly the information that an operator of a service with hundreds of millions of global users needs to respond to infringement claims in good faith. Instead, BMG has withheld this information to attempt to obtain a litigation advantage, which the law does not allow.

Finally, the allegation that BIGO has knowledge of unauthorized works because some works are identified as "licensed" is implausible. FAC ¶ 44. Even assuming that some users uploaded music from their personal devices to accompany their own original video content, it is simply implausible that BIGO would have actual knowledge of any allegedly infringing nature of those works, given that the App has hundreds of millions of users who upload videos on a daily basis. FAC ¶ 44. Failing to affix a "licensed" title to a user-uploaded musical work only denotes that the work is not subject to a license owned by the operators of the Likee App, and nothing more. Such works are likely original content created by Likee users or the subject of a license that a user holds, but the fact that BIGO does not itself own a license in user-uploaded musical works does not mean that BIGO knows the works are (1) copyrighted by other unidentified third-parties and (2) used without permission.

For example, in *Perfect 10, Inc. v Giganews, Inc.*, 847 F.3d 657 (9th Cir. 2017), the Ninth Circuit held that allegations that Giganews "offers 25,000 terabytes of copyrighted materials without permission" and "advertises that it does not keep track of subscriber downloads, effectively encouraging infringement" did not suggest that Giganews "clearly expressed an intent to promote infringement or took "affirmative steps to foster

infringement." *Giganews*, 847 F 3d. at 672. As in *Giganews*, the fact that the Likee App allows users to upload musical works in which BIGO lacks a license does not indicate that by doing so, BIGO knew the users lacked authority to use the works or intended to encourage their unauthorized use. These allegations "merely suggest that Defendant operated its website indifferent to the risk of copyright infringement generally and indifferent to the difficulty copyright holders may have in identifying misuse of their works," but not that BIGO is contributorily liable for Likee users' unauthorized uses. *Davis*, 2021 WL 879798, at *3.

### C. BMG's State Law Claims Are Preempted By The CDA

BMG's claim against BIGO for alleged violation of California Civil Code section 980(a)(2) is barred by the Communications Decency Act ("CDA"). Section 230 of the CDA immunizes providers of interactive computer services, such as the Likee App against liability under state law arising from content created by third parties.

Specifically, Section 230 provides: "No provider . . . of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c). It "establish[es] broad federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service." *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1118 (9th Cir. 2007) (internal quotation marks omitted). In the Ninth Circuit, "[i]mmunity from liability exists for (1) a provider . . . of an interactive computer service (2) whom a plaintiff seeks to treat, under a state law cause of action, as a publisher or speaker (3) of information provided by another information content provider." *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1097 (9th Cir. 2019) (internal quotation marks omitted).

#### 1. The Likee App Is An Interactive Computer Service Provider

The Likee App is undoubtedly a provider of an interactive computer service. The CDA defines "interactive computer service" as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server." 47 U.S.C. § 230(f)(2). The Ninth Circuit "interprets the term 'interactive computer

service' expansively." *Dyroff*, 934 F.3d at 1097. Not surprisingly, courts routinely hold that services like the Likee App meet this definition. *See e.g.*, Barnes, 570 F.3d at 1101 ("Yahoo is a provider of an interactive computer service"); *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC,* 521 F.3d 1157, 1162 n.6 (9th Cir. 2008) (roommate-matching website); *Sikhs for Justice, Inc. v. Facebook, Inc.*, 144 F. Supp. 3d 1088, 1093 (N.D. Cal. 2015) (Facebook).

Here, BMG alleges that the Likee App is a video-based online social media platform where hundreds of millions of individual users around the world can upload and access third-party content. *See* FAC ¶¶ 24–25. The first requirement for Section 230(c)(1) immunity is thus met.

### 2. The Videos Using The Works At Issue Are Uploaded By Third Parties

To meet the second requirement, the content uploaded onto the interactive computer service's platform must come from an "information content provider" other than the Likee App. An "information content provider" is broadly defined as "any person or entity that is responsible, in whole or in part, for the creation or development" of the content at issue. 47 U.S.C. § 230(f)(3). As alleged by BMG, Likee App users independently "post videos of themselves doing dances, completing 'challenges,' or short attempts at comedy." *See* FAC ¶ 27. BMG does not allege that the Likee App creates or develops any of the alleged infringing videos on the platform; rather, BMG's claims arise entirely out of content created by Likee App users. *See* FAC ¶¶ 24–29. The third-party content created by Likee App users and then uploaded onto the Likee App thus satisfies the second requirement for application of Section 230(c)(1) immunity. *See, e.g.*, *Dyroff*, 934 F.3d at 1097–98 (finding the second requirement met where the defendant "did not create or develop information (or content)" but merely "published information created or developed by third parties.").

### 3. The Likee App Published Content Provided By Another Information Content Provider (Likee App users)

The third requirement for immunity is met if a plaintiff "seek[s] to hold a service provider liable for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone or alter content." *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997) (quoted with approval in *Barnes*, 570 F.3d at 1102 (9th Cir. 2009)). "[W]hat matters is not the name of the cause of action" but rather "whether the cause of action inherently requires the court to treat the defendant as the 'publisher or speaker' of content provided by another." *Barnes*, 570 F.3d at 1101–1102. "[A]ny activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230." *Roommates.com*, 521 F.3d at 1170-1171.

Here, BMG seeks to hold BIGO liable for content that was created, developed, and published on the Likee App by its third-party users. In other words, BMG requests that this Court treat BIGO as the publisher of the content that was provided by Likee App users. BMG does not and cannot plead that BIGO created the content at issue in this case. It is clear then, that the third requirement for Section 230(c)(1) immunity is met.

Consequently, BIGO is immune from liability against BMG's state law claims for violation of California Civil Code section 980(a)(2) and the UCL. *See, e.g., Sikhs for Justice*, 144 F. Supp. 3d at 1095–96 ("The CDA bars all claims that seek to hold an interactive computer service liable as a publisher of third-party content.").

### D. BMG's California Civil Code Section 980 Claim Fails

BMG's fourth claim, violation of California Civil Code section 980(a)(2), fails because (1) the statute grants no right of public performance for sound recordings fixed prior to 1972, and (2) BMG fails to allege that the pre-1972 sound recordings at issue were unpublished.

***First***, under section 980(a)(2), "The author of an original work of authorship consisting of a sound recording initially fixed prior to February 15, 1972" has exclusive

ownership until 2047. However, there is no public performance right for a pre-1972 sound recording. *See Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, 9 F.4th 1167, 1177 (9th Cir. 2021) (overturning the district court's grant of summary judgment after finding that section 980 did not include a right of public performance).

Here, BMG's claims are primarily based on Likee App users including allegedly works owned by BMG in their videos, which are broadcast to other Likee App users. *See, e.g.*, FAC ¶ 28–29. Thus, the only right that BMG plausibly alleges was infringed is a right to public performance, *i.e.*, "a right to prevent others from publicly playing a sound recording." *See, e.g.*, *Ponderosa Twins Plus One v. Iheartmedia*, Inc., No. 16-CV-05648-VC, 2020 WL 3481737, at *1 (N.D. Cal. June 26, 2020). But as courts in this district have explained, a public-performance right has "never existed" under section 980. *See id.*; *see also Flo & Eddie*, 9 F.4th at 1177. Thus, to the extent BMG's section 980(a)(2) claim is based on a right to public performance, the claim fails.

**Second**, BMG fails to allege that the pre-1972 sound recordings were not published. "The 1982 amendment to California's copyright provision did not expand copyrights in sound recordings, and its drafters recognized that works lost state-law copyright protection if published before 1978." *Ponderosa Twins*, 2020 WL 3481737, at *1. Once a work is published, it is protectable only by federal copyright. *See id.* (finding that whatever copyrights did exist under California law were lost when [plaintiff] published his recordings.). Here, BMG fails to allege that the pre-1972 sound recordings at issue were not published. *See* FAC ¶¶ 72–77 (lacking any allegation regarding the works being unpublished). Consequently, BMG fails to state a claim under section 980.

## V.  CONCLUSION

Based on the foregoing, BIGO respectfully requests that the Court grant BIGO's Motion to Dismiss because BMG fails to state any claim for relief.

DATED: July 7, 2022                    GREENBERG TRAURIG, LLP

                                By     */s/ Ian C. Ballon*
                                       Ian C. Ballon
                                       Rebekah S. Guyon
                                       David S. Bloch
                                       Attorneys for Defendant BIGO Technology Limited