Gerard P. Fox (SBN 151649)
gfox@gerardfoxlaw.com
Brent J. Lehman (SBN 282149)
blehman@gerardfoxlaw.com
Gerard Fox Law P.C.
1880 Century Park East, Suite 1410
Los Angeles, California 90067
Telephone: (310) 441-0500
Facsimile: (310) 441-4447

*Attorneys for Plaintiff, BMG Rights Management*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BMG RIGHTS MANAGEMENT (US) LLC, a Delaware limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>JOYY INC., a Delaware corporation; BIGO TECHNOLOGY LIMITED, a Delaware corporation; and DOES 1 through 25, inclusive,<br><br>Defendants. | Case No.: 2:22-cv-01578-MCS-RAO<br><br>**THIRD AMENDED COMPLAINT FOR:**<br>**(1) DIRECT COPYRIGHT INFRINGEMENT**<br>**(2) INDIRECT COPYRIGHT INFRINGEMENT**<br>**(3) CONTRIBUTORY COPYRIGHT INFRINGEMENT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff BMG Rights Management (US) LLC alleges as follows:

## NATURE OF THE ACTION

1.  Plaintiff BMG is a worldwide music publisher and record label that represents hundreds of artists and songwriters and owns copyrights to over three million musical compositions and hundreds of thousands of sound recordings, and licenses those works in order to support artists and songwriters who depend on royalty payments to earn a living. When companies like Bigo and Joyy, Inc. exploit music for their own profit, its BMG's artists and songwriters that suffer most and are denied the ability to earn a living from their craft.

2.  Defendants Bigo and Joyy, Inc., are technology companies seeking to compete in a fast-paced world of social media, video, and online gaming. Unfortunately, the culture of social media start-up companies is to grow user engagement as fast as possible without any regard for copyrights, intellectual property, safety of users, or really any of the basic concerns a start-up should have for ensuring that the company grows quickly without facing legal ramification. Simply put, most ask for forgiveness after they have achieved financial success in lieu of asking for permission. For example, TikTok was widely criticized for its various violations of copyright and intellectual property rights during its quick rise to prominence. The business model seemed to be "grow as fast as possible and worry about the consequences later." Now, every new version of TikTok, started by cash-thirsty technology companies, attempts to emulate this same strategy.

3.  Bigo and Joyy, Inc. profit from the creation and operation of a new social media application called Likee.

4.  Likee – a rip-off version of TikTok – is a social media application based on user-generated short video content. As with all social media companies, Likee seeks to capitalize on subconscious – biological responses in the brain – to drive user engagement. Capitalizing on the "dopamine hit" generated by viewing desirable

content on the users' phones, Likee seeks to have users spending as much time as possible in the application, encouraging an addiction to social media.

5. Likee's content is driven by the music. As the Likee tutorials tell new users, music selection is key to obtaining popularity on the platform. Popularity, in turn, is all that matters to users on Likee. The entire point of the platform is for users to gain their brief moment in the spotlight and attempt to "go viral" with other users.

6. Unfortunately, Likee steals music from artists, songwriters, and publishing companies in attempt to drive revenue for the application without paying for the right to publish, perform, or disseminate the music. Every day, Likee users upload music to Likee for publication, performance, and dissemination -- without properly licensing the works -- in order to gain interaction from users.

7. In keeping with Bigo's attempt to copy TikTok, the Likee application makes no attempt to obtain the proper licenses for copyrighted materials in order to save money an attempt to grow and achieve market share in this highly competitive and highly profitable arena.

8. Bigo is aware that Likee blatantly rips off copyrighted materials. Representatives for the company have repeatedly put-off representatives from BMG in an attempt to stall negotiating proper licenses and brazenly continue their theft of artists' works. Bigo's representatives have specifically acknowledged that Bigo needs to negotiate a licensing deal with BMG and have gone so far as to confirm the use of the materials by US users. The communications are intended to stall and delay while portending to plead innocence for the lack of authorization. Yet, after a year of communication from BMG regarding the unauthorized use, Bigo has not offered to address their prior misdeeds, enter into a prospective license agreement or engage in good faith in any meaningful dialog.

/ / /

/ / /

/ / /

## JURISDICTION AND VENUE

9. This action arises under the Copyright Act of 1976, 17 U.S.C. § 101 *et seq.*, which creates a controversy under a federal question of law.

10. This Court has federal question jurisdiction under 28 U.S.C. §§ 1331, 1338(a).

11. Venue in this judicial district is proper under 28 U.S.C. §§ 1391(c) and 1400(a) in that this is the judicial district in which a substantial part of the acts and omissions giving rise to the claims occurred. Not only does Likee serve video content to users in the United States and the State of California, the creator of Likee (Bigo) boasts offices in Los Angeles. Indeed Bigo and Joyy, Inc. have substantial contact with the venue.

## PARTIES

12. Plaintiff BMG Rights Management (US) LLC (hereinafter "BMG") is a limited liability company organized under the laws of Delaware with its principal place of business in New York, New York.

13. Plaintiff is informed and believes that Defendant Bigo Technology Limited ("Bigo") is a Delaware Corporation with a principal place of business in Mapletree Business City Singapore. Bigo has business offices in Los Angeles and San Francisco, California and is the owner of the social media application, Likee. Plaintiff is further informed and believes that Defendant Bigo Technology is a subsidiary of Defendant Joyy, Inc.

14. Plaintiff is informed and believes that Defendant Joyy, Inc. is a Delaware Corporation with its principal place of business in Guangzhou, China. Joyy, Inc. is the parent company of Bigo, which has offices within the State of California, including Los Angeles and San Francisco.

15. The true names and capacities of all defendants sued herein as Does 1 through 25 (the "Doe Defendants") are unknown to Plaintiff, who therefore sues such defendants by fictitious names. If necessary, Plaintiff will seek leave of Court to

amend this Complaint to state their true names and capacities when the same have been ascertained. Plaintiff is informed and believes, and on that basis alleges, that the Doe Defendants direct, control, ratify, participate in, materially contribute to, profit from, induce, encourage, facilitate, and/or are the moving force behind the violations of Plaintiff's copyrights or are otherwise liable to Plaintiff as a result of their participation in all or some of the acts set forth hereinafter. Plaintiff is further informed and believes and therefore alleges that each of the Doe Defendants was the agent of at least one of the named defendants, and in doing the things alleged in this Complaint was acting within the course and scope of such agency, and/or acted in concert with at least one of the named defendants and are jointly and severally liable to Plaintiff with said named defendants.

## COMMON FACTUAL ALLEGATIONS

### A. BMG's Ownership of Copyrighted Material

16. Plaintiff BMG is a worldwide music publisher and record label that represents hundreds of artists and songwriters and owns copyrights to over three million musical compositions and hundreds of thousands of sound recordings, and licenses those works in order to support artists and songwriters who depend on royalty payments to earn a living (e.g., pay their mortgage, put their children through school and put food on the table). Artists, particularly those artists that no longer tour, reap significant revenue from the legitimate exploitation of their music, provided that such exploitation is obtained through proper authorization.

17. BMG has a grounded approach to representing the artists and songwriters under its care. BMG's approach is to put its artists and songwriters first. The partnership means BMG seeks to get the most value for their clients, rather than pure exploitation of music for its own gain. When companies like Bigo and Joyy, Inc. exploit unlicensed music for their own profit, its BMG's artists and songwriters that suffer most.

18. BMG's registered copyrights include but are not limited to the musical compositions and sound recordings to be identified through discovery (hereinafter the "Works").

19. BMG represents some of the biggest and most iconic artist and songwriters in the world as well as many that have not yet achieved superstardom and that depend on license fees and their royalties from BMG to get by. Collectively, these artists occupy valuable real estate across the spectrum of pop-culture and popular music. Their songs are recognizable and extremely marketable and those whose songs are not necessary as well known yet still deserve to be fairly compensated.

20. Music has always been intended to cultivate feelings of nostalgia, excitement, sadness, etc. in the listener. Music is the soundtrack to our lives. The feeling a listener gets when they listen to music is more than simply a thought in the brain. In fact, music creates a biological response the triggers to the release of dopamine to the brain, creating both positive and negative impacts on the brain.[1]

21. Social media companies understand the impact of this dopamine response as much or more than any other industry. In fact, digital media – including the major social media applications – has literally turned the general public into addicts for this dopamine response.[2] While music has always been part and parcel of pop culture, music is clearly now at the forefront of driving interaction and engagement with social media applications. With the rise in popularity of video content (rather than static content like photographs), music's role in driving user engagement, retention and ultimately monetization is ever increasing.

---

[1] "Dopamine Modulates the Reward Experiences Elicited by Music." – Ferreri, et al. Proceedings of the Nation Academy of Sciences of the United States of America. February 26, 2019; 116 (9) 3793-3798 (https://www.pnas.org/content/116/9/3793)

[2] "Constant Craving: How Digital Media Turned Us All Into Dopamine Addicts" – Jamie Waters. https://www.theguardian.com/global/2021/aug/22/how-digital-media-turned-us-all-into-dopamine-addicts-and-what-we-can-do-to-break-the-cycle

22. Social media companies actively work to serve users with the most engaging content in order to trap users and shape how they see the world.[3] Thus, there is a reason that these applications – such as Likee – serve users with content featuring music as the predominant feature. That is, without music, these applications cannot distinguish themselves or hope to prosper.

### B. Likee's Wrongful Use of Copyrighted Materials

23. Likee is a video-based social media application owned and operated by Defendant Bigo, a subsidiary of Joyy, Inc.

24. The application is not unique. Likee resembles the popular social media giant, TikTok. Likee is yet another attempt to capitalize on the ever-growing culture of seeking internet stardom and popularity. Essentially, Likee is attempting to capitalize on everyone's drive for their own personal 15 minutes of fame. Likee's selling point is "positivity" but the concept of encouraging users to post short videos, typically set to music, in an attempt to go viral, is the same.

25. According to Bigo, Likee has over 115 million "happy users" and has been download over 600 million times in 150 countries including the United States. The application boasts a world-wide appeal and many of those users reside in the United States as evidenced by Bigo's own monthly active user reports. Like most social media applications, Likee users can view content from anywhere in the world and users' content is thereby available to users from anywhere in the world. The global appeal of the application is part of the draw.

26. Likee's wrongful use of the Works is straightforward.

27. Likee is a platform for video content. The videos are short, ranging from 10-20 seconds of content. Users post videos of themselves doing dances, completing

---

[3] "Social-Media Algorithms Rule How We See the World. Good Luck Trying to Stop Them." – Joanna Stern https://www.wsj.com/articles/social-media-algorithms-rule-how-we-see-the-world-good-luck-trying-to-stop-them-11610884800

-7-

THIRD AMENDED COMPLAINT

"challenges," or short attempts at comedy. Likee promotes popular videos to users in an effort to keep users engaged with the application.

28. The use of music is a central feature for Likee users. The platform actively encourages users to upload video content to share with peers, friends, and strangers across the world. Users – mostly tweens and young adults – are encouraged to seek fame and popularity by "going viral."

29. Likee allows users to upload or link music from their personal music library, such as iTunes, to videos without regard for the rights of the underlying copyright holders. Likee then publishes the video worldwide on the platform. Users from anywhere in the world have access to videos and content created on the platform. Through this mechanism, Likee and thus its creators Bigo[4] know that copyright infringement is ongoing on the platform. For example, by creating a method to upload copyrighted music from iTunes Likee is specifically facilitating the copying and publication of music it knows is subject to copyright protection. Likee further knows that Defendants do not have authority to copy or publish the material globally. Yet, Defendants intentionally created mechanisms to facilitate, encourage, and directly copy and publish music – including the Works – without authorization.

30. Likee <u>does</u> have licenses for a limited amount of music from certain rights holders.[5] The use of licensed music is facilitated through an entirely different mechanism. Likee also specifically identifies songs for which it has a license to publish. Thus, Likee knows that other songs are published without proper license or authority. An overwhelming amount of music used on the application , is used without authority from the copyright holder or their authorized agents whether that is BMG or

---

[4] And Bigo's parent company Joyy, Inc.

[5] The Likee application has changed the designation of music between the time BMG filed its original Complaint and the First Amended Complaint. Recently, Likee has added a designation to indicate whether music is licensed when a user views a video.

other major content rights holders. Likee could easily prevent copyright infringement by disabling this feature that is specifically designed to facilitate the illegal use.

31.	Likee has a section of the platform called "Creator Academy" that teaches users how to create popular content. Likee tells users that "better music" will help them go viral. The reason for this is clear. Likee understands that music drives user sentiment more than any visual content. Music creates subconscious positive or negative associations for users interacting with the video. Music – more than the silly dance – drives the reaction to a video. Music, the soundtrack to our lives, is the driving force behind user engagement.

32.	Likee actively encourages and, in fact, instructs, users to use unlicensed music in their videos in order to gain popularity on the platform. The video regarding the use of music explains to users how to upload "your own saved music" to attach to a video. On information and belief, when users select this future, Defendants' application copies the underlying copyrighted material and directly publishes the copy on the application.

33.	Defendants do not have the right to publish the Works without a license and Likee does not avoid liability simply because the user uploads the music from their own device. Bigo and Joyy, Inc. similarly are well aware of this and use this tactic as a business strategy/business model in lieu of doing the right thing and incurring the requisite costs. Further, in the settings menu, Likee allows users to upload music to the platform "so other users can use them to record videos" – i.e., infringement begets infringement.

34.	Likee encourages and facilitates unauthorized use of the Works on its platform in multiple ways. First, Likee "promotes" popular videos using unlicensed music without regard for the rights of the artist or songwriters. Publishing these videos to other Likee users facilitates the unauthorized use of the Works and perpetuates the wrongful use. Second, Likee – through the advice in "Creator Academy" – tells users

that the best way to get their content promoted to other users is the use of unauthorized of the Works.

35. Likee intentionally covers up the fact that it is willfully publishing unauthorized works on the platform. Videos that include music for which Likee has (presumably) obtained a license identifies the name of the artist and song title on the bottom of the video and are now specifically identified as "licensed music." In the United States, unlicensed music is simply (yet disingenuously) identified as "Original Music." The music is not original. It is stolen. The Likee platform simply attempts to obfuscate the copyright violation. By way of example, if a Likee user posts a video using "The Magic Bomb" by Hoang Read, the artist and title is identified in the user's video. However, if a Likee user posts a video using music from an artist covered under the Works – such as popular U.S. recording artist under exclusive agreement with BMG – the video simply identifies the stolen music as "Original Music." Likee has boldly elected to pursue a business model of copyright theft and after going down that path anemically attempts to cover its tracks.

36. Likee's infringement of the Works occurs within the United States ("U.S.") and thus Bigo is subject to the laws and regulations of under the Copyright Act. Not only can U.S. based users access videos from users all over the world, but Likee users are served content based on their location. Most of the content served to Likee users based in the U.S. includes unlicensed copyrighted music from various uncompensated rightsholders, including BMG.

37. Bigo actually advertises the Likee social media platform in the United States. Bigo has made significant advertising efforts in the Los Angeles area including advertising the Likee application on the sides of local Metro buses. In other words, Bigo is intentionally seeking out new users in the Los Angeles market and likely has similar advertisements in other major metropolitan areas.

38. Joyy, Inc. and Bigo indeed profit from use of the Works.

39. Joyy, Inc. recently reported the company's net revenue increased by 21.7% year over year for the third quarter of 2021. Further, Joyy, Inc.'s gross profit margin improved to 32.4% in the same year over year period. Bigo's growing profits are the predominate factor for Joyy, Inc.'s increased revenue according to public reports. This includes an increase in users on the Likee platform, where Joyy, Inc. reported that a new incentive program for content creators drove growth by 7.1%.

40. Likee generates revenue for Bigo and Joyy, Inc. in a variety of ways, particularly through in-app purchases. Likee provides virtual currency called "beans" or "diamonds." Diamonds can be purchased for prices ranging from $.99 to $99.99. Though beans can be cashed out for real currency, the exchange rate is hardly 1-to-1. Obviously, Likee profits from these favorable terms.

41. The revenue generated from in-app purchases is driven in part by the unlicensed use of the Works. The primary purpose of the exchange of diamonds between users is to reward content creation on the platform. By way of example, a U.S. based user "HouseofBrooklyn" has 8.43 million fans and has received 5.82 million beans from users on the platform.[6] Due to her popularity, content created by "HouseofBrooklyn" is actively promoted by Likee and served to other users, even when the content is days or weeks old, which earns "HouseofBrooklyn" more notoriety, fame, and virtual currency. It appears that most of the content posted by "HouseofBrooklyn" includes unauthorized use of copyrighted material, including the Works. This includes instances where "HouseofBrooklyn" linked to music uploaded by other users using the methods described above. At least one video includes use of "Nevermind" by Nirvana, a song included in the Works.

42. Almost none of "HouseofBrooklyn"'s videos include spoken word or ambient sound. They all include the use of music (unwittingly for the dopamine hit). Her videos are the norm rather than exception. Most of the content served to users in

---

[6] User HouseofBrooklyn is a "Verified Creator" and the numbers cited are as of the filing of this Complaint.

the United States includes music rather than spoken word or ambient sound. The reason is clear: music drives engagement. If spoken word or ambient sound drove engagement, then Likee would promote these types of videos instead.

### C. Likee's Wrongful Use of Copyrighted Materials is Intentional.

43. Bigo and Joyy, Inc.'s infringement has always been willful. There is no colorable argument that Bigo had a good faith belief regarding the innocence of its conduct or was unaware that it facilitates infringement of copyrighted materials.

44. Likee is specifically designed to make it easy for users to upload unlicensed music to the platform. On information and belief, the Likee application copies and publishes the Works without license or authorization. Even if it did not, the only reason to have a separate conduit for selecting music from the user's iTunes account is to allow users to post content with music Bigo knows or should know that it does not have a license use. Now, the application specifically denotes which songs are properly licensed and which songs are not. Defendants have actual knowledge that the application illegally publishes copyrighted music – including the Works – without a license.

45. When BMG became aware of Bigo's unauthorized use of the Works, BMG promptly notified Bigo of its wrongful conduct in October of 2020.

46. Bigo's conduct toward BMG since October 2020 shows that Bigo has made a conscious business decision to continue its unauthorized use of the Works. Bigo's communication has repeatedly acknowledged that it does not have a license to use the Works and Bigo has at best only made half-hearted attempts to generally discuss the right to use the same. The communications merely served to delay and extend the timeframe for Likee to continue use of the Works without compensation.

47. Recently, a Federal Court found the exact same conduct as undisputed evidence of a defendant's willful infringement, finding the "[defendant] knowingly infringed thousands of Plaintiffs' copyrighted works over a period of several years, consciously and repeatedly making the business decision to continue its unauthorized

use of Plaintiffs' works." *See UMG Recordings v. Global Eagle Entm't, Inc.*, No 14-CV-3466, mem op. (C.D. Cal Mar. 31, 2016; adopted as final ruling on Apr. 20, 2016). The court ultimately found that "if [Defendants'] infringements were not willful, no infringements could ever be." *Id.*

48. Bigo has made the same decision. Bigo has collected money from Likee users "in anticipation that it would one day need to make amends for its unauthorized use of Plaintiffs' works, continued to attempt to negotiate licenses with Plaintiffs, and failed to successfully put any licenses in place for their use of Plaintiffs' works."

49. Bigo has willfully continued its unauthorized use of the Works. The use includes substantial contacts within the United States. As stated above, Likee boasts users in 150 countries, including the United States. As such, Bigo and Joyy, Inc. have caused damages in the million to BMG (and the artists it represents) through illegal use of the Works.

50. On information and belief, Defendants have published videos containing thousands of songs covered by the Works. Further discovery will undoubtedly uncover the use of thousands of songs by Likee. Even a cursory review of the Likee application limited to U.S. based users uncovered the improper use of songs contained in the Works including, but not limited to: "Nevermind;" "Locked Out of Heaven;" "Ms. Jackson;" "My Humps;" "I Like to Move It;" "All of Me;" "Happy Together;" "Iko, Iko;" and "Feliz Navidad."

51. Defendants were aware that the publication of these songs was improper and illegal at the time the songs were published. On information and belief, each use was published well after Plaintiff advised Defendants that their application was facilitating and actively encouraging unlicensed publication of copyrighted materials. Defendants have made no effort to cure the unlicensed use.

52. Defendants were aware of the infringing behavior on behalf of the Defendants and the users of the application.

53. On information and belief, Defendant Bigo investigated use of the Works on the Likee application and after the investigation Defendant Bigo and its key employees had actual knowledge of specific instances of infringement of the Works by its users.

## FIRST CLAIM FOR RELIEF: COPYRIGHT INFRINGEMENT
### (Plaintiff against Defendants Bigo Technologies and Joyy, Inc.)

54. Plaintiff realleges and incorporates by reference each of the allegations in the paragraphs set forth above.

55. Plaintiff owns the copyrights in the musical compositions and sound recordings, including songs identified in paragraph 48 as well as thousands more to be identified through discovery, which Defendants have infringed.

56. Plaintiff, or its predecessors in interest or their licensors, have registered the copyrights to the musical compositions and sound recordings included in the Works, including songs identified in paragraph 50 as well as thousands more to be identified through discovery, with the United States Copyright Office, or applied for such registration, prior to commencing this action.

57. Defendants have, without permission, reproduced, distributed, publicly performed (including by means of digital audio transmissions), and imported Plaintiff's musical compositions and sound recordings, including songs identified in paragraph 48 as well as thousands more to be identified through discovery. The unauthorized use includes but is not limited to publishing video content featuring the works without proper authorization of licenses for the use.

58. Defendants have infringed Plaintiff's exclusive rights to the sound recordings pursuant to 17 U.S.C. § 106 and § 602. Plaintiff has not authorized Defendants to use any of the Works.

59. Due to Defendants' acts of infringement, Plaintiff has suffered substantial damages to its business through failure to compensate Plaintiff for

exploitation of the works. Plaintiff has been harmed in an amount to be established at trial.

60. Due to Defendants' acts of infringement, Plaintiff has suffered general and special damages to its business in an amount to be established at trial.

61. Due to Defendants' acts of copyright infringement as alleged herein, Defendants have obtained direct and indirect profits they would not otherwise have realized but for their infringement. As such, Plaintiff is entitled to disgorgement of Defendants' profits directly and indirectly attributable to Defendants' infringement in an amount to be established at trial.

62. Defendants have infringed Plaintiff's copyrights with actual or, at minimum, constructive knowledge of Plaintiff's rights such that Plaintiff is entitled to a finding of willful infringement and the statutory damages maximum of $150,000 per work under 17 U.S.C. § 504(c).

63. Plaintiff has suffered, and will continue to suffer, great and irreparable injury due to Defendants' infringement that cannot be fully compensated by monetary damages. Therefore, Plaintiff has no adequate remedy at law and is entitled to preliminary and permanent injunctions under 17 U.S.C. § 502, prohibiting Defendant from further infringing its copyrights.

## SECOND CLAIM FOR RELIEF: VICARIOUS COPYRIGHT INFRINGEMENT
### (BMG against Joyy, Inc.)

64. Plaintiff realleges and incorporates by reference each of the allegations in the paragraphs set forth above.

65. Defendant Joyy, Inc. is also vicariously liable for the infringement of Bigo through the Like application because Defendants had the right and ability to supervise the infringing conduct and because Defendants had a direct financial interest in the infringing product.

66. Defendants had direct financial interest in Likee's activities by accepting payment Likee users including for content that features the infringing music.

67. Due to Defendant Joyy, Inc.'s vicarious infringement alleged above, Plaintiff has suffered and will continue to suffer substantial damages to its business in an amount to be established at trial, as well as additional general and special damages in an amount to be established at trial.

68. Due to Defendant Joyy, Inc.'s vicarious infringement as alleged above, Defendants have obtained direct and indirect profits they would have not otherwise realized but for the infringement. As such, Plaintiff is entitled to disgorgement of Joyy, Inc.'s profits directly and indirectly attributable to the infringement, in an amount to be established at trial.

## THIRD CLAIM FOR RELIEF: CONTRIBUTORY COPYRIGHT INFRINGEMENT

**(BMG against Bigo Technologies Limited and Joyy, Inc.)**

69. Plaintiff realleges and incorporates by reference each of the allegations in the paragraphs set forth above.

70. In addition to direct infringement, Defendants knowingly induced, caused, materially contributed to, participated in, encouraged, aided and abetted in, and resultantly profited from the illegal reproduction, importation, purchase, marketing, advertising, distribution, and/or public performance (including by digital audio transmission).

71. On information and belief, Defendants were aware a specific instances of infringing use of the Works on the Likee application.

72. By reason of the Defendants' contributory copyright infringement as alleged above, Plaintiff has suffered and will continue to suffer substantial damages to its business in an amount to established at trial, as well as additional general and special damages in an amount to be established at trial.

73.     Due to Defendants' contributory copyright infringement as alleged above, Defendants have obtained direct and indirect profits Defendants would not have otherwise realized but for the airlines' infringement. As such, Plaintiff is entitled to disgorgement of Defendants' profits directly and indirectly attributable to Defendants' contributory infringement, in an amount to be established at trial.

74.     Defendants have committed acts of infringement alleged herein with actual or, at minimum, constructive knowledge of Plaintiff's rights such that Plaintiff is entitled to a finding of willful infringement.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following relief:

1.     Maximum statutory damages in the amount of $150,000 with respect to each copyrighted work infringed, or for another proper amount under 17 U.S.C. § 504(c), or in the alternative for an award of Defendants' profits and for compensatory damages according to proof;

2.     An accounting, the imposition of a constructive trust, restitution of Defendants' unlawful proceeds, and damages according to proof;

3.     Punitive and exemplary damages as awarded at trial;

4.     A temporary and final injunction to prevent or restrain further infringement and misappropriation of Plaintiff's copyrights and exclusive ownership interests;

5.     Prejudgment interest;

6.     Plaintiff's costs, including attorneys' fees pursuant to 17 U.S.C. § 505; and such other and further relief as the Court may deem just and proper,

## ***DEMAND FOR JURY TRIAL***

Plaintiff hereby demands a jury trial on all issues so triable pursuant to Fed. R. Civ. P. 38 and the Seventh Amendment to the U.S. Constitution.

Respectfully submitted,

DATED: August 31, 2022          GERARD FOX LAW, P.C.

*/s/ Gerard P. Fox*
Gerard P. Fox
Brent J. Lehman
*Attorneys for Plaintiffs*