1
2
3
4
5

Gerard P. Fox (SBN 151649)
gfox@gerardfoxlaw.com
Cirstan S. Fitch (SBN 268646)
cfitch@gerardfoxlaw.com
Gerard Fox Law P.C.
1880 Century Park East, Suite 1410
Los Angeles, California 90067
Telephone:   (310) 441-0500
Facsimile:   (310) 441-4447

6

*Attorneys for Plaintiff, BMG Rights Management*

7

8   **UNITED STATES DISTRICT COURT**

9   **CENTRAL DISTRICT OF CALIFORNIA**

10
11
12

BMG RIGHTS MANAGEMENT (US) LLC, a Delaware limited liability company,

13

Plaintiffs,

14

v.

15
16
17
18

JOYY INC., a Delaware corporation; BIGO TECHNOLOGY LIMITED, a Delaware corporation; and DOES 1 through 25, inclusive,

19

Defendants.

20
21
22
23
24
25
26
27
28

Case No.: 2:22-cv-01578-MCS-RAO

**FOURTH AMENDED COMPLAINT FOR:**
**(1)  DIRECT COPYRIGHT INFRINGEMENT**
**(2)  INDIRECT COPYRIGHT INFRINGEMENT**
**(3)  CONTRIBUTORY COPYRIGHT INFRINGEMENT**

**DEMAND FOR JURY TRIAL**

-1-

Plaintiff BMG Rights Management (US) LLC alleges as follows:

## NATURE OF THE ACTION

1.      Plaintiff BMG is a worldwide music publisher and record label that represents hundreds of artists and songwriters and owns Copyrights to over three million musical compositions and hundreds of thousands of sound recordings, and licenses those works in order to support artists and songwriters who depend on royalty payments to earn a living.  When companies like Bigo and Joyy, Inc. exploit music for their own profit, its BMG's artists and songwriters that suffer most and are denied the ability to earn a living from their craft.

2.      Defendants Bigo and Joyy, Inc., are technology companies seeking to compete in a fast-paced world of social media, video, and online gaming. Unfortunately, the culture of social media start-up companies is to grow user engagement as fast as possible without any regard for Copyrights, intellectual property, safety of users, or really any of the basic concerns a start-up should have for ensuring that the company grows quickly without facing legal ramification.  Simply put, most ask for forgiveness after they have achieved financial success in lieu of asking for permission. For example, TikTok was widely criticized for its various violations of Copyright and intellectual property rights during its quick rise to prominence.  The business model seemed to be "grow as fast as possible and worry about the consequences later."  Now, every new version of TikTok, started by cash-thirsty technology companies, attempts to emulate this same strategy.

3.      Bigo and Joyy, Inc. profit from the creation and operation of a new social media application called Likee.

4.      Likee – a rip-off version of TikTok – is a social media application based on user-generated short video content.  As with all social media companies, Likee seeks to capitalize on subconscious – biological responses in the brain – to drive user engagement.  Capitalizing on the "dopamine hit" generated by viewing desirable

content on the users' phones, Likee seeks to have users spending as much time as possible in the application, encouraging an addiction to social media.

5.      Likee's content is driven by the music. As the Likee tutorials tell new users, music selection is key to obtaining popularity on the platform.  Popularity, in turn, is all that matters to users on Likee.  The entire point of the platform is for users to gain their brief moment in the spotlight and attempt to "go viral" with other users.

6.      Unfortunately, Likee steals music from artists, songwriters, and publishing companies in attempt to drive revenue for the application without paying for the right to publish, perform, or disseminate the music. Every day, Likee users upload music to Likee for publication, performance, and dissemination -- without properly licensing the works -- in order to gain interaction from users.

7.      In keeping with Bigo's attempt to copy TikTok, the Likee application makes no attempt to obtain the proper licenses for Copyrighted materials in order to save money an attempt to grow and achieve market share in this highly competitive and highly profitable arena.

8.      Bigo is aware that Likee blatantly rips off Copyrighted materials. Representatives for the company have repeatedly put-off representatives from BMG in an attempt to stall negotiating proper licenses and brazenly continue their theft of artists' works.  Bigo's representatives have specifically acknowledged that Bigo needs to negotiate a licensing deal with BMG and have gone so far as to confirm the use of the materials by US users.  The communications are intended to stall and delay while portending to plead innocence for the lack of authorization.  Yet, after a year of communication from BMG regarding the unauthorized use, Bigo has not offered to address their prior misdeeds, enter into a prospective license agreement or engage in good faith in any meaningful dialog.

/ / /

/ / /

/ / /

FOURTH AMENDED COMPLAINT

## JURISDICTION AND VENUE

9.      This action arises under the Copyright Act of 1976, 17 U.S.C. § 101 *et seq.*, which creates a controversy under a federal question of law.

10.     This Court has federal question jurisdiction under 28 U.S.C. §§ 1331, 1338(a).

11.     Venue in this judicial district is proper under 28 U.S.C. §§ 1391(c) and 1400(a) in that this is the judicial district in which a substantial part of the acts and omissions giving rise to the claims occurred.  Not only does Likee serve video content to users in the United States and the State of California, the creator of Likee (Bigo) boasts offices in Los Angeles.  Indeed Bigo and Joyy, Inc. have substantial contact with the venue.

## PARTIES

12.     Plaintiff BMG Rights Management (US) LLC (hereinafter "BMG") is a limited liability company organized under the laws of Delaware with its principal place of business in New York, New York.

13.     Plaintiff is informed and believes that Defendant Bigo Technology Limited ("Bigo") is a Delaware Corporation with a principal place of business in Mapletree Business City Singapore.  Bigo has business offices in Los Angeles and San Francisco, California and is the owner of the social media application, Likee. Plaintiff is further informed and believes that Defendant Bigo Technology is a subsidiary of Defendant Joyy, Inc.

14.     Plaintiff is informed and believes that Defendant Joyy, Inc. is a Delaware Corporation with its principal place of business in Guangzhou, China. Joyy, Inc. is the parent company of Bigo, which has offices within the State of California, including Los Angeles and San Francisco.

15.     The true names and capacities of all defendants sued herein as Does 1 through 25 (the "Doe Defendants") are unknown to Plaintiff, who therefore sues such defendants by fictitious names. If necessary, Plaintiff will seek leave of Court to

FOURTH AMENDED COMPLAINT

amend this Complaint to state their true names and capacities when the same have been ascertained. Plaintiff is informed and believes, and on that basis alleges, that the Doe Defendants direct, control, ratify, participate in, materially contribute to, profit from, induce, encourage, facilitate, and/or are the moving force behind the violations of Plaintiff's Copyrights or are otherwise liable to Plaintiff as a result of their participation in all or some of the acts set forth hereinafter.  Plaintiff is further informed and believes and therefore alleges that each of the Doe Defendants was the agent of at least one of the named defendants, and in doing the things alleged in this Complaint was acting within the course and scope of such agency, and/or acted in concert with at least one of the named defendants and are jointly and severally liable to Plaintiff with said named defendants.

## COMMON FACTUAL ALLEGATIONS

### A.       BMG's Ownership of Copyrighted Material

16.     Plaintiff BMG is a worldwide music publisher and record label that represents hundreds of artists and songwriters and owns Copyrights to over three million musical compositions and hundreds of thousands of sound recordings, and licenses those works in order to support artists and songwriters who depend on royalty payments to earn a living (e.g., pay their mortgage, put their children through school and put food on the table).  Artists, particularly those artists that no longer tour, reap significant revenue from the legitimate exploitation of their music, provided that such exploitation is obtained through proper authorization.

17.     BMG has a grounded approach to representing the artists and songwriters under its care.  BMG's approach is to put its artists and songwriters first.  The partnership means BMG seeks to get the most value for their clients, rather than pure exploitation of music for its own gain.  When companies like Bigo and Joyy, Inc. exploit unlicensed music for their own profit, its BMG's artists and songwriters that suffer most.

FOURTH AMENDED COMPLAINT

18.     BMG's registered Copyrights include but are not limited to the musical compositions and sound recordings to be identified through discovery (hereinafter the "Works").

19.     BMG represents some of the biggest and most iconic artist and songwriters in the world as well as many that have not yet achieved superstardom and that depend on license fees and their royalties from BMG to get by.  Collectively, these artists occupy valuable real estate across the spectrum of pop-culture and popular music.  Their songs are recognizable and extremely marketable and those whose songs are not necessary as well known yet still deserve to be fairly compensated.

20.     Music has always been intended to cultivate feelings of nostalgia, excitement, sadness, etc. in the listener. Music is the soundtrack to our lives. The feeling a listener gets when they listen to music is more than simply a thought in the brain.  In fact, music creates a biological response the triggers to the release of dopamine to the brain, creating both positive and negative impacts on the brain.[1]

21.     Social media companies understand the impact of this dopamine response as much or more than any other industry.  In fact, digital media – including the major social media applications – has literally turned the general public into addicts for this dopamine response.[2] While music has always been part and parcel of pop culture, music is clearly now at the forefront of driving interaction and engagement with social media applications.  With the rise in popularity of video content (rather than static content like photographs), music's role in driving user engagement, retention and ultimately monetization is ever increasing.

---

[1] "Dopamine Modulates the Reward Experiences Elicited by Music." – Ferreri, et al. Proceedings of the Nation Academy of Sciences of the United States of America. February 26, 2019; 116 (9) 3793-3798 (https://www.pnas.org/content/116/9/3793)

[2] "Constant Craving: How Digital Media Turned Us All Into Dopamine Addicts" – Jamie Waters. https://www.theguardian.com/global/2021/aug/22/how-digital-media-turned-us-all-into-dopamine-addicts-and-what-we-can-do-to-break-the-cycle

FOURTH AMENDED COMPLAINT

22.     Social media companies actively work to serve users with the most engaging content in order to trap users and shape how they see the world.[3]  Thus, there is a reason that these applications – such as Likee – serve users with content featuring music as the predominant feature.  That is, without music, these applications cannot distinguish themselves or hope to prosper.

**B.     Likee's Wrongful Use of Copyrighted Materials**

23.     Likee is a video-based social media application owned and operated by Defendant Bigo, a subsidiary of Joyy, Inc.

24.     The application is not unique.  Likee resembles the popular social media giant, TikTok.  Likee is yet another attempt to capitalize on the ever-growing culture of seeking internet stardom and popularity.  Essentially, Likee is attempting to capitalize on everyone's drive for their own personal 15 minutes of fame.  Likee's selling point is "positivity" but the concept of encouraging users to post short videos, typically set to music, in an attempt to go viral, is the same.

25.     According to Bigo, Likee has over 115 million "happy users" and has been download over 600 million times in 150 countries including the United States.  The application boasts a world-wide appeal and many of those users reside in the United States as evidenced by Bigo's own monthly active user reports.  Like most social media applications, Likee users can view content from anywhere in the world and users' content is thereby available to users from anywhere in the world.  The global appeal of the application is part of the draw.

26.     Likee's wrongful use of the Works is straightforward.

27.     Likee is a platform for video content.  The videos are short, ranging from 10-20 seconds of content.  Users post videos of themselves doing dances, completing

---

[3] "Social-Media Algorithms Rule How We See the World. Good Luck Trying to Stop Them." – Joanna Stern https://www.wsj.com/articles/social-media-algorithms-rule-how-we-see-the-world-good-luck-trying-to-stop-them-11610884800

"challenges," or short attempts at comedy.  Likee promotes popular videos to users in an effort to keep users engaged with the application.

28.    The use of music is a central feature for Likee users. The platform actively encourages users to upload video content to share with peers, friends, and strangers across the world.  Users – mostly tweens and young adults – are encouraged to seek fame and popularity by "going viral."

29.    Likee allows users to upload or link music from their personal music library, such as iTunes, to videos without regard for the rights of the underlying Copyright holders. Likee then publishes the video worldwide on the platform. Users from anywhere in the world have access to videos and content created on the platform. Through this mechanism, Likee and thus its creators Bigo[4] know that Copyright infringement is ongoing on the platform.  For example, by creating a method to upload Copyrighted music from iTunes Likee is specifically facilitating the copying and publication of music it knows is subject to Copyright protection.  Likee further knows that Defendants do not have authority to copy or publish the material globally.  Yet, Defendants intentionally created mechanisms to facilitate, encourage, and directly copy and publish music – including the Works – without authorization.

30.    Likee does have licenses for a limited amount of music from certain rights holders.[5]  The use of licensed music is facilitated through an entirely different mechanism.  Likee also specifically identifies songs for which it has a license to publish.  Thus, Likee knows that other songs are published without proper license or authority.  An overwhelming amount of music used on the application , is used without authority from the Copyright holder or their authorized agents whether that is BMG or other major content rights holders. Likee could easily prevent Copyright

_____

[4] And Bigo's parent company Joyy, Inc.

[5] The Likee application has changed the designation of music between the time BMG filed its original Complaint and the First Amended Complaint.  Recently, Likee has added a designation to indicate whether music is licensed when a user views a video.

FOURTH AMENDED COMPLAINT

infringement by disabling this feature that is specifically designed to facilitate the illegal use.

31.     Likee has a section of the platform called "Creators Academy" that teaches users how to create popular content. Likee tells users that "better music" will help them go viral. The reason for this is clear. Likee understands that music drives user sentiment more than any visual content. Music creates subconscious positive or negative associations for users interacting with the video. Music – more than the silly dance – drives the reaction to a video. Music, the soundtrack to our lives, is the driving force behind user engagement.

32.     Likee actively encourages and, in fact, instructs, users to use unlicensed music in their videos in order to gain popularity on the platform. The video regarding the use of music explains to users how to upload "your own saved music" to attach to a video.  On information and belief, when users select this future, Defendants' application copies the underlying Copyrighted material and directly publishes the copy on the application.

33.     Defendants do not have the right to publish the Works without a license and Likee does not avoid liability simply because the user uploads the music from their own device. Bigo and Joyy, Inc. similarly are well aware of this and use this tactic as a business strategy/business model in lieu of doing the right thing and incurring the requisite costs. Further, in the settings menu, Likee allows users to upload music to the platform "so other users can use them to record videos" – i.e., infringement begets infringement.

34.     Likee encourages and facilitates unauthorized use of the Works on its platform in multiple ways. First, Likee "promotes" popular videos using unlicensed music without regard for the rights of the artist or songwriters. Publishing these videos to other Likee users facilitates the unauthorized use of the Works and perpetuates the wrongful use. Second, Likee – through the advice in "Creators Academy" – tells users

FOURTH AMENDED COMPLAINT

that the best way to get their content promoted to other users is the use of unauthorized of the Works.

35.    Likee intentionally covers up the fact that it is willfully publishing unauthorized works on the platform.  Videos that include music for which Likee has (presumably) obtained a license identifies the name of the artist and song title on the bottom of the video and are now specifically identified as "licensed music." In the United States, unlicensed music is simply (yet disingenuously) identified as "Original Music." The music is not original. It is stolen. The Likee platform simply attempts to obfuscate the Copyright violation.  By way of example, if a Likee user posts a video using "The Magic Bomb" by Hoang Read, the artist and title is identified in the user's video. However, if a Likee user posts a video using music from an artist covered under the Works – such as popular U.S. recording artist under exclusive agreement with BMG – the video simply identifies the stolen music as "Original Music."  Likee has boldly elected to pursue a business model of Copyright theft and after going down that path anemically attempts to cover its tracks.

36.    Likee's infringement of the Works occurs within the United States ("U.S.") and thus Bigo is subject to the laws and regulations of under the Copyright Act. Not only can U.S. based users access videos from users all over the world, but Likee users are served content based on their location.  Most of the content served to Likee users based in the U.S. includes unlicensed Copyrighted music from various uncompensated rightsholders, including BMG.

37.    Bigo actually advertises the Likee social media platform in the United States.  Bigo has made significant advertising efforts in the Los Angeles area including advertising the Likee application on the sides of local Metro buses.  In other words, Bigo is intentionally seeking out new users in the Los Angeles market and likely has similar advertisements in other major metropolitan areas.

38.    Joyy, Inc. and Bigo indeed profit from use of the Works.

39.     Joyy, Inc. recently reported the company's net revenue increased by 21.7% year over year for the third quarter of 2021.  Further, Joyy, Inc.'s gross profit margin improved to 32.4% in the same year over year period.  Bigo's growing profits are the predominate factor for Joyy, Inc.'s increased revenue according to public reports.  This includes an increase in users on the Likee platform, where Joyy, Inc. reported that a new incentive program for content creators drove growth by 7.1%.

40.     Likee generates revenue for Bigo and Joyy, Inc. in a variety of ways, particularly through in-app purchases. Likee provides virtual currency called "beans" or "diamonds."  Diamonds can be purchased for prices ranging from $.99 to $99.99. Though beans can be cashed out for real currency, the exchange rate is hardly 1-to-1. Obviously, Likee profits from these favorable terms.

41.     The revenue generated from in-app purchases is driven in part by the unlicensed use of the Works. The primary purpose of the exchange of diamonds between users is to reward content creation on the platform. By way of example, a U.S. based user "HouseofBrooklyn" has 8.43 million fans and has received 5.82 million beans from users on the platform.[6] Due to her popularity, content created by "HouseofBrooklyn" is actively promoted by Likee and served to other users, even when the content is days or weeks old, which earns "HouseofBrooklyn" more notoriety, fame, and virtual currency. It appears that most of the content posted by "HouseofBrooklyn" includes unauthorized use of Copyrighted material, including the Works. This includes instances where "HouseofBrooklyn" linked to music uploaded by other users using the methods described above.  At least one video includes use of "Nevermind" by Nirvana, a song included in the Works.

42.     Almost none of "HouseofBrooklyn"'s videos include spoken word or ambient sound. They all include the use of music (unwittingly for the dopamine hit). Her videos are the norm rather than exception. Most of the content served to users in

---

[6] User HouseofBrooklyn is a "Verified Creator" and the numbers cited are as of the filing of this Complaint.

FOURTH AMENDED COMPLAINT

the United States includes music rather than spoken word or ambient sound.  The reason is clear: music drives engagement.  If spoken word or ambient sound drove engagement, then Likee would promote these types of videos instead.

### C.     Likee's Wrongful Use of Copyrighted Materials is Intentional.

43.    Bigo and Joyy, Inc.'s infringement has always been willful.  There is no colorable argument that Bigo had a good faith belief regarding the innocence of its conduct or was unaware that it facilitates infringement of Copyrighted materials.

44.    Likee is specifically designed to make it easy for users to upload unlicensed music to the platform.  On information and belief, the Likee application copies and publishes the Works without license or authorization.  Even if it did not, the only reason to have a separate conduit for selecting music from the user's iTunes account is to allow users to post content with music Bigo knows or should know that it does not have a license use.  Now, the application specifically denotes which songs are properly licensed and which songs are not.  Defendants have actual knowledge that the application illegally publishes Copyrighted music – including the Works – without a license.

45.    When BMG became aware of Bigo's unauthorized use of the Works, BMG promptly notified Bigo of its wrongful conduct in October of 2020.

46.    Bigo's conduct toward BMG since October 2020 shows that Bigo has made a conscious business decision to continue its unauthorized use of the Works. Bigo's communication has repeatedly acknowledged that it does not have a license to use the Works and Bigo has at best only made half-hearted attempts to generally discuss the right to use the same. The communications merely served to delay and extend the timeframe for Likee to continue use of the Works without compensation.

47.    Recently, a Federal Court found the exact same conduct as undisputed evidence of a defendant's willful infringement, finding the "[defendant] knowingly infringed thousands of Plaintiffs' Copyrighted works over a period of several years, consciously and repeatedly making the business decision to continue its unauthorized

use of Plaintiffs' works." *See UMG Recordings v. Global Eagle Entm't, Inc*., No 14-CV-3466, mem op. (C.D. Cal Mar. 31, 2016; adopted as final ruling on Apr. 20, 2016). The court ultimately found that "if [Defendants'] infringements were not willful, no infringements could ever be." *Id.*

48.    Bigo has made the same decision.  Bigo has collected money from Likee users "in anticipation that it would one day need to make amends for its unauthorized use of Plaintiffs' works, continued to attempt to negotiate licenses with Plaintiffs, and failed to successfully put any licenses in place for their use of Plaintiffs' works."

49.    Bigo has willfully continued its unauthorized use of the Works. The use includes substantial contacts within the United States. As stated above, Likee boasts users in 150 countries, including the United States.  As such, Bigo and Joyy, Inc. have caused damages in the million to BMG (and the artists it represents) through illegal use of the Works.

50.    On information and belief, Defendants have published videos containing thousands of songs covered by the Works.  Further discovery will undoubtedly uncover the use of thousands of songs by Likee.  Even a cursory review of the Likee application limited to U.S. based users uncovered the improper use of songs contained in the Works including, but not limited to: "Nevermind;" "Locked Out of Heaven;" "Ms. Jackson;" "My Humps;" "I Like to Move It;" "All of Me;" "Happy Together;" "Iko, Iko;" and "Feliz Navidad."

51.    Defendants were aware that the publication of these songs was improper and illegal at the time the songs were published.  On information and belief, each use was published well after Plaintiff advised Defendants that their application was facilitating and actively encouraging unlicensed publication of Copyrighted materials. Defendants have made no effort to cure the unlicensed use.

52.    Defendants were aware of the infringing behavior on behalf of the Defendants and the users of the application.

53.     On information and belief, Defendant Bigo investigated use of the Works on the Likee application and after the investigation Defendant Bigo and its key employees had actual knowledge of specific instances of infringement of the Works by its users.

**D.     BMG Represents Rightsholder Musicians and their Copyrights**

54.     Licensing and agreements for the use of musical compositions including for use in Internet based media is a substantial revenue source for music publishers, including BMG, and a fundamental means by which songwriters earn a living.

55.     BMG owns and/or exclusively controls the rights set forth in 17 U.S.C. § 106 of the Copyright Act with respect to the musical compositions listed on Exhibit A, and many, many more. Anyone who wants to use the musical compositions owned or controlled by BMG must comply with Copyright law by obtaining necessary licenses, such as mechanical licenses to reproduce and distribute the musical works, and/or synchronization license to use the musical works in connection with visual images (such as video, and/or a performance license to publicly perform these musical works.)

56.     Each of the rights under the Copyright Act including the right to reproduce the work, prepare derivative works, distribute copies to the public, and perform the work publicly is a separate right within the bundle of rights that a Copyright owner (or the holder of an exclusive license) may choose to exploit. These exclusive rights are reserved under Copyright law for those that own or control the exclusive rights, namely BMG, and Bigo is not authorized to appropriate them to suit its business model.

57.     BMG represents songwriters who depend on licensing and otherwise exploiting these rights, among others, to earn revenue from their catalogs of musical compositions, and BMG ensures that the songwriters are fairly compensated for the use of their songs.

FOURTH AMENDED COMPLAINT

58.     Publishers enter into licenses and agreements for the public performance, reproduction, synchronization, and/or distribution of musical compositions in their catalogs, collect the income arising from such transactions, and pay the songwriters their applicable share of the income. Those songwriters, in turn rely on that income to support their livelihood so that they can continue to create new songs.

59.     BMG licenses musicians' musical compositions for use in audio visual works including film, video games, and television.

60.     BMG has worked with multiple social media companies to pioneer innovative and highly successful frameworks for social media patrons to make lawful use of BMG's represented songs on those platforms. BMG has entered into agreements with social media companies covering the use of BMG's represented musical compositions on platforms which Bigo, operating as DBA Likee, competes with including among others; Tic Tok, Facebook, Instagram, YouTube and Snapchat.

61.     BMG licenses mechanical rights to numerous digital music streaming platforms including Spotify, Apple, Google and Amazon among others, so that music fans can listen to recordings of millions of songs and the musical compositions embodied therein.

62.     Videos with music, including infringing copies of BMG's songwriters songs, attract and retain account holders and viewers, and grow the body of engaging users on the Likee platform. Likee then monetizes those video posts and users via advertising, in-app digital currency purchases, and on information and belief, data licensing, all of which serve to increase Likee's valuation and revenues.

**E.    <u>Likee's Failure to Address Known Infringers and Infringements.</u>**

63.     Bigo is fully aware of the infringing activity at issue in this litigation, and it has not obtained any licenses or other agreements necessary for BMG's musical compositions to be lawfully used on its platform. Consequently, BMG acting on behalf of its constituents, began sending formal infringement notices to Bigo on a near weekly basis beginning in December 2022, which go as far back as October 5th 2020,

FOURTH AMENDED COMPLAINT

64.     Each notice provided by BMG to Bigo contained dozens if not hundreds of links to specific posts on Likee that included unauthorized copies of BMG rightsholder's musical compositions. The infringing material identified in the notices generally consisted of unauthorized copies of the official artists sound recordings, with unauthorized recordings of live performances, and or other video content that was synchronized to BMG Constituent's musical compositions without authorization.

65.     BMG notices sent to Bigo contained, among other things: an electronic signature of a person authorized to act on behalf of songwriters; identification of the infringed musical compositions; contact information for BMG's representative; a statement that the use of the compositions is not authorized by the associated publisher; a statement that the information in the notice is accurate and a statement that publisher's representative is authorized to act on behalf of publishers; and identification of the infringing material and the form of links to specific videos on Likee containing the unauthorized use of BMG's Copyrighted compositions. On an infringement-by-infringement basis, each BMG notice provided information that included the name of the infringed musical composition, and the URL for the post containing the infringing material.

66.     The infringing posts listed in the BMG notices are just the "tip of the iceberg" in terms of the overall fragment of BMG's Copyrighted works on the Bigo/Likee platform.

67.     Through its receipt of these notices, Bigo knows, and has known, that there is rampant, unauthorized use of music, including BMG's musical compositions, across its platform. And of course, the infringing content is readily apparent to Bigo as it reviews and maintains its platform.

68.     Bigo maintains that it respects rights holders and acts expeditiously to remove unauthorized uses of Copyright works on its website, but the reality is that Bigo routinely ignores known repeat infringers and known infringements, refusing to take simple steps that are available to Bigo to stop these specific instances of

infringement of which it is aware. Indeed, 56% of all of the musical compositions listed on Exhibit A which appeared in BMG notices after the specific users who uploaded those works had already been identified to Bigo in multiple earlier BMG notices. Moreover Exhibit A includes many musical compositions that were identified to Bigo in BMG notices, but as to which Bigo did not expeditiously remove or disable access.

### F.   **Bigo delayed or failed to take down specific infringing material**

69.   Bigo's policies in its response to the BMG notices make clear that Bigo does not take its legal obligations with respect to Copyright infringement seriously.

70.   Because policies demonstrate that Bigo views itself, not the law, as the arbiter of what content is permitted on the Likee platform. Bigo makes case by case determinations related to User Generated Content ("UGC") and may in its "…sole discretion, delete, move, reformat, remove or refuse to post or otherwise make use of UGC without notice or any liability to you or any third party." For example, Likee's "Copyright policy" speaks in the conditional, advising, "We may," and in our sole discretion."

71.   By its actions, Bigo has intentionally ignored and continues to ignore the overwhelming evidence that provides it with actual knowledge of repeat Copyright infringers on its platform. Bigo cannot have any credible, effective repeat infringer policy, let alone anyone that is reasonably implemented as required by 512(i), if it purposefully ignores notifications, sufficient under the DMCA, of repeat infringers sent by Copyright owners who are tracking the repeat infringers on the Bigo platform and providing Bigo with actual knowledge of those repeat infringers on a weekly basis.

72.   By ignoring the repeat infringement notifications and refusing to terminate Internet access for repeat infringers Bigo has made an affirmative decision to contribute to known Copyright infringement and to continues to reap the substantial financial benefits in the form of fees, advertising revenue, digital currency and data

sales revenue. Bigo's conduct renders it in eligible for safe harbor immunity from Copyright liability under the DMCA.

73.     Despite Plaintiffs continuous and frequent notifications to Bigo of specific instances of infringement and repeat infringement committed by Bigo's account holders and subscribers, and Bigo's knowledge thereof, Bigo has refused to terminate any, or any meaningful number, of its account holders by reason of their repeat infringements. Bigo continues to collect substantial fees and revenues because of the size of the followings of those repeat infringer's accounts. Eyeballs equals dollars business model of social media exposure. Therefore, Bigo has financially benefited and continues to financially benefit from the direct infringement by its subscribers.

74.     Despite claiming to take down infringing materials in response to an infringement notice within seven days, Bigo routinely waits much longer before acting, if it acts at all. Indeed, from the time Bigo received BMG notices, Bigo more often than not waited many, many months. As of today, 56% of the infringing posts noticed by BMG have yet to be responded to.

75.     The precise extent of Bigo's lengthy delays will be the subject of discovery and analysis, including a thorough review of Bigo's records. By way of example, The June 12th, 2023 takedown notice from BMG to Bigo Lists 15 titles: "*All of me*" by John Legend, "*You Can't Touch This*" by MC Hammer, "*Toxic*" by Britney Spears, "*Set fire to the Rain*" by Adele, "*My humps*" by the Black Eyed Peas*, "I got a feeling*" by the back Black Eyed Peas, "*Call me Maybe*" by Carly Rae Jepsen, "*Comfortably Numb*" by Pink Floyd, "*I like to move it*" *by Reel to Reel,* "*Pony*" by Ginuwine, "*Feliz Navidad*" by José Feliciano, "*Sleigh Ride*" by Leroy Anderson, "*Dream On*" by Aerosmith, "*Jump Around*" by House of Pain, "*Uptown Funk*" by Bruno Mars and Mark Ronson, And "*Locked out of heaven*" by Bruno Mars. Each song had at least one live link that was identified by BMG to Likee for takedown provisions under the DMCA notice purposes. In total, the 15 songs had 146 Links

specifically identified. To date Bigo has issued no response to this take down notice from nearly 3 months ago.

76.    Across all of the BMG notices sent to Bigo that identified musical compositions by name, along with precise URL's, 1516 posts were noticed by BMG as containing infringing uses of those compositions. Bigo failed to take down at least 56% of those infringing tweets or even respond to those notices… *At all*. Between three to six months after the BMG notices were sent those DMCA take down requests remain unanswered. Even more troubling, many of those instances as shown in Exhibit B are merely a Likee created copy, an artifact copy of infringing Copyrighted works, kept in Likee's Shared Library for still more infringers use and incorporation in their future posts.

77.    Bigo's incentive is to not act expeditiously. It's clear Bigo wants to maximize the benefit it receives from the infringing content on its platform before the post is deleted. As a general proposition, the value to Bigo of a post decreases overtime, and the more eyeballs on a post, the more Bigo can demand from advertisement revenue on an ad proximate to the infringer's page.

78.    Many times Bigo has also failed entirely to takedown infringing content identified in the BMG notices. Since December 2022, there have been over 1500 instances of infringing posts identified in BMG notices for which Bigo has failed entirely to remove, or disable access to, that infringing material. In none of these copious examples that BMG relies on herein, did the Bigo user who posted the infringing material submit a counter notice under Copyright law.

79.    The precise extent of Bigo's refusal to take down specific infringing material of which it was aware will be the subject of discovery and analysis, including a thorough review of Bigo's records.

**G.    Copyright infringement actions do not require intent, It is a Strict liability tort.**

80.    Infringement occurs as a matter of law. Direct infringement is a strict liability offense, without any requirement that infringer know the content they post is illegally infringing another's Copyright.

**H.    Bigo failed to implement a policy to terminate repeat infringers**

81.    Bigo has not adopted, reasonably implemented, nor informed subscribers or account holders of, a policy to terminate users engaging in repeated acts of Copyright infringement.

82.    In Bigo's Copyright policy, Bigo addresses issues concerning Copyright complaints, including what happens to accounts that receive them regularly. From the inception of this lawsuit through to today, Bigo's Copyright policy has not so much as included a warning to users that they may be "terminated" for repeat Copyright infringement.

83.    There is no evidence before the court that Likee on behalf of Bigo suspends, terminates, notifies or in any way punishes repeat Copyright infringers users accounts.

84.    Under the requirements of § 512 (i) of title 17 Bigo must adopt and reasonably implement a qualifying repeat infringer policy, Bigo has failed to do so.

85.    Without an enunciated repeat infringer policy posted on its site, Bigo cannot avail themselves of the Safe Harbor protections of the Notice and take down provisions for DMCA under Copyright Act § 512 (1) of title 17.

86.    Put simply, users who repeatedly infringe Copyrights do not face a realistic prospect of permanently losing access to their accounts on the Likee platform. Rather than terminating access to specific users brought to its attention as infringers, which would have stopped or limited those users infringement and deterred others from infringing, Bigo has operated its platform to instead act as a haven for infringing activity. Bigo has consistently assisted those same specific users of its platform that Bigo knows are using it for infringement, to continue their infringing activities.

87.    Bigo refuses to stop the rampant infringement of Copyrighted music, including BMG's rightsholder's representative compositions, because it knows that the Bigo/Likee platform is more popular and profitable if Bigo allows such infringement to continue.

### I.    Defendants have Actual Knowledge of Individual Infringing Works, as Plaintiff has Communicated well over one Thousand Takedown requests, the Majority of Which have been Ignored.

88.    Plaintiff has a record of more than 1516 individual take down requests it has communicated to Bigo. Of those outstanding requests, BMG has received confirmation that only 668 of those outstanding requests have indeed been responded to and taken down. A 44% follow through, leaving 848 specifically requested URL's ignored. Bigo has offered *Zero* follow up on these specifically identified infringing URL's, and has failed to show these infringing posts have in fact been disabled as required under the Safe Harbor Provisions of the DMCA.

89.    An Exhibit A has been complied including the 1516 individual take down requests spanning from October 5th, 2020 – June 30th, 2023, and is attached to this amended pleading. Each of the unique and carefully drafted notices created by BMG are met with a crude boilerplate, identical three sentence response, even more egregious is that still 56% of those requests have not even received that cut and paste email from Bigo.

### J.    The Splashpage Redirect: Defendants Have Recently Changed Their Website No Longer Allowing for URL's and Eliminating the Verification that Links Have Indeed Been Taken Down or Disabled.

90.    Bigo has deliberately prevented BMG from being able to protect its catalog from infringement across Bigo's platforms. Bigo offers the public up until, on information and belief sometime between June 28th 2023, and August 22nd, 2023, search tools designed to enable Copyright owners to identify, search, and protect their works. Bigo has now replaced this with a splash page that is inaccessible by the public,

and inaccessible by previously communicated links (such as under the DMCA takedown notice provisions, and BMG's communicated letters). With a website that redirects to a splash page and zero transparency as to whether or not those previously communicated specifically identified infringing links are still active or have indeed been disabled. Bigo has done this without a legitimate explanation. The rationale is clear: if Bigo knows that it's forced to recognize BMG's undeniable ownership of its content, it will have to properly compensate BMG- something that it has been unwilling to do despite repeated notices of breach.

91.    Bigo has no defense for this action of installing a splash landing page in lieu of it's previously accessible specifically identified URL links to infringing content, or its removal. Instead, Bigo has not only turned a blind eye to this widespread, daily infringement it is actively engaged in, it continues to add to the theft of BMG's content across its platform.

**K.   Through its Platform, Bigo Has Actively Stored, Curated, Reproduced, Performed and Distributed BMG's Works To Its Users, Directly Infringing BMG's Copyrights**

92.    Bigo itself has been storing, curating, reproducing, performing, distributing, and otherwise exploiting BMG music on a daily basis, without license. (See *Infra* ¶33), "Further, in the settings menu, Likee allows users to upload music to the platform "so other users can use them to record videos." Bigo has created a curated library of music that Bigo accumulates, stores, organizes and makes available to its users of its social media platform (the "Shared Library") for downloading, streaming, and use of such music in video content and posts. BMG knows of, and has identified over 1500 of its music tracks ("works") that have been reproduced, stored, made available to, and distributed to its users by Bigo through its Shared Library or through its other content sharing tools without a license. BMG is confident that further discovery would reveal additional infringements by the truckload.

93.     A list of the tracks that BMG has identified, to date, which have been, or currently are being made available by Bigo to its users on its platform through the Shared Library and or its other content sharing tools discussed herein is set forth on Exhibit A.

94.     From the Legal Notices on https://www.likee.video/agreement:
"Terms of Use last updated 4.13.23: **4. User Generated Content:**
you grant to Likee and its sub-licensees the permission, free, permanent, irrevocable, non-exclusive and fully sub-licensable rights and license, without any territorial or time limitations and without requiring any approvals and/or compensations, to use, ***copy, modify, adapt, publish***, translate, edit, dispose, ***create derivate works of, distribute, perform and publicly display*** such UGC (in whole or in part), ***and/or incorporate such UGC into existing or future forms of work, media or technology***…
You further agree that UGC you provide to Likee Services will not contain third party Copyrighted material, or material that is subject to other third party proprietary rights, unless you have permission from the rightful owner of the material or you are otherwise legally entitled to provide the material and to grant to Likee Services all of the license rights granted herein."

95.     Bigo brazenly states within its "legal notices and terms of use" that they have the right to "use, copy, modify, adapt, publish,… create derivative works of, distribute, perform and publicly display,… and or incorporate such user generated content into existing or future forms of work, media, or technology." When you consider that the definition of user generated content (UGC) also includes all the Copyrighted works that users have uploaded to the Shared Music Library, upon every video shared on the platform, the scope of Bigo's/Likee's Copyright infringement becomes clear.

96.     Bigo somehow magically absolves themselves from any liability that may have stemmed from the user uploading the content to their site in the first instance, and neglect to take any responsibility for their hosting of that content and further "copying, modifying, adapting, publishing, performing, distributing, creating

derivative works of, or incorporating such UGC into existing or future forms of work, media or technology." This is the definition of direct Copyright infringement.

97.    Upon information belief, Bigo makes the music in its Shared Library available to it's other users on the Likee platform. This conduct enables unlicensed like users to, among other things, download, stream, and synchronize BMG 's tracks with video content posted, using tools provided by Bigo, on the Likee app.

98.    By including BMG's tracks in its Shared Library without authorization, Bigo is actively offering BMG's tracks for download, streaming, user synchronization, reproduction and distribution to its (unlicensed) users without a proper license or any other authorization from BMG. Nor has BMG authorized any label, publisher, or distributor to make the tracks or any other music owned by BMG available on the Shared Library.

99.    Moreover, Bigo is deriving substantial financial benefit through advertising revenues, in app currency, subscription purchases, and increased user engagement derived from the inclusion of the tracks in its Shared Library. Bigo has not shared and is not sharing any portion of such advertising revenues with BMG in connection with the unauthorized use of BMG's tracks, and has not renumerated BMG in any way for the use of such tracks.

**L.    The Original Audio and Creators Academy Features Offered by Bigo Directly Infringe and Facilitate the Rampant Infringement of BMG's Tracks.**

100.    Bigo's infringement of BMG's tracks has grown even more rampant recently, in part due to Bigo's creation of tools and features made available to users that enable, encourage, and contribute to massive infringement of BMG's facts.

101.    For example, Bigo has introduced into its platform certain tools or features referred to as "Creators Academy".

102.    Likee users are given the ability by Bigo to create and post videos, often accompanied by an audio component, such as music selected by the creator of the

FOURTH AMENDED COMPLAINT

video. According to the Likee website, when a user creates a video like Likee allows that creator's uploaded music to subsequently be uploaded to the Likee platform into their "Shared Library", so that others (users) can use them to record their videos.

103.   Upon information and belief, when a Likee post contains music that is not procured from its Shared Library, or is not identified by Bigo as music available in its Shared Library (via certain metadata associated with the musical track), likewise original audio feature presumes that such music is owned by the user posting the video, and then Bigo identifies that music as "original audio." On information and belief, Bigo then allows any of its users who view that public video to simply click on that button to separate that music from the video content, and use a copy of the music for themselves and, upon information belief, to download or save the "original audio" to curate personal music library on the Likee platform for future use. Bigo provides the tools to allow the viewer to synchronize that music to the viewer's own video and promotes such tools publicly. Discovery will reveal the direct attribution of these infringed works and how the Creators Academy spawns a multitude of infringing works from each video it produces. This will be discovered in the metadata requested in discovery.

104.   In other words, the original audio feature of the Shared Library allows Bigo to extract, or separate the music from the original video content in which it was incorporated and reproduce it for any of their millions of users who wish to incorporate it in their own video content, irrespective of whether Bigo (or anyone else) has any authority to offer, reproduce, distribute or otherwise use that music in the first instance. No one, even BMG's licensed users, has the right to do this without BMG's express authorization. This feature enables, encourages, and contributes to exponential infringement of works, allowing Bigo's users infringement to be replicated in other users videos without limitation.

**M.    The DMCA Safe Harbor Requires More from Bigo With Respect To Stated Policy Regarding Repeat Infringers under 512 (i).**

105.   Bigo has ignored Plaintiffs repeated notices of infringement and requests for access to the tools that would help stop the infringement, namely "Repeat Infringer Policies" that are clearly enunciated and executed. Bigo has refused to enter into a license agreement with Plaintiffs. Perhaps Bigo is hoping to get away with it for as long as possible.

106.   BMG is committed to protecting its valuable intellectual property. It takes great pride in its compensation model which aims to pay music creators for their work, while also providing them with predictability and stability.

107.   BMG requires those using their works to have a license. BMG, as the manager of those rights fiercely protects its intellectual property rights, not only for itself but for its constituent musicians.

108.   Bigo is stealing thousands of BMG's songs at any given moment. Worse yet, it knows its doing so, and refuses to do anything to stop it much less pay for the use of the works without license. BMG brings this suit to stop this outright theft.

109.   BMG has learned that Bigo has been storing, curating, reproducing, and distributing BMG's music without authorization, offering BMG music for free without proper attribution or license, and thus infringing on (at least) hundreds of BMG's Copyrighted works across the Likee and Bigo platforms, on a massive scale, including by offering BMG's works through it's "Shared Music Library" for any of its users to use, including to download, stream, or incorporate into video content, for free, without license or other authorization. Furthermore, Bigo has created tools within it's "Creators Academy," which encourage and allows users to steal BMG's music from another users posted video content and use it in their own subsequent videos, resulting in exponential infringements on Bigo's platform. BMG has noticed to Bigo more than 1500 of BMG's tracks that are being stored, curated, reproduced, distributed and or otherwise exploited by Bigo through its music library or its content copying tools, in its "Creators Academy".

110.   The unauthorized use of BMG works across Bigo's platforms is rampant. As a result of Bigo's actions, BMG's music is available across millions of videos and have been viewed billions of times. By its own statement, Bigo suggests that there is upwards of "millions of daily new uploads" (containing BMG's music) to the Likee platform, on a daily basis. BMG knows of no current licenses in operation for use of its works on the Bigo platform, thus, on information and belief approximately less than 1% of the content using BMG's music on Bigo's platforms is licensed and thus, 99% of it is infringing use.

111.   These infringing uses are not merely users posting infringing works that Bigo has failed to take down, but much of this infringement is caused and done by Bigo itself. This case is about how Bigo itself actively and directly infringes BMG's works by storing them in its online music library and then it makes a curated selection of BMG's works available across its platforms. This case is about Bigo creating features which allow and encourage users to easily reproduce and synchronize BMG's music without authorization and without compensation to BMG, it's songwriters and it's recording artists.

**N.     Bigo has been on notice of its infringing conduct but has refused to address its widespread infringement**

112.   Bigo knows full well that it has been infringing BMG's content and has been on notice of its infringement since at least October 2020. Upon discovery of substantial infringing content on Bigo's platforms, BMG contacted Bigo in an effort to discuss such infringement. BMG has provided Bigo with representative lists of its content being infringed, some 30 plus letters detailing specific URLs for over 1500 infringing instances of BMG's works on the Likee app.

113.   BMG has repeatedly informed Bigo that the rampant infringement on the Likee platforms is not merely user generated content posted to the platform, but that Bigo through its own common content ("Shared Library") is actively storing, offering, curating, reproducing, performing and distributing BMG music to its users without a

license or authorization through the Shared Library and it's "Creators Academy" feature. BMG has repeatedly asked Bigo to police their works, their Copyrights and to stop the infringement. These efforts by BMG have been ongoing with the goal to get Bigo to cease this infringing conduct.

114.   Bigo can point to no licenses, or any type of authorization for its use of BMG works in its Shared Library and throughout its platforms.

115.   Despite this clear, unequivocal notice that BMG was the sole owner and sole potential licenser of its content, and despite BMG's repeated notifications of the infringement occurring continuously on Bigo's platforms, Bigo's knowing infringement of BMG's music, including the works, has continued unchanged.

116.   Not only has Bigo completely failed to address its own infringing conduct despite repeated notices from BMG, but upon information and belief, it has also continued to add unauthorized BMG content to its shared music library, while willfully turning a blind eye to the past and present rampant infringements.

### O.   The harm to BMG

117.   Bigo's conduct complained of herein denies BMG and it's rights holders of the revenues to which they are entitled and deprives their songwriters of an important source of income.

118.   BMG rights holders exploit and license widely popular songs on behalf of their songwriters, from which they derive their revenues and by which songwriters can earn a living. Without BMG's permission, Bigo is unilaterally exploiting existing markets, and new potential markets, while exercising rights that it does not possess, causing rights holders BMG and the songwriters of the works substantial, irreparable harm. The harm is at least threefold.

119.   First, the use is being made of BMG's works cause harm to rights holders licensing market for derivative works (e.g., synchronized videos). Right holders have entered into agreements for the use of their musical compositions on social media platforms, including to enable users of those platforms to synchronize songs with the

videos that users post to these platforms. Bigo bypasses this market when it should obtain licenses and pay BMG an appropriate license fee.

120. Second, the unauthorized availability of recordings of BMG's songwriters' musical compositions on the bigger platform could act as a direct substitute for listening to recordings of those musical compositions on a paid or ad supported social media platform or streaming service, or paying for a digital download, vinyl record, or compact disc. It is impossible for BMG to compete with the free infringing content Bigo provides.

121. Third, by unilaterally engaging in and assisting in the infringing use of BMG's musical compositions for free, Bigo is devaluing the license and lawful exploitation of rights holders musical compositions to social media companies and other platforms, generally. This activity interferes with BMG's relationships with other social media companies that enter into proper licenses or other agreements. Relatedly, everyday users of Bigo will view songwriters' musical compositions, and the recordings embodying those works as freely usable, grow increasingly immune to what it takes to produce those valuable works and, ultimately, become less willing to pay fair value for them.

122. In sum, Bigo is seizing for itself an artificial competitive advantage against companies that are not violating Copyright law, undercutting existing markets, cheapening the value of music, and undermining BMG's well established business models.

123. Bigo's infringement undermines the incentive for songwriters to create high quality songs for BMG rights holders and similar companies to invest in, license, and exploit those creative efforts, thereby hindering songwriters ability to earn a living from their trade.

FOURTH AMENDED COMPLAINT

### FIRST CLAIM FOR RELIEF: COPYRIGHT INFRINGEMENT
### (Plaintiff against Defendants Bigo Technologies and Joyy, Inc.)

124.   Plaintiff realleges and incorporates by reference each of the allegations in the paragraphs set forth above.

125.   Plaintiff owns the Copyrights in the musical compositions and sound recordings, including songs identified in paragraph 48 as well as thousands more to be identified through discovery, which Defendants have infringed.

126.   Plaintiff, or its predecessors in interest or their licensors, have registered the Copyrights to the musical compositions and sound recordings included in the Works, including songs identified in paragraph 50 as well as thousands more to be identified through discovery, with the United States Copyright Office, or applied for such registration, prior to commencing this action.

127.   Defendants have, without permission, reproduced, distributed, publicly performed (including by means of digital audio transmissions), and imported Plaintiff's musical compositions and sound recordings, including songs identified in paragraph 48 as well as thousands more to be identified through discovery.  The unauthorized use includes but is not limited to publishing video content featuring the works without proper authorization of licenses for the use.

128.   Defendants have infringed Plaintiff's exclusive rights to the sound recordings pursuant to 17 U.S.C. § 106 and § 602.  Plaintiff has not authorized Defendants to use any of the Works.

129.   Due to Defendants' acts of infringement, Plaintiff has suffered substantial damages to its business through failure to compensate Plaintiff for exploitation of the works.  Plaintiff has been harmed in an amount to be established at trial.

130.   Due to Defendants' acts of infringement, Plaintiff has suffered general and special damages to its business in an amount to be established at trial.

131.    Due to Defendants' acts of Copyright infringement as alleged herein, Defendants have obtained direct and indirect profits they would not otherwise have realized but for their infringement. As such, Plaintiff is entitled to disgorgement of Defendants' profits directly and indirectly attributable to Defendants' infringement in an amount to be established at trial.

132.    Defendants have infringed Plaintiff's Copyrights with actual or, at minimum, constructive knowledge of Plaintiff's rights such that Plaintiff is entitled to a finding of willful infringement and the statutory damages maximum of $150,000 per work under 17 U.S.C. § 504(c).

133.    Plaintiff has suffered, and will continue to suffer, great and irreparable injury due to Defendants' infringement that cannot be fully compensated by monetary damages.   Therefore, Plaintiff has no adequate remedy at law and is entitled to preliminary and permanent injunctions under 17 U.S.C. § 502, prohibiting Defendant from further infringing its Copyrights.

134.    Plaintiff BMG is the rights manager hired by the owners of valid Copyrights on all musical works Copyrights specifically identified in Exhibit A.

135.    Without authorization, Bigo was, is and continues to store, reproduce, distribute, and perform BMG's Copyrighted songs and works in violation of 17 U.S.C. § 106(1), (3), and (6), including but not limited to the works listed in Exhibit A hereto.

136.    This unauthorized storage, reproduction, distribution and performance to the public of BMG's Copyrighted songs in violation of 17 U.S.C.§106(1), (3), and (6) is precisely the volitional conduct by defendants that US Copyright law seeks to injunct.

137.    Without authorization, Bigo is making, or causing to be made, unauthorized reproductions of BMG's Copyrighted songs, including but not limited to certain of the tracks on Exhibit A hereto, by offering such works for permanent download, streaming, synchronization, and other uses to users through the "Shared Library" and "Creators Academy" features.

138.   Each time a user requests a copy of one of BMG songs available through the shared music library, Bigo makes a perfect, fixed digital copy of the work and transfers it to the user in violation of BMG's exclusive reproduction and distribution rights under 17 U.S.C. § 106(1) and (3).

139.   Each time a user requests to stream a copy of a BMG song available through its shared music library, Bigo publicly performs the work through a digital audio transmission to the user, in violation of BMG's exclusive performance rights under 17 U.S.C. § 106 (6).

140.   Each time a user affixes an BMG song to their video and uploads it for public viewing, Bigo by displaying those videos on its website Likee, does so in violation of BMG's exclusive synchronization rights under 17 U.S.C. §106.

141.   Bigo's acts of infringement are willful, intentional and purposeful, in disregard and indifferent to BMG's rights.

142.   As a direct and proximate result of Bigo's infringement of BMG's Copyrights and exclusive rights under Copyright, BMG is entitled to maximum statutory damages, pursuant to 17 U.S.C.§ 504 (c), in the amount of $150,000 with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C.§ 504 (c). Alternatively, at BMG's election, pursuant to 17 U.S.C. § 504 (b), BMG is entitled to their actual damages, including Bigo's profits from infringement, as will be proven at trial, but in no event less than $227 million dollars.

143.   BMG is also entitled to their costs, including reasonable attorneys fees, pursuant to 17 U.S.C. § 505.

144.   Bigo's conduct is causing and, unless enjoined by this court, will continue to cause BMG great and irreparable injury that cannot be fully compensated or measured in any monetary damages. Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C.§ 502, BMG is entitled to a permanent injunction prohibiting infringement of BMG's Copyrights and exclusive rights under Copyright.

## SECOND CLAIM FOR RELIEF: VICARIOUS COPYRIGHT INFRINGEMENT

### (BMG against Joyy, Inc.)

145.   Plaintiff realleges and incorporates by reference each of the allegations in the paragraphs set forth above.

146.   Defendant Joyy, Inc. is also vicariously liable for the infringement of Bigo through the Like application because Defendants had the right and ability to supervise the infringing conduct and because Defendants had a direct financial interest in the infringing product.

147.   Defendants had direct financial interest in Likee's activities by accepting payment Likee users including for content that features the infringing music.

148.   Due to Defendant Joyy, Inc.'s vicarious infringement alleged above, Plaintiff has suffered and will continue to suffer substantial damages to its business in an amount to be established at trial, as well as additional general and special damages in an amount to be established at trial.

149.   Due to Defendant Joyy, Inc.'s vicarious infringement as alleged above, Defendants have obtained direct and indirect profits they would have not otherwise realized but for the infringement. As such, Plaintiff is entitled to disgorgement of Joyy, Inc.'s profits directly and indirectly attributable to the infringement, in an amount to be established at trial.

150.   Defendant Bigo had the right and ability to supervise and control the infringing activity of users on the Likee app.

151.   Moreover, under section 512 of title 17, Bigo had a duty to adopt and reasonably implement a qualifying repeat infringer policy as per section 512(i), in order to qualify for the Safe Harbor provisions of the notice and takedown system.

152.   Bigo failed to adopt and reasonably implement a qualifying repeat infringer policy. In Bigo's failure to exercise that right and ability, it also created secondary liability of Vicarious Infringement under US Copyright law.

## THIRD CLAIM FOR RELIEF: CONTRIBUTORY COPYRIGHT INFRINGEMENT

### (BMG against Bigo Technologies Limited and Joyy, Inc.)

153.   Plaintiff realleges and incorporates by reference each of the allegations in the paragraphs set forth above.

154.   In addition to direct infringement, Defendants knowingly induced, caused, materially contributed to, participated in, encouraged, aided and abetted in, and resultantly profited from the illegal reproduction, importation, purchase, marketing, advertising, distribution, and/or public performance (including by digital audio transmission).

155.   On information and belief, Defendants were aware a specific instances of infringing use of the Works on the Likee application.

156.   By reason of the Defendants' contributory Copyright infringement as alleged above, Plaintiff has suffered and will continue to suffer substantial damages to its business in an amount to established at trial, as well as additional general and special damages in an amount to be established at trial.

157.   Due to Defendants' contributory Copyright infringement as alleged above, Defendants have obtained direct and indirect profits Defendants would not have otherwise realized but for the airlines' infringement.  As such, Plaintiff is entitled to disgorgement of Defendants' profits directly and indirectly attributable to Defendants' contributory infringement, in an amount to be established at trial.

158.   Defendants have committed acts of infringement alleged herein with actual or, at minimum, constructive knowledge of Plaintiff's rights such that Plaintiff is entitled to a finding of willful infringement.

159.   Defendants have been put on notice by way of proper notice procedures under the DMCA of a total of 1516 specific instances of infringing use of the works on the Likee application of BMG's protected Copyrighted works. Defendant Bigo knows or has reason to know of the infringing activity of Likee app users.

-34-

FOURTH AMENDED COMPLAINT

160.   Sound recordings and musical compositions owned by BMG have been and continue to be illegally reproduced, distributed, and publicly performed without authorization on Bigo's platforms in violation of 17 U.S.C.§ 501 *et seq.* BMG owns the Copyrights and the exclusive reproduction, distribution, and performing public performance rights, in the Copyrighted works listed in Exhibit A (along with many, many others.) Bigo is secondarily liable under the Copyright Act for such infringing acts, including it's users direct infringement of BMG's exclusive right to reproduce each time they download, stream or synchronize a copy of BMG's works from the Bigo's Shared Music Library. Additional infringing activity occurs each time a user uses a song in the "Shared Music Library" to create a video that includes one of BMG Copyrighted Works.

161.   Bigo is liable as a contributory Copyright infringer. Bigo has actual constructive knowledge of the infringing activity that occurs on its platforms. Through the creation, maintenance, and operation of Bigo's Shared music library and it's "Creators Academy" feature, Bigo is providing tools to its users to enable them to reproduce distribute, synchronize, and perform BMG's works without authorization. Bigo thereby knowingly causes and materially contributes to such unlawful reproduction, distribution, and performances of BMG's Copyright works, including those listed on Exhibit A here too, in violation of BMG's exclusive rights under the Copyright laws of the United States. 17 U.S.C. §106.

162.   In creation of the "Creators Academy" and the "Shared music library" Bigo intentionally induced and materially contributed to rampant infringement on the Likee app by its users. Those users infringing activity can be directly attributed to the actions of Bigo.

163.   Bigo's acts of infringement are willful, intentional, and purposeful, they disregard and show indifference to BMG's rights.

164.   As the direct and proximate result of Bigo's infringement of BMG's Copyrights and exclusive rights under Copyright, BMG is entitled to maximum

FOURTH AMENDED COMPLAINT

statutory damages, pursuant to 17 U.S.C.§504 (c), In the amount of $150,000 with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C.§ 504 (c). Alternatively, at BMG's election, pursuant to 17 U.S.C. §504(b), BMG shall be entitled to their actual damages, including Bigo's (Likee's) profits from infringement, as will be proven at trial, but in no event less than $227 million dollars.

165.   BMG is entitled to their costs, including reasonable attorneys fees, pursuant to 17 U.S.C.§505.

166.   Bigo's conduct is causing and, unless enjoined by this court, will continue to cause BMG great and irreparable injury that cannot be fully compensated or measured in money damages. Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. §502, BMG is entitled to a permanent injunction prohibiting infringement of BMG's Copyright and exclusive rights under Copyright.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following relief:

1.   Maximum statutory damages in the amount of $150,000 with respect to each Copyrighted work infringed, or for another proper amount under 17 U.S.C. § 504(c), or in the alternative for an award of Defendants' profits and for compensatory damages according to proof;

2.   An accounting, the imposition of a constructive trust, restitution of Defendants' unlawful proceeds, and damages according to proof;

3.   Punitive and exemplary damages as awarded at trial;

4.   A declaration that such direct Copyright infringement by Bigo is in fact willful;

5.   A temporary and final injunction to prevent or restrain further infringement and misappropriation of Plaintiff's Copyrights and exclusive ownership interests;

6.   Prejudgment interest;

7.     Plaintiff's costs, including attorneys' fees pursuant to 17 U.S.C. § 505; and such other and further relief as the Court may deem just and proper,

### ***DEMAND FOR JURY TRIAL***

Plaintiff hereby demands a jury trial on all issues so triable pursuant to Fed. R. Civ. P. 38 and the Seventh Amendment to the U.S. Constitution.

Respectfully submitted,

DATED: September 12, 2023          GERARD FOX LAW, P.C.

_____
Cirstan Fitch
Gerard Fox
*Attorneys for Plaintiff*

---

-37-

## PROOF OF SERVICE

I, Adriana Diaz, am employed in the County of Los Angeles, in the State of California. I am over the age of 18 and not a party to the above-mentioned matter. My business address is: GERARD FOX LAW, P.C., 1880 Century Park East, Suite 1410, Los Angeles, CA 90067. On September 12, 2023, I served the following document, described as **FOURTH AMENDED COMPLAINT** on the person(s) listed in the attached Service List.  The document was served by the following means:

| | |
|---|---|
| ☐ | **By personal service**.  I personally delivered the document to the persons at the addresses listed in the attached Service List.  For a party represented by an attorney, delivery was made to the attorney or at the attorney's office by leaving the documents, in an envelope or package clearly labeled to identify the attorney being served, with a receptionist or an individual in charge of the office, between the hours of 9 a.m. and 5 p.m.  For a party, delivery was made to the party or by leaving the documents at the party's residence with some person not younger than 18 years of age. |
| ☐ | **By United States mail**.  I enclosed the document in a sealed envelope or package addressed to the persons listed in the attached Service List and placed the envelope for collection and mailing following our ordinary business practices.  I am readily familiar with this business's practice for collecting and processing correspondence for mailing.  On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. |
| ☐ | **By overnight delivery**.  I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the persons at the addresses listed in the attached Service List.  I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier. |
| ☐ | **By messenger service**.  I served the documents by placing them in an envelope or packing addressed to the persons at the addresses listed in the attached Service List and providing them to a professional messenger service for delivery. |
| ☐ | **By facsimile transmission**.  Based on an agreement of the parties to accept service by fax transmission, I faxed the documents to the persons at the fax numbers listed in the attached Service List.  No error was reported by the fax machine that I used.  A copy of the record of the fax transmission, which I printed, is attached. |
| ☒ | **By electronic service**:  Based on a court order or an agreement of the parties to accept service by electronic transmission, I caused the documents to be sent to the persons at the electronic notification addresses listed in the attached Services List.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful. |

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: September 12, 2023

_____
Adriana Diaz

## SERVICE LIST

| | |
|---|---|
| GREENBERG TRAURIG, LLP<br>IAN C. BALLON (SBN 141819)<br>REBEKAH S. GUYON (SBN 291037)<br>1840 Century Park East, Suite 1900<br>Los Angeles, CA 90067<br>Telephone: 310-586-7700<br>Facsimile: 310-586-7800<br>E-mail: *Ballon@gtlaw.com*<br>       *GuyonR@gtlaw.com* | *Attorneys for Defendant*<br>*BIGO Technology Limited* |
| GREENBERG TRAURIG, P.A<br>DAVID SPENCER BLOCH<br>101 Second Street, Suite 2200<br>San Francisco, CA 94105-3668<br>415-590-5110<br>Fax: 415-707-2010<br>Email: blochd@gtlaw.com | *Attorneys for Defendant*<br>*JOYY Inc.* |