GREENBERG TRAURIG, LLP
IAN C. BALLON (SBN 141819)
REBEKAH S. GUYON (SBN 291037)
EMERSON LUKE (SBN 307963)
1840 Century Park East, Suite 1900
Los Angeles, CA  90067
Telephone:  310-586-7700
Facsimile:  310-586-7800
E-mail:      *Ballon@gtlaw.com*
             *GuyonR@gtlaw.com*
             *Lukee@gtlaw.com*

GREENBERG TRAURIG, LLP
DAVID S. BLOCH (SBN 184530)
101 Second Street, Suite 2200
San Francisco, CA  94105-3668
Telephone:  415-591-5110
Facsimile:   415-707-2010
E-mail: *BlochD@gtlaw.com*

Attorneys for defendant
BIGO Technology Limited

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BMG RIGHTS MANAGEMENT (US) LLC, a Delaware limited liability company,<br><br>    Plaintiff,<br><br>v.<br><br>JOYY INC., a Delaware corporation; BIGO TECHNOLOGY LIMITED, a Delaware corporation, and DOES 1 through 25, inclusive,<br><br>    Defendants. | Case No. 2:22-cv-01578-MCS-RAO<br><br>Assigned to Hon. Mark C. Scarsi<br><br>**DEFENDANT BIGO TECHNOLOGY LIMITED'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:  12/16/2024<br>Time: 9:00 a.m.<br>Place: Courtroom 7C |

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on December 16, 2024, at 9:00 a.m., in Courtroom 7C of the above-captioned Court, located at 350 W. 1st Street, Los Angeles, California 90012, Defendant Bigo Technology Limited ("Bigo US") will and hereby does move for an order granting summary judgment against Plaintiff BMG Rights Management (US) LLC ("BMG").

This Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, Statement of Uncontroverted Facts and Conclusions of Law, Declaration of David S. Bloch, all other pleadings and papers on file in this action, any oral argument that may be heard by the Court, and any other matters that the Court may deem appropriate.

DATED: November 11, 2024          GREENBERG TRAURIG, LLP

By    */s/ David S. Bloch*
       Ian C. Ballon
       Rebekah S. Guyon
       David S. Bloch

       Attorneys for Defendant BIGO Technology
       Limited

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **Table of Contents**

I.   INTRODUCTION..................................................................................1

  **A.  BMG Knowingly Sued the Wrong Parties.** ................................1

  **B.  The DMCA Safe Harbor Applies to the Likee App.** ..................2

II.   FACTUAL BACKGROUND ...............................................................3

III.   LEGAL STANDARD .........................................................................4

IV.   BIGO US DOES NOT OWN OR OPERATE THE LIKEE APP..................5

  **A.  Bigo US is Not the Operator of the Likee App.** ........................5

  **B.  Bigo US is Not an Alter Ego of the Operator of the Likee App.** ...............6

  **C.  With Discovery Closed, BMG Admits that It Lacks Sufficient Information to Establish Its Claim Against Bigo US.** ........................7

V.   THE LIKEE APP IS PROTECTED BY THE DMCA SAFE HARBOR .........8

  **A.  The DMCA Safe Harbor Applies to Likee's Operator.** ..............9

  **B.  Likee Meets the Safe Harbor Eligibility Requirements.** ............9

  **C.  Likee Satisfies the Safe Harbor Requirements Under § 512(c)(1).** .........13

   1.  Likee's Operator Did Not Have Requisite Knowledge of the Alleged Infringing Activity and Responded Expeditiously to Disable Access..............13

   2.  Likee's Operator Does Not Control or Receive a Direct Financial Benefit from the Alleged Infringing Activity. ................................17

VI.   CONCLUSION..................................................................................19

## <u>Table of Authorities</u>

**Page(s)**

**Federal Cases**

*Capitol Records, LLC v. Vimeo, LLC*,
  826 F.3d 78 (2d Cir. 2016) ...................................................................15

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986)...............................................................................4

*Cinq Music Grp., LLC v. Create Music Grp., Inc.*,
  2023 U.S. Dist. LEXIS 17204 (C.D. Cal. Jan. 31, 2023) .................14

*Cole v. CRST, Inc.*,
  150 F. Supp. 3d 1163 (C.D. Cal. 2015) .................................................7

*Columbia Pictures Indus., Inc. v. Fung*,
  710 F.3d 1020 (9th Cir. 2013) .............................................................14

*Corbis Corp. v. Amazon.com Inc.*,
  351 F. Supp. 2d 1090 (W.D. Wash. 2004) ...........................................10

*Ellison v. Robertson*,
  357 F.3d 1072 (9th Cir. 2004) .......................................................17, 18

*EMI Christian Music Grp., Inc. v. MP3tunes, LLC*,
  844 F.3d 79 (2d. Cir. 2016) .................................................................13

*Gill v. Momentum Dev.*,
  2016 U.S. Dist. LEXIS 204614 (C.D. Cal. Oct. 20, 2016) ..................9

*Lenz v. Universal Music Group*,
  815 F.3d 1145 (9th Cir. 2016) .............................................................16

*Los Alamitos Med. Ctr., Inc. v. Loc. Initiative Health Auth. For L.A.*,
  680 F. Supp. 3d. 1169 (C.D. Cal. 2023) ..............................................19

*Perfect 10, Inc. v. CCBill LLC*,
  488 F.3d 1102 (9th Cir. 2007) ....................................................*passim*

*Perfect 10, Inc. v. Cybernet Ventures, Inc.*,
   213 F. Supp. 2d 1146 (C.D. Cal. Apr. 24, 2002)................................................17

*Perfect 10, Inc. v. Giganews, Inc.*,
   847 F.3d 647 (9th Cir. 2017) ................................................8, 17, 18

*Rosen v. eBay, Inc.*,
   2015 U.S. Dist. LEXIS 49999 (C.D. Cal. Jan. 16, 2015)............................10, 12

*Rosen v. PCCW Global, Inc.*,
   2010 U.S. Dist. LEXIS 153124 (C.D. Cal. Dec. 29, 2010)...................4, 5, 8, 12

*Thale v. Apple Inc.*,
   2013 U.S. Dist. LEXIS 90013 (N.D. Cal. Jun. 26, 2013) ................................16

*Theta Chi Fraternity, Inc. v. Leland Stanford Junior Univ.*,
   212 F. Supp. 3d 816 (N.D. Cal. 2016) ....................................................6

*UMG Recordings, Inc. v. Shelter Cap. Partners LLC*,
   718 F.3d 1006 (9th Cir. 2013) ................................................9

*UMG Recordings, Inc. v. Veoh Networks, Inc.*,
   620 F. Supp. 2d 1081 (C.D. Cal. 2008) ............................................15

*Ventura Content, Ltd. v. Motherless, Inc.*,
   2013 U.S. Dist. LEXIS 189948 (C.D. Cal. Jul. 3, 2013)............................13

*Ventura Content, Ltd. v. Motherless, Inc.*,
   885 F.3d 597 (9th Cir. 2018) ................................................*passim*

*West Valley Med. Partners, LLC v. Shapow (In re Shapow)*,
   599 B.R. 51 (Bankr. C.D. Cal. 2019) ................................................7

*Woodard v. Labrada*,
   2021 U.S. Dist. LEXIS 189649 (C.D. Cal. Aug. 31, 2021) ............................2, 7

**Federal Statutes**

17 U.S.C. § 512(c) ................................................*passim*

17 U.S.C. § 512(i) ................................................10, 12

17 U.S.C. § 512(g) ................................................16

17 U.S.C. § 512(k) ................................................................................................9

**Rules**

Fed. R. Civ. P. 56 ............................................................................................4, 5

Fed. R. Evid. 201(b)(2) ..................................................................................6, 19

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

This Court should grant Bigo Technology Ltd's motion for summary judgment as against BMG Rights Management (US) LLC's sole remaining claim for contributory copyright infringement.   The Court should grant summary judgment for two distinct reasons: ***First***, it is undisputed that Bigo Technology Ltd. ("Bigo US") does not own or operate the Likee social media mobile application (the "Likee app"), which is the only alleged source of infringing activities. ***Second***, regardless of who owns or operates the Likee app, the undisputed facts demonstrate that the app is entitled to the safe harbor protections of the Digital Millennium Copyright Act ("DMCA"). After more than two and a half years of litigation, BMG still has no evidence to support its claims of copyright infringement, has produced no expert testimony, and has succeeded only in flouting this Court's rules and delaying the proper resolution of its baseless allegations. The Court should grant summary judgement.

### A.    BMG Knowingly Sued the Wrong Parties.

Neither Bigo US nor defendant Joyy, Inc.—a Delaware corporation that dissolved in 2018, well before the filing of this lawsuit—is the owner/operator of the Likee app. As Bigo US's discovery responses make plain, and as public information confirms, the Likee app is owned and operated by Likeme Pte. Ltd. in Singapore. BMG knows this: since December 2022, it has sent more than thirty DMCA take-down notices to Likeme Pte. Ltd., and not a single one to Bigo US.  Bloch Dec. ¶ 12, Ex. K.

Yet BMG persists in the fiction that Bigo US is responsible for the app. Indeed, BMG recently argued for the first time (in an October 2, 2024 post-informal discovery conference (IDC) statement) that "Bigo US is the alter ego of Likee." ECF 137 at 4. But the Court rejected BMG's newfound theory, finding that "BMG has not shown that Bigo US is an alter ego of [its affiliate] or any of the other third-party entities." ECF 142 at 3. Nor does the operative Fourth Amended Complaint (ECF 71, the "4AC") allege an alter

ego theory of liability. *Woodard v. Labrada*, 2021 U.S. Dist. LEXIS 189649, \*\*83-84 (C.D. Cal. Aug. 31, 2021) (Bernal, J.) (granting summary judgment where "[t]he FAC ma[de] no allegations of alter ego liability that would have placed [the] Defendants on notice of such a theory"—"Plaintiffs cannot oppose summary judgment on a theory of liability not alleged in the FAC").

Lately, BMG has promised to take a "new direction of discovery." ECF 144 at 2. But the time for that has passed. Expert discovery is now closed ***without any*** timely report from BMGs retained experts, ECF 143, and fact discovery closes on November 12, 2024, the Tuesday after this filing. After five pleading opportunities BMG has had every opportunity to flesh out its claim. The Court should grant summary judgment and put this case out of its misery.

## B.    The DMCA Safe Harbor Applies to the Likee App.

Even though it does not own or operate the Likee app, Bigo US established each of the requirements necessary for the Likee app to receive the safe harbor protections under the DMCA, foreclosing BMG's claims as a matter of law. ***First***, the undisputed evidence shows that—from the time BMG issued its first takedown notice to "copyright@likee.video" in December 2022—Likee's operator expeditiously disabled access to the allegedly infringing material. ***Second***, BMG has proffered no evidence that Likee's operator—much less Bigo US—receives a financial benefit attributable to the alleged infringement.  BMG only makes the attenuated claim that Likee "rewards" its users for creating content by "provid[ing] virtual currency called 'beans' or 'diamonds'" that "can be cashed out for real currency." ECF 71 ¶ 40. But that does not tie "beans" or "diamonds" *to the alleged infringement*.  Nor has BMG made any showing that that Likee's operator was in any way involved in suggesting that be made using unlicensed works. And, ***third***, it is undisputed that Likeme Pte. Ltd. is the "Likee Copyright Agent" on the "the U.S. Copyright Office website DMCA Designated Agent Directory." ECF 141-3; Bloch Dec. ¶ 2, Ex. A (BMG's Response to RFA 2): (admitting that "the U.S.

Copyright Office website DMCA Designated Agent Directory contains information for the entity Likeme Pte. Ltd."). The first DMCA-compliant notice was sent in December 2022, *after* the lawsuit was filed and, indeed, *at the Court's direction*. *See* ECF 51 at 7 ("Plaintiff confirmed that it did not issue any DMCA-compliant takedown notice to Defendants for any individual video, despite Likee's intellectual property policy outlining the specific procedures for presenting a takedown claim. … the Court, on its own motion, stays this case until Plaintiff demonstrates that it has availed itself of DMCA remedies … ."); Bloch Dec. ¶¶ 2, 12, Exs. A (BMG Responses to Bigo RFAs 15-17, admitting that "BMG's letter dated October 5, 2020" did not comply with the § 512(c)(1) notice requirements), K (BMG confirming no DMCA takedown notices before December 2022). BMG therefore cannot sustain its case challenging the Likee app, and summary judgment should be granted.

## II. FACTUAL BACKGROUND

Likee is a mobile application that allows its users to create and upload original videos to share with a global community of users. As BMG admits, "Likee ... is a social media application based on user-generated short video content." ECF 71 ¶ 4. When users create their original content, they can select music from a library available on the app or upload music stored locally on their personal devices. *Id.* ¶ 29. As the Court already has recognized, ECF 51, the Likee app has a policy of prohibiting "any content which constitutes copyright infringement," and requires its users to "ensure that you have the rights to upload to Likee any content under applicable law of your residence and such content shall not infringe the rights of any third parties and such content shall not violate any applicable laws and/or regulations." Bloch Dec. ¶¶ 3-4, Exs. B (Likee Intellectual Property Policies, C (Bigo Supp. Response Interrogatory 21). The Likee app further "reserves the right, with or without notice, at any time and in our sole discretion to block access to and/or terminate the accounts of any user who infringes any copyrights ... ." *Id.*; *see also id.* ¶ 5, Ex. D (Likee Community Guidelines).

BMG seeks to impose contributory copyright infringement liability for alleged misconduct against Bigo US—*not* the owner and operator, Likeme Pte. Ltd.—based on video content uploaded by Likee users. Since the beginning of this action, BMG has tried to state a claim that somehow gets around the dispositive facts that Bigo US is not the owner or operator of Likee (as BMG knew all along) and that the Likee app complies with the DMCA. This Court already outright dismissed BMG's direct copyright infringement claim, reasoning that "Plaintiff has again failed to establish the necessary causal nexus between Defendants' conduct and its users' illegal copying of Plaintiff's copyrighted works." ECF 99 at 5. The Court explained there is *no* "exercise [of] control other than by general operation of its website," because "it is the users themselves 'that select and upload every' work." *Id*. Further, "the allegation that Defendants encourage uploading better music *does not mean* Defendants encourage uploading *Plaintiff's* copyrighted music." *Id*. at 5-6 (emphasis added). BMG has not proffered any evidence to the contrary—and discovery is closed.

The sole remaining claim for contributory copyright infringement remains fatally defective. Bigo US is distinct from the owner and operator of the Likee app, and (as the Court already held) Bigo US is *not* an alter ego of—and does not exercise legal control over—Likeme Pte. Ltd. ECF 142 at 3. Moreover, Likee's operator is immunized from liability because the app fully complies with the DMCA. BMG cannot sustain its case against Bigo US, and summary judgment should be granted.

## III.   LEGAL STANDARD

Pursuant to Rule 56(a), a moving party "is entitled to judgment as a matter of law" on "each claim or defense—or the part of each claim or defense" for which the movant demonstrates "there is no genuine dispute as to any material fact." It is the moving party's initial burden to show "there is an absence of evidence to support the nonmoving party's case." *Rosen v. PCCW Global, Inc.*, 2010 U.S. Dist. LEXIS 153124, at *4 (C.D. Cal. Dec. 29, 2010) (Wright, J.) ("*Rosen I*"), citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24

(1986); *see also* Fed. R. Civ. P. 56(c)(1) (moving party may "cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials"). If that initial burden is met, then "the nonmoving party must go beyond the pleadings and identify specific facts that show a genuine issue for trial." *Rosen I*, 2010 U.S. Dist. LEXIS 153124, *4. "Conclusory, speculative testimony … is insufficient," and "[o]nly genuine disputes over facts that might affect the outcome of the suit will properly preclude the entry of summary judgement." *Id*.

## IV.    BIGO US DOES NOT OWN OR OPERATE THE LIKEE APP

### A.    <u>Bigo US is Not the Operator of the Likee App.</u>

The two entities that BMG has brought this lawsuit against, Bigo US and Joyy Inc., are not Likee's owners or operators. Bigo US was a Delaware corporation and a subsidiary of Bigo Technology Pte. Ltd. (of Singapore), which operates the Bigo Live streaming application (https://www.bigo.tv). Bigo US never owned, controlled, or otherwise operated the Likee app. Bloch Dec. ¶¶ 6-7, Exs. E (Bigo Responses to Interrogatories 1-25, objecting that Bigo US "does not own or control the Likee app"); Ex. F (Bigo US Rule 30(b)(6) witness testifying that Bigo US does not "own or control" the Likee app, LikeMe Pte. Ltd., or Bigo Technology Pte. Ltd. ("Bigo SGB).  Bigo US ceased operations in March 2022, less than a week after BMG sued (ECF 1) and before the proof of service of the summons and complaint was filed (ECF 19). *See id*. ¶ 8, Ex. G (BIGO0000002),

Co-defendant Joyy Inc. was a Delaware corporation that dissolved in October 2018, well before this lawsuit was filed and before BMG's first notice of alleged infringement was submitted to Likee's operator. *Id*. ¶ 9, Ex. H (BIGO0000001). Joyy has never appeared in this litigation. There is no discernible relationship between Bigo US and Joyy

Inc. *Id*. ¶ 6, Ex. E (Bigo Response to Interrogatory 25: "Bigo has no relationship with [Joyy Inc.] and has never had a relationship with [Joyy Inc.]").

Critically, the foregoing information regarding the improperly named defendants was, at all relevant times, publicly available.[1] BMG has no reasonable basis for having pursued the wrong parties for the entirety of the litigation. As the Court already noted, "BMG appears to have been fully aware of Bigo SG since before the inception of this lawsuit." ECF 142 at 3; *but see* ECF 1, 27, 29, 37, 71 (*never* substituting defendants from Complaint through the 4AC). BMG's persistence against the wrong defendants is particularly confounding where the record shows that BMG submitted dozens of DMCA takedown notices to Likee's designated agent, Likeme Pte. Ltd., at copyright@likee.video—and *none* to Bigo US. Bloch Dec. ¶¶ 2, 12, Exs. A (BMG Responses to RFA Nos. 1-2 and 13, admitting that the "DMCA Designated Directory contains information for the entity Likeme Pte. Ltd. that is dated since December 6, 2022" and that the "takedown notices were sent to: copyright@likee.video"), K (BMG confirming that "Likee PTE, period, Limited is the entity on the letter").

**B.   Bigo US is Not an Alter Ego of the Operator of the Likee App.**

BMG claimed for the first time in its October 2, 2024 IDC statement (and later, vaguely, in its Rule 30(b)(6) deposition) that Bigo US is an "alter ego" of the Likee app's owner and operator. ECF 137 at 4. But this theory of liability cannot salvage BMG's misdirected claims against Bigo US for *at least* two reasons.

---

[1] The Court may take judicial notice of entity information pages available through the Delaware Secretary of State for Bigo Technology Ltd. and Joyy Inc., true and correct copies of which were submitted with Bigo's post-IDC brief (ECFs 141-1, 141-5) and are filed here as Bloch Dec., Exs. G and H. Judicial notice of these official public records is proper under Fed. R. Evid. 201(b)(2). *See Theta Chi Fraternity, Inc. v. Leland Stanford Junior Univ.*, 212 F.Supp.3d 816, 823 (N.D. Cal. 2016) (taking judicial notice of public filings from the California Secretary of State).

*First*, BMG is barred from any attempt to defeat summary judgment under an alter ego theory of liability because BMG failed to allege it in the operative 4AC. *Woodard*, 2021 U.S. Dist. LEXIS 189649 at **83-84 (granting summary judgment where "[t]he FAC ma[de] no allegations of alter ego liability that would have placed [the] Defendants on notice of such a theory[,]" reasoning that "Plaintiffs cannot oppose summary judgment on a theory of liability not alleged in the FAC"), citing *Cole v. CRST, Inc.*, 150 F. Supp. 3d 1163, 1169 (C.D. Cal. 2015) (Phillips, J.) ("courts routinely hold that a plaintiff cannot oppose summary judgment based on a new theory of liability because it would essentially blindside the defendant with a new legal issue after the bulk of discovery has likely been completed.").

*Second*, even if BMG could assert a new theory of liability for the first time now, "[a]lter ego is an extreme remedy, sparingly used." *West Valley Med. Partners, LLC v. Shapow (In re Shapow)*, 599 B.R. 51, 75 (Bankr. C.D. Cal. 2019). And the Court has already ruled that it should not apply here because "BMG has not shown that Bigo US is an alter ego of Bigo SG or any of the other third-party entities." ECF 142 at 3. BMG should not be permitted to pursue this baseless theory any further.

## C. With Discovery Closed, BMG Admits that It Lacks Sufficient Information to Establish Its Claim Against Bigo US.

As recently as October 2024, BMG sought a Court order to compel Bigo US to disclose information belonging to the operator of the Likee app—a third party not named in this lawsuit—claiming this information "is vital to the completeness of this action." ECF 137 at 5. The Court denied BMG's request, ECF 142 at 3, and in so doing rightly concluded that the "vital" information BMG claims to require cannot be obtained from Bigo US. With expert discovery now closed and fact discovery closing one day after the date of this filing, BMG has run out of time to find evidence giving rise to some triable issue of fact. The Court has already ruled that it will not amend its Scheduling Order to accommodate yet another pleading amendment from BMG. ECF 128. As the evidence

stands, BMG cannot establish an indirect copyright infringement claim against Bigo US. This Court should grant summary judgment. *Rosen I*, 2010 U.S. Dist. LEXIS 153124, at *4 (granting summary judgment where "there is an absence of evidence to support the nonmoving party's case.").

## V.    THE LIKEE APP IS PROTECTED BY THE DMCA SAFE HARBOR

Even if Bigo US *were* the owner and operator of the Likee app (it is not), BMG's lawsuit still would fail as a matter of law. As this Court explained in its order dismissing BMG's claim for direct infringement without leave to amend, liability for contributory copyright infringement (BMG's sole remaining claim) "may be imposed for intentionally encouraging infringement through specific acts," but "only where [the defendant']s participation in the infringing conduct of the primary infringer is substantial." ECF 99 at 7; *accord, Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 647, 673 (9th Cir. 2017) ("*Giganews*") ("One contributorily infringes when he (1) has knowledge of another's infringement and (2) either (a) materially contributes to or (b) induces that infringement."). BMG has not met this burden: the record contains *no* evidence that Bigo US had any knowledge of alleged infringement by the Likee app prior to this lawsuit, much less had any role in contributing to or inducing alleged infringement.

Moreover, BMG's claim for contributory infringement fails because Likee's operator is a service provider entitled to the safe harbor protections under the DMCA. The DMCA provides that "[a] service provider *shall not be liable* ... for infringement of copyright by reason of the storage at the direction of a user of material that resides on a system or network controlled or operated by or for the service provider" so long as the service provider "does not have actual knowledge" of the infringing material or activity, "is not aware of facts or circumstances from which infringing activity is apparent," or "upon obtaining knowledge or awareness, acts expeditiously to remove, or disable access to, the material." 17 U.S.C. § 512(c)(1) (emphasis added). Further, the service provider must demonstrate that it "does not receive a financial benefit directly attributable to the

infringing activity, in a case in which the service provider has the right and ability to control such activity" and "has designated an agent to receive notifications of claimed infringement." 17 U.S.C. § 512(c)(1)-(2); *see also* ECF 99 at 8-9 (outlining DMCA safe harbor requirements). Likee's service provider meets all the requirements of the DMCA safe harbor, and therefore, BMG's claim for indirect copyright infringement cannot stand.

### A.    The DMCA Safe Harbor Applies to Likee's Operator.

It is uncontested that Likee's operator is a "service provider" as defined by the DMCA safe harbor. 17 U.S.C. § 512(k)(1)(B) (broadly defining "service provider [to] mean[] a provider of online services or network access, or the operator of facilities therefor."); *UMG Recordings, Inc. v. Shelter Cap. Partners LLC*, 718 F.3d 1006, 1019 (9th Cir. 2013) (rejecting the argument that "Congress wanted to confine § 512(c) exclusively to web hosts rather than reach a wider range of service providers"); *Gill v. Momentum Dev.*, 2016 U.S. Dist. LEXIS 204614, at *5 (C.D. Cal. Oct. 20, 2016) (King, J.) (describing applications such as "YouTube, Facebook, Vimeo, [and] iTunes" as "service providers"). BMG admits that "Likee ... is a social media application based on user-generated short video content." ECF 71 ¶ 4; ECF 99 at 2. Through the application, Likee's operator provides an "intermediary platform developed by LIKEME PTE. LTD ('LIKEME') for users to record and share wonderful moments of life" for millions of creators. ECF 141-2. There is no dispute that Likee's operator falls squarely within the broad definition of "service provider," and BMG has not alleged otherwise. *See Shelter Cap.*, 718 F.3d at 1015, n.4 (holding that defendant "qualifies as a 'service provider' because [plaintiff] does not contend otherwise").

### B.    Likee Meets the Safe Harbor Eligibility Requirements.

The Likee app meets the requisite conditions for safe harbor eligibility.

*First,* Likee's operator "adopted and reasonably implemented, and inform[ed]" its users of a repeat infringer policy. 17 U.S.C. § 512(i)(1)(A). *See also Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1109 (9th Cir. 2007) ("*CCBill*") ("a service provider

'implements' a policy if it has a working notification system, a procedure for dealing with DMCA-compliant notifications, and if it does not actively prevent copyright owners from collecting information needed to issue such notifications."). While "repeat infringer" is not statutorily defined, it is well established that the "statute permits service providers to implement a variety of procedures, [and] an implementation is reasonable if, under 'appropriate circumstances,' the service provider terminates users who repeatedly or blatantly infringe copyright." *CCBill*, 488 F.3d at 1109. Importantly, "the case law is clear that § 512(i) does not require that a service provider reveal its decision-making criteria to its users," nor does "the implementation of a policy need [to] be perfect to render it sufficient to qualify a service provider for protection under § 512(c)." *Rosen v. eBay, Inc.*, 2015 U.S. Dist. LEXIS 49999, at *20 (C.D. Cal. Jan. 16, 2015) (Fitzgerald, J.) ("*Rosen II*"), citing *Corbis Corp. v. Amazon.com Inc.*, 351 F. Supp. 2d 1090, 1103 (W.D. Wash. 2004); *see also Corbis*, 351 F. Supp. 2d at 1101 ("The fact that Congress chose not to adopt such specific provisions when defining a user policy indicates its intent to leave the policy requirements, and the subsequent obligations of the service providers, loosely defined.").

At all relevant times, Likee's repeat infringer policy was publicly posted as part of its Intellectual Property Policy, true and correct copies of which were produced in this litigation. Bloch Dec. ¶ 3, Ex. B (BIGO0000267-289 and BIGO0001180-1186). The policy includes a specific "Repeated Infringement" disclosure, which provides that:

> Any User content which infringes intellectual property of any third party would be deleted. Your account may be suspended or terminated as a result of violation of multiple infringement or other breaching of terms of service and any community guideline issued by Likee from time to time.

*Id.* at BIGO0000273, BIGO0001185. The referenced Community Guidelines further provide that "any content or behavior" that "[i]nfringes on the copyrights, trademarks, or other intellectual property rights of a third part[y]" is prohibited content, which "may

result in appropriate penalties" ranging from short and long-term account restrictions, permanent bans, and content removals. *Id.* ¶ 5, Ex. D (BIGO0000250-261, BIGO0001187-1194: "User accounts involved in serious or repeated violations will be penalized or banned"; prohibiting "[c]ontent that infringes on the copyrights, trademarks, or other intellectual property rights of a third part[y]").

In accordance with Congress's intent, Likee's policies do not mandate a specific number of "strikes" or similar threshold but, instead, contemplate that different penalties may be appropriate for different violations. Each of the Intellectual Property Policy and Community Guidelines also informs users of the proper procedures for notifying Likee's operator of any infringing activity on the app, including email correspondence to Likee's designated agent, Likeme Pte. Ltd. at <u>copyright@likee.video</u>. Bloch Dec. ¶ 2, Ex. A (BMG Responses to RFA Nos. 13-14, admitting that takedown notices and emails were sent to Likee's operator at copyright@likee.video); ECF 71-1 (group exhibits to 4AC showing takedown notices to feedback@likee.video and copyright@likee.video).

Nor is there a factual dispute whether Likee's repeat infringer policy was reasonably implemented. For example, in a two-week period in September 2023, Likee's operator suspended 74 users for copyright-law violations based on the Intellectual Property Policy. Bloch Dec. ¶ 4, Ex. C (Bigo Supp. Response to Interrogatory 20). Regarding the only Likee account that BMG identified in the 4AC (¶ 41),[2] user HouseOfBrooklyn was suspended for a two-week period in September 2023 for "Music Copyright Infringement" pursuant to Likee's repeat-infringer policy. Bloch Dec. ¶ 4, Ex. C (Bigo Supp. Response to Interrogatory 21). More generally, suspensions on the Likee

---

[2] The 4AC also contains an email in which a BMG representative asserts, without evidence, that an account holder under the "@Fresh Beat MCs" handle is a "serial infringer." ECF 71-1 at 110. While this user is not associated with a Likee account and is, rather, the name of a musical artist, insofar as BMG issued takedown notices specifying musical compositions by "Fresh Beat MCs," Likee's operator promptly removed them pursuant to the DMCA. Bloch Dec. ¶ 4, Ex. C.

---

platform last two weeks but can be extended at the discretion of the app's operator, *see id.*, which is fully consistent with the law. *See CCBill*, 488 F.3d at 1109; *Rosen II*, 2015 U.S. Dist. LEXIS 49999, *20.

***Second***, pursuant to § 512(i)(1)(B), Likee both "accommodates and does not interfere with standard technical measures" for investigating alleged infringement. Standard technical measures "enable copyright owners to establish some technical means so that service providers can spot and exclude infringing material without substantial expense." *Ventura Content, Ltd. v. Motherless, Inc.*, 885 F.3d 597, 615 (9th Cir. 2018) ("*Ventura II*"). There is nothing in the record to indicate that the owner of the Likee app interfered with any measure that its users could use to identify or protect copyrighted works. Nor does BMG allege that Likee's operator somehow "actively prevent[ed] copyright owners from collecting information needed to issue [DMCA] notifications." *CCBill*, 488 F.3d at 1109. In fact, BMG's own allegations demonstrate that it was capable of collecting and submitting to Likee's designated agent the song titles, artist names, and links to the works that were allegedly subject to copyright infringement on the Likee app. ECF 71-1 (comprising one letter and numerous takedown emails sent to copyright@likee.video); *see Rosen I*, 2010 U.S. Dist. LEXIS 153124, *8 (noting that the copyright holder "availed himself of [the ISP]'s DMCA Policy by sending his own DMCA notices without difficulty in obtaining information needed to issue such notices").

The undisputed evidence further shows that the operator of the Likee app responded within days to each BMG DMCA notice. Bloch Dec. ¶ 12, Ex. K ("Generally speaking, when a DMCA letter would go out, a response would come back."). Similarly, the undisputed evidence shows that, in appropriate circumstances, actions were taken against alleged infringers. Bloch Dec. ¶ 4, Ex. C (Bigo Supp. Response to Interrogatory 20). There is no genuine issue of material fact that Likee's operator reasonably implemented the repeat infringer policy with respect to any alleged infringing activity. *See CCBill*, 488 F.3d 1102, 1111-12.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## C.    Likee Satisfies the Safe Harbor Requirements Under § 512(c)(1)-(2).

As the Court explained, an eligible service provider must further demonstrate it meets the safe harbor requirements under § 512(c)(1) and (2). ECF 99 at 8-9. In addition to expeditiously removing or disabling access to infringing material, it cannot receive a financial benefit that is directly attributable to the infringing activity where it has the right and ability to control that activity and must have a designated agent to receive takedown notices. Likee's operator meets all three requirements.

### 1.  Likee's Operator Did Not Have Prior Knowledge of the Alleged Infringing Activity and Responded Expeditiously to Disable Access.

***First,*** BMG has no basis to establish prior actual knowledge of the alleged infringing activity. Actual knowledge plainly means "knowledge that is actual, not merely a possible inference from ambiguous circumstances." *Ventura II,* 885 F.3d at 609. "[T]he Ninth Circuit has rejected the contention that 'actual knowledge' can be found if a service provider has a 'general knowledge that its services could be used to post infringing material.'" *Ventura Content, Ltd. v. Motherless, Inc.*, 2013 U.S. Dist. LEXIS 189948, at *16 (C.D. Cal. Jul. 3, 2013) (Wilson, J.) ("*Ventura I*") (citation omitted); *see also EMI Christian Music Grp., Inc. v. MP3tunes, LLC*, 844 F.3d 79, 92 (2d. Cir. 2016) ("a copyright owner must point to a defendant's 'actual knowledge or awareness of facts or circumstances that indicate *specific and identifiable instances* of infringement.'") (citation omitted) (emphasis added).

Here, BMG admits that Likee's operator did not know of the alleged infringements until it "began sending formal infringement notices to [Likee's operator] on a near weekly basis beginning in December 2022, which go as far back as October 5th 2020[.]" ECF 71 ¶ 63. As BMG admits, "other than the October 2020 letter, BMG did not send any DMCA takedown notices until after an agent was registered with the [C]opyright [O]ffice." Bloch Dec. ¶ 13, Ex. K (Rule 30(b)(6) Deposition of BMG at 28:12-18).

But BMG's October 2020 letter does not constitute an actionable notice, let alone a DMCA-compliant one. Section 512(c) "sets forth the requirement for such 'takedown notices,' which include 'identification of the copyrighted work [and] identification of the allegedly infringing material' ... ." *Cinq Music Grp., LLC v. Create Music Grp., Inc.*, 2023 U.S. Dist. LEXIS 17204, at *4 (C.D. Cal. Jan. 31, 2023) (quoting § 512(c)(3)(A)) (Staton, J.); *see also CCBill*, 488 F.3d at 1112 ("Compliance is not 'substantial' if the notice provided complies with only some of the requirements of § 512(c)(3)(A).").

BMG did not properly notify Likee's operator of the alleged infringements until more than nine months after it initiated this lawsuit in March 2022. *Compare* ECF 1 *with* ECF 71-1; *see* Bloch Dec. ¶ 2, Ex. A (BMG Responses to Bigo RFAs 15-17, admitting that BMG's October 2020 letter did *not* "name the compositions BMG claims to own or possess the right to assert," "include any citation to links that identify any composition or copyright that BMG claims to own or possess the right to assert," or "identify any specific instance of alleged infringement of any composition or copyright that BMG claims to own or possess the right to assert"); *see also Ventura II*, 885 F.3d at 609 (finding that, unlike here, if notice of the infringing material was provided "*before* filing th[e] lawsuit and [the service provider] had not taken them down, then [the service provider] would have lost its safe harbor") (emphasis added). And BMG *never* sent a DMCA takedown notice to Bigo US.  Bloch Dec. ¶¶ 2, 13, Exs. A (BMG Responses to RFAs 1-2, 13-14) and K (Rule 30(b)(6) Deposition of BMG at 28:12-31:6); *see* ECF 71-1. On these uncontested facts, BMG cannot establish Bigo US's actual knowledge, or even the Likee operator's.

**Second,** outside of the notifications beginning on December 29, 2022, BMG fails to establish any basis for apparent knowledge of the alleged infringing material. Apparent or "red flag" knowledge "turns on whether the provider was *subjectively aware of facts* that would have made the *specific infringement objectively obvious* to a reasonable person." *Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1043 (9th Cir. 2013)

(emphasis added). "[H]osting material capable of copyright protection, with the general knowledge that the site could be used to share infringing material, is not enough to impute [red flag] knowledge," even where "[t]he material [i]s much more likely to arouse awareness of infringement ... because it include[s material] by well-known celebrities." *Ventura II*, 885 F.3d at 610, citing *UMG Recordings, Inc. v. Veoh Networks, Inc.*, 620 F.Supp.2d 1081 (C.D. Cal. 2008) (Matz, J.). Similarly, that a service provider "relies on mass uploading by users" does not absolve the copyright holder's obligation to demonstrate specific "facts making infringement obvious." *Id*., citing *Capitol Records, LLC v. Vimeo, LLC*, 826 F.3d 78 (2d Cir. 2016). "In order for a website to qualify as a 'red flag' of infringement, it would need to be apparent that the website instructed or enabled users to infringe another's copyright." *CCBill*, 488 F.3d at 1114. The law does not otherwise "place the burden of determining whether [content is] actually illegal on a service provider." *Id*.

Here, BMG's allegations fall entirely short of what is needed to demonstrate "red flag" knowledge. ECF 71 ¶ 155 (stating that "[o]n information and belief, Defendants were aware a [sic] specific instances of infringing use of the Works on the Likee application"). It is *uncontested* that BMG did not submit any formal takedown notification to Likee's operator until December 29, 2022, which was the first time BMG provided any modicum of detail that could be used to identify specific compositions or other BMG copyrighted material that was alleged to be used on the Likee app. Bloch Dec. ¶¶ 2, 12, Exs. A, K. Prior to December 2022, BMG has identified only one communication (in October 2020, to "Bigo Technology Pte. Ltd." in Singapore—*not* defendants Bigo US or Joyy Inc., *see* ECF 71-1 at 4), but admits that it is not a DMCA takedown notice. Bloch Dec. ¶ 2, Ex. A (BMG Responses to RFAs 15-17).

Based on the foregoing, there is no genuine dispute regarding the lack of facts to establish the requisite basis for red flag knowledge by Bigo US (or anyone else) prior to BMG's December 29, 2022 notice. There are also no facts that establish the Likee app

"instructed or enabled users to infringe another's copyright." *CCBill*, 488 F.3d at 1114. Indeed, this Court found that there is ***no*** "exercise [of] control other than by general operation of its website," because "it is the users themselves 'that select and upload every' work." ECF 99 at 5. BMG's allegations of red flag knowledge remain unsupported by well-pleaded facts. *See Thale v. Apple Inc.*, 2013 U.S. Dist. LEXIS 90013, at *7 (N.D. Cal. Jun. 26, 2013) (affirming that "conclusory allegations unsupported by factual data are insufficient to defeat defendants' summary judgment motion") (citation omitted).

***Third,*** in response to each DMCA-compliant notice, Likee's operator expeditiously disabled access to the allegedly infringing material. Bloch Dec. ¶ 4, Ex. C (Bigo Supp. Response to Interrogatory 20). BMG does not deny that Likee actually disabled access to the specified works. "Section 512(c) permits services providers ... to avoid copyright infringement liability for storing users' content if—among other requirements—the service provider 'expeditiously' removes or *disables access to the content* after receiving [proper] notification." *Lenz v. Universal Music Group*, 815 F.3d 1145, 1151 (9th Cir. 2016) (emphasis added).

Each of the DMCA-compliant notices that BMG submitted was promptly acted upon by Likee's operator. The evidence shows that Likee's operator provided a courtesy response, within just a day or two, to every one of BMG's notices, "confirm[ing] that all the alleged infringing videos notified by [BMG] have been taken down." *See* ECF 71-1; ECF 83 at 4-5; Bloch Dec. ¶¶ 4, 11, Exs. C (Bigo Supp. Response to Interrogatory 20, noting that in response to BMG's post-4AC takedown notices "listing 36,615 URLs ... the operator of Likee confirmed that access to the allegedly infringing content had been disabled" just three days later), J-1 and J-2 (additional responses to BMG notices at BIGO0000003-239). This satisfies Section 512(g) as a matter of law. *See* 17 U.S.C. § 512(g)(2) (requiring only that the service provider to "take[] reasonable steps promptly to notify the *subscriber* that it has removed or disabled access to the material") (emphasis added).

### 2. Likee's Operator Does Not Control or Receive a Direct Financial Benefit from the Alleged Infringing Activity.

BMG also fails to allege facts sufficient to demonstrate that Likee's operator "had the right and ability to control" the allegedly infringing material while "receiv[ing] a financial benefit directly attributable to the infringing activity." 17 U.S.C. § 512(c)(1)(B). "To have the right and ability to control, a service provider must be able to exert 'substantial influence' on its users' activities," which "involves 'something more than the ability to remove or block access to materials posted on a service provider's website.'" *Ventura II*, 885 F.3d at 613 (citations omitted). The Ninth Circuit has found that a service provider exerts "high levels of control," for example, when it "prescreens sites, gives them extensive advice, prohibits the proliferation of identical sites," provides "detailed instructions regard[ing] issues of layout, appearance, and content," and ensures "that celebrity images do not oversaturate the content." *Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 213 F. Supp. 2d 1146, 1181-82) (C.D. Cal. Apr. 24, 2002) (Baird, J.).

Where there is no evidence "that some revenue [is] *distinctly* attributable to the infringing material at issue," courts will not find there is a qualifying financial benefit. *Ventura II*, 885 F.3d at 613 (emphasis added). Even where users are rewarded with "points redeemable for items of negligible value, such as coffee mugs and t-shirts, [ ] that does not amount to encouraging uploads of infringing material," nor does "exchanging points for cash" constitute control of the uploads where "the payouts [a]re nominal." *Id*. Rather, "[f]inancial benefit exists where the availability of infringing material acts as a draw for customers." *Ellison v. Robertson*, 357 F.3d 1072, 1078 (9th Cir. 2004) (citations omitted); *see also Giganews*, 847 F.3d at 673 (a finding of direct financial benefit "demands more than evidence that customers were 'drawn' to [the service provider's website] to obtain access to infringing material ***in general***") (citations omitted).

BMG alleges that "Likee provides virtual currency called 'beans' or 'diamonds'" and that "beans can be cashed out for real currency." ECF 71 ¶ 40. From here, BMG

---

BIGO US'S MOTION FOR SUMMARY JUDGMENT                    17

makes the attenuated claim that "[t]he revenue generated from in-app purchases is driven in part by the unlicensed use of the Works" and further alleges that "[t]he primary purposed of the exchange of diamonds between users is to reward content creation on the platform." *Id.* ¶ 41. Nothing in these allegations amounts to a viable claim that Likee's operator, much less Bigo US, generated any revenue that is *distinctly* attributable to the alleged unlicensed Works. *See Ventura II*, 885 F.3d at 613. Nor does BMG demonstrate that Likee's users were drawn to the app ***specifically*** to access BMG's alleged copyrighted materials. *Giganews*, 847 F.3d at 673 (noting "this action is a ***specific*** lawsuit by a ***specific*** plaintiff against a ***specific*** defendant about ***specific*** copyrighted [works]; it is not a lawsuit against copyright infringement in general") (emphasis added). There thus is no factual basis to support a finding of a financial benefit for Likee's operator, let alone Bigo US. *Id.*; *Ellison*, 357 F.3d at 1078.

BMG's allegations also fail to establish that Likee's operator was at all involved in suggesting musical compositions to overlay with videos, curating images and layouts, providing detailed advice, or otherwise exerted high levels of control or influence beyond the mere ability to "remove or block access to materials posted on the Likee application." *Id.* It identifies nothing that amounts to substantial influence over the allegedly infringing material. *See* ECF 99 at 5-6 (finding no "exercise [of] control other than by general operation of its website" and that "the allegation that Defendants encourage uploading better music ***does not mean*** Defendants encourage uploading ***Plaintiff's*** copyrighted music") (emphasis added).

### 3. There is a Designated Agent to Receive Likee Takedown Notifications.

Last, pursuant to 17 U.S.C. § 512(c)(2), there is a designated agent with the U.S. Copyright Office to receive takedown notices related to alleged infringing material on the Likee app. That registered DMCA agent is Likeme Pte. Ltd., 30 Pasir Panjang Road #15-

31A, Mapletree Business City, 117440, Singapore.  ECF 141-3. [3]  It is *not* defendant Bigo US. BMG admits that Likeme Pte. Ltd. is the "Likee Copyright Agent" on "the U.S. Copyright Office website DMCA Designated Agent Directory." Bloch Dec. ¶¶ 2, 13, Exs. A (BMG Responses to RFAs 1-4), K (BMG R. 30(b)(6) witness testifying that "BMG didn't—other than the October 2020 letter—BMG did not send DMCA takedown notices until after an agent was registered with the [C]opyright [O]ffice"). There is no triable issue of fact that Likee has designated an agent to receive DMCA notifications.

* * *

Thus, even if Bigo US were the owner and operator of the Likee app, it would still be entitled to summary judgment because the Likee app is fully compliant with the DMCA and hence its owner and operator is protected by the DMCA safe harbor.

## VI.    CONCLUSION

For the foregoing reasons, Bigo US respectfully requests that the Court grant summary judgment claim against BMG's sole remaining claim for contributory copyright infringement.


DATED: November 11, 2024              GREENBERG TRAURIG, LLP


                                   By    */s/ David S. Bloch*
                                         Ian C. Ballon
                                         Rebekah S. Guyon
                                         David S. Bloch

                                         Attorneys for Defendant BIGO Technology
                                         Limited

---

[3] The Court may take judicial notice of the DMCA Designated Agent Directory page for Likee's operator under Rule 201(b)(2). *Los Alamitos Med. Ctr., Inc. v. Loc. Initiative Health Auth. For L.A.*, 680 F. Supp. 3d. 1169, 1174 (C.D. Cal. 2023) (Holcomb, J.) ("The Court may … take judicial notice of 'public record[s] downloaded from a public agency's official website'").

## <u>**WORD COUNT CERTIFICATION [L.R. 11-6.2]**</u>

Pursuant to Local Rule 11-6.1, the undersigned certifies that this brief contains 6,720 words (not including captions and signatures) as counted by Microsoft Word's word-count feature.

DATED:  November 11, 2024          GREENBERG TRAURIG, LLP

                              By    */s/ David S. Bloch*
                                    David S. Bloch

                                    Attorney for Defendant BIGO Technology
                                    Limited