1
2
3
4

Gerard P. Fox (SBN 151649)
gfox@gerardfoxlaw.com
GERARD FOX LAW P.C.
1880 Century Park East, Suite 1410
Los Angeles, California 90067
Telephone:   (310) 441-0500
Facsimile:   (310) 441-4447

5
6

Attorneys for Plaintiff
*BMG Rights Management*

7

# UNITED STATES DISTRICT COURT

8

## CENTRAL DISTRICT OF CALIFORNIA

9
10
11

BMG RIGHTS MANAGEMENT (US) LLC, a Delaware limited liability company,

12

Plaintiff,

13

14

v.

15
16
17

JOYY INC., a Delaware corporation; BIGO TECHNOLOGY LIMITED, a Delaware corporation; and DOES 1 through 25, inclusive,

18

Defendants.

19
20

Case No.: 2:22-cv-01578-MCS-RAO
Hon. Mark C. Scarsi, Dept. 7C

Hon: Rozella A. Oliver
United States Magistrate Judge

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Date:        December 16, 2024
Time:        9:00 a.m.
Place:       Courtroom 7C

21
22
23
24
25
26
27
28

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

# **TABLE OF CONTENTS**

I. STATEMENT OF FACTS: ........................................................................6

   A. Likee Infringes BMG's Catalogue; Did Not Have a Registered DMCA Agent; and Bigo Was Incorporated in Delaware With a Single Board Member From a Singapore Sister Company: .............................................6

   B. There Is a Material Amount of Undisputed Evidence That Bigo Was the Company That Operated the Likee App. For Most of This Litigation if Not Even Today: ...............................................................................................7

   C. The Named Defendants and Their Sister Companies Have Taken Actions During This Litigation That Violate a Series of Laws: ..............................8

   D. Bigo and Its Sister Companies Have Not Enforced a Repeat Offender Policy and Violate the DMCA and Copyright Law: ..................................9

II. LEGAL ARGUMENT: ........................................................................11

   A. A Single Enterprise Rule Must Be Applied Here: ..................................11

   B. A Company Sued May Not Merely Suspend Operations After Being Sued and Move Their Functions to Another Company Without Violating Many Laws: .................................................................................................... 13

   C. Successor Liability Rules Apply: ...........................................................16

III. CLOSING: ........................................................................................18

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Cases**

*Aghaian v. Minassian*,
  59 Cal.App.5th 447, 456 (Cal. Ct. App. 2020) ......................................15

*Also In re 3dfx Interactive, Inc.*,
  389 B.R. 842, 863–64 (Bankr. N.D. Cal. 2008).....................................14

*Berlin 2012-2014, Ltd. v. Babywatch, Inc.*,
  2019 WL 13203776, at *12 (N.D. Cal. Oct. 10, 2019)...........................14

*Branzell v. California Cryobank LLC*,
  480 F.Supp.3d 1080, 1086 (C.D. Cal. 2020) .........................................18

*CenterPoint Energy, Inc. v. Superior Court*,
  157 Cal.App.4th 1101, 1120, 69 Cal.Rptr.3d 202 (2007).............17, 18

*City of Los Angeles v. Wells Fargo & Co.*,
  22 F.Supp.3d 1047, 1062 (C.D.Cal.2014) .......................................17, 18

*Cortez v. Vogt*,
  52 Cal.App.4th 917, 931 (Cal. Ct. App. 1997) ......................................13

*Doe v. Unocal Corp.*,
  248 F.3d 915, 926 (9th Cir.2001)...........................................................17

*Franklin v. USX Corp.*,
  87 Cal.App.4th 615, 625 (Cal. Ct. App. 2001) ......................................17

*Gerritsen v. Warner Bros. Entertainment Inc.*,
  116 F.Supp.3d 1104, 1127 (C.D. Cal. 2015) .........................................17

*Greenspan v. LADT LLC*,
  191 Cal.App.4th 486, 512–513 (Cal. Ct. App. 2010) ............................12

*Grey Fox, LLC v. Plains All Am. Pipeline, L.P.*,
  2019 WL 4196066, at *10 (C.D. Cal. Apr. 8, 2019)..............................18

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

*In re Momentum Dev., LLC,*

    649 B.R. 333, 340 (9th Cir. 2023): ........................................................14

*Katzir's Floor and Home Design, Inc. v. M-MLS.com,*

    394 F.3d 1143, 1150 – 1151 (9th Cir. 2004)...........................................18

*Kremen v. Cohen,*

    No. 5:11-CV-05411-LHK, 2012 WL 2919332, at *3 (N.D. Cal. July 17, 2012).14

*Las Palmas Associates v. Las Palmas Center Associates,*

    235 Cal.App.3rd 1220, 1249-250 (Ct. App. Cal. 1991)..........................12

*Leek v. Cooper,*

    194 Cal.App.4th 399, 411 (Cal. Ct. App. 2011) ....................................12

*Macedo v. Bosio,*

    86 Cal. App. 4th 1044, 1051 n.6, 104 Cal.Rptr.2d 1 (2001)..................14

*McCandless Group, LLC v. The Coy Collective, Inc., et al.,*

    Case No. LA CV 21-02069-DOC-(KESx)..............................................11

*Me. State Retirement Sys. v. Countrywide Fin. Corp.,*

    No. 10–CV–302, 2011 WL 1765509, *5, 2011 U.S. Dist. LEXIS 53359, at *17

    (C.D.Cal. Apr. 20, 2011) ......................................................................16

*Mejia v. Reed,*

    31 Cal.4th 657, 669-670 (Cal. 2003)....................................................16

*Monaco v. Bear Stearns Cos.,*

    No. CV 09–05438–SJO (JCx), 2011 WL 4059801, *19 (C.D.Cal. Sept. 12, 2011)

    .............................................................................................................17

*No Cost Conference, Inc. v. Windstream Communications, Inc.,*

    940 F.Supp.2d 1285, 1299 (S.D.Cal.2013).....................................16, 17

*PGA West Residential Assn., Inc. v. Hulven Internat., Inc.,*

    14 Cal.App.5th 156, 169 (Cal. Ct. App. 2017) .....................................15

*Ray v. Alad Corp.,*

    19 Cal.3d 22, 28 (Cal. 1977) ................................................................17

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

*Sanger v. Ahn*,

   2019 WL 1229660, at *7 (N.D. Cal. March 15, 2019) .........................................14

*Toho-Towa Co., Ltd. v. Morgan Creek Productions, Inc.*,

   217 Cal.App.4th 1096, 1109 (Ct. App. Ca. 2013) ...................................12

*Tran v. Farmers Group, Inc.*,

   104 Cal.App.4th 1202, (Cal. Ct. App. 2002) .......................................12

*United States v. Bestfoods*,

   524 U.S. 51, 64–65 (1998) ......................................................17

**Statutes**

Cal. Civ. Code § 3439.07(a)(3)(C) .........................................14

Cal. Civ. Code §§ 3439.04(a)(2), 3439.05(a) ...............................14

Cal. Corp. Code §§ 6719; 6720(a) .........................................16

Civ. Code, § 3439.04, subd. (b) ...........................................15

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

I.    **STATEMENT OF FACTS:**

**A. Likee Infringes BMG's Catalogue; Did Not Have a Registered
DMCA Agent; and Bigo Was Incorporated in Delaware With a
Single Board Member From a Singapore Sister Company:**

In the summer of 2020, the General Counsel and Vice President of BMG
Rights Management (US) LLC ("BMG"), Ketih Hauprich, learned of an app known
as Likee that featured many compositions administered by and within the catalogue
of BMG, and realized they had not sought a license like nearly every other similar
app. had.  (Dep. of Mr. Hauprich at 15:21-25).[1]  Mr. Hauprich discovered that Likee
did not have as the US Copyright law required a DMCA agent on file with the US
Copyright Office files. (Dep. of Mr. Hauprich at 19:1-16).  Given no entity registered
a DMCA agent for the Likee platform doing business in the United States, and using
audio of thousands of copyright protected musical compositions, Mr. Hauprich tried
to work through a convoluted spiders web of companies.  He saw that Bigo advertised
alongside Likee. (*See* Ex. A to Decl. of Mr. Fox).  He located a Delaware incorporated
Bigo, and learned that the sole director for this company was a top executive of a
related sister company in Singapore.  (Dep. of Mr. Hauprich at 29:23 – 30:4; 64:18 –
65:16).

Mr. Hauprich having concluded the US Incorporated Bigo had a sole board
member from a sister company in Singapore, and that Likee did not have a registered
DMCA agent, decided to write to one of Singapore companies for which he could
find an address.  That letter went out on October 5, 2020.  (Dep. of Mr. Hauprich at
18:1-25). Mr. Hauprich testified in his deposition that in October 2020 "it was

---

[1] The cited excerpts from the Dep. of Ms. Miller and Dep. of Mr. Hauprich can be found within the
Ex.'s K & L of the Decl. of Mr. Fox.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

impossible to tell the corporate structure of this company." (Dep. of Mr. Hauprich at 22:9-16).

### B. There Is a Material Amount of Undisputed Evidence That Bigo Was the Company That Operated the Likee App. For Most of This Litigation if Not Even Today:

Bigo corresponded with Apple on legal issues pertinent to the Likee app and used Bigo email addresses. (*See* Ex. B to Decl. of Mr. Fox). There is a application for the Likee logo that was filed by Bigo with the United States Trademark office. (*See* Ex. C to Decl. of Mr. Fox). Bigo's own website identifies Bigo Live and Likee as their products. (*See* Ex. D to Decl. of Mr. Fox). There are also a flurry of emails from Bigo executives to Keith Hauprich where they identify themselves as top persons in charge of dealing with the Likee app and any license to be negotiated. Each used a Bigo email address. (*See* Ex.'s E & F to Decl. of Mr. Fox).

As noted, Bigo's own web site home page prominently informs the visitor that their products include Bigo Live and Likee. Further, on the "about me" page they stated that "BIGO"s video -based products and services have gained immense popularity , with users in more than 150 countries. These include Bigo Live (live streaming) and Likee (short form video)." (*See* Ex. D to Decl. of Mr. Fox).

Also as noted, there were a flurry of emails from top Bigo senior executives using the Bigo email address to Keith Hauprich. For example, Vivian Wei responded from a Bigo email address to Mr. Hauprich's concern about the infringement of musical compositions in the BMG catalogue. Ms. Wei identified herself as being from "Bigo/Likee app." and "responsible for global music licensing & partnerships." (*See* Ex. E to Decl. of Mr. Fox). This was followed by a similar email from another Bigo email address from Katzen Liu. This was followed by another email on a Bigo email address, this time from Neil at Bigo in which Neil introduced himself as being

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

in charge of music copyright issues.  Other Bigo employees are copied in the email.
(*See* Ex. F to Decl. of Mr. Fox).

### C. The Named Defendants and Their Sister Companies Have Taken Actions During This Litigation That Violate a Series of Laws:

BMG sued the two American companies that were affiliated with sister companies in Singapore, the two named defendants, both incorporated in Delaware and both had a single person on their board who was a top executive of the Singapore companies.  One was named Bigo Technologies Limited and the other was named JOYY, Inc… None of the Bigo executives speaking with Keith Hauprich drew a distinction between the American Bigo and the Singapore sister company.  (Dep. of Mr. Hauprich at 63:1-25).  At the deposition of Keith Hauprich only weeks ago, Defense counsel market a document showing that the executives who run the Bigo and JOYY entities had caused the American Bigo to be suspended.  The document did not say the company was dissolved or terminated, but rather their status was suspended. (*See* Ex. W of Decl. of Mr. Fox). However, the 30(b)(6) witness knew nothing concrete about any of this other than there was an American company. (*See e.g.* Dep. of Ms. Miller at 7:14 – 9:25, 10:5 – 14:6, 17:17 – 22, 19:22 – 21:13).  It appears that the same might be the status of the American JOYY company.  However, the law does not allow a company sued to simply "suspend" operations and change those over to another company without making arrangements for the payment of creditors and dealing with  pending litigation claims, and if this was not the law, most companies with sister companies in other countries would simply suspend the American company and avoid liability.   Opposing counsel has made no representation of a fund set up to handle the claims against the companies sued, but since "suspended" since the filing of the lawsuit, not bankrupt or dissolved, just "suspended."

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Needless to say, as Mr. Hauprich stated over and over that "I don't know the corporate structure of your client. It seems very convoluted and intended to make it almost impossible to send the right thing to the right target. It almost seems designed to confuse and obfuscate." (Dep. of Mr. Hauprich at 24:20-24). Also, the person put forth as the 30(b)(6) witness for Bigo, stated repeatedly how vast the corporate structure was and cites this as a reason to nearly not answer any question other than four asked her by Defense counsel at the end of her deposition.

It appears that maybe at some point, some hand that runs these companies might have moved the work being done by Bigo to another company or at least some paper company in Singapore. None of that changes the fact that for most this litigation if not nearly all of it, Bigo has run the Likee app, and the evidence presented makes that clear.

### D. Bigo and Its Sister Companies Have Not Enforced a Repeat Offender Policy and Violate the DMCA and Copyright Law:

Qutie a bit after this lawsuit was filed Bigo registered a DMCA agent to comply with the Copyright laws and the DMCA. Mr. Hauprich then sent a massive number of take down notices to the address listed for this agent. Mr. Hauprich explained: "During the first six months of 2023, I personally sent – or I personally drafted and/or caused to be sent about 30 DMCA complaint notices listing hundreds of infringing URLs to the email address designated for DMCA notices." (Dep. of Mr. Hauprich at 16:9-16). However, the response of Bigo and any entities forming the same enterprise was not to comply with the law. Again, the General Counsel of BMG explains: "…BMG has sent many DMCA notices over the course of this matter. Thirty in 2023. Three more in 2024. And then you can draw your own conclusion on my first letter of October 2020. There have been many DMCA notices…And each and every instance what's taken down is the video component. The audio (BMG's copyright

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

protected compositions) is always left up." Mr. Hauprich further explained "But the audio-only version of BMG's composition always stays online to date." Mr. Hauprich provided even more details: "For example, during those thirty DMCA notices I've sent in 2023, there was an artist or a user House of Brooklyn referenced in the very first DMCA letter, still up and thriving today. There is no repeat infringer policy. The music is rampant, infringement is rampant, so I can send DMCA notices from here until I retire. The problem exists." (Dep. of Mr. Hauprich 25:23 – 26:23).

BMG is a large, well known company, and their General Counsel and Vice President is very versed in the copyright law and the process of issuing take down notices and negotiating blanket license. This situation has not just been frustrating but exasperating. Mr. Hauprich explained in reference to his take down notices: "The email is directed at the owner and operator of the Likee app, which we covered off earlier. I found to be infringing without [a] license." Its intended to get to whomever the owner and operator of the Likee app is, including Bigo Technology Limited, Bigo Technology PTE Limited, Like PTE Limited, Joyy, whomever it may be. Again, its very convoluted." (Dep. of Mr. Hauprich at 22:12 – 13; 24:20 – 24; 31:21 – 32:3).

The United States Copyright Law are federal laws to be respected by any companies that do business in the United States, and are not to be disrespected or escaped by playing a game of "Where's Waldo."[2] The law of this country forbids the gamesmanship that has taken place over the course of this litigation. In fact, in a case also handled by BMG's law firm that was before Judge Carter in the District

---

[2] A party who has complied with early disclosure requirements or who has responded to discovery demands from opposing parties is under a duty to supplement or correct the disclosure or discovery response to include the information later acquired. (*See e.g.* FRCP 26(e)). This supplement is required to be done "promptly" and "without the need for a request from opposing counsel or an order from the court." (*Jones v. Travelers Cas. Ins. Co. of America*, 304 F.R.D. 677, 679 (N.D. Cal. 2015)). Defendants cannot be permitted to 'hide the ball' during litigation and then complain when Plaintiff calls out their failure to disclose.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Court in Orange County, on facts very similar and the case only weeks from trial, the Judge allowed an amendment to add the company that took over from the company sued, and continued the trial date and allowed additional discovery. (*See McCandless Group, LLC v. The Coy Collective*, *Inc., et al.*, Case No. LA CV 21-02069-DOC-(KESx), ECF #231: "Civil Minute Order" (C.D. Cal. October 23, 2023) (Wherein the Honorable Judge Carter stated: "To balance ensuring the plaintiff's access to justice with reaching a speedy resolution of proceedings for the individuals involved, the Court will grant Plaintiff leave to file an amended complaint including the fraudulent transfer claim…"). Laws are meant to be respected.

## II.   <u>LEGAL ARGUMENT</u>:

### A. A Single Enterprise Rule Must Be Applied Here:

The corporate structure between the two Bigo companies, the two JOYY companies, Likeme and Likee is convoluted, vast and so confusing the 30(b)(6) for Bigo could not answer most the basic questions asked about this structure just calling it "vast." (Dep. of Ms. Miller at 10:25). When asked how many Bigo companies there were in this convoluted company  Marie Miller, the 30(b)(6) witness explained:  "I know of at least three, but I'm sure the corporate structure is much larger than that, I don't know the full corporate structure." Ms. Miller also admitted the company had an office in Los Angeles.  (Dep. of Ms. Miller at 9:10-20). Also, according to a corporate disclosure statement filed by the Defendants, all four entities have an interest in the outcome of this matter.  (*See* Ex. G to Decl. of Mr. Fox).  According to Likee's Wikipedia page, they are owned by Likeme, and Bigo (Joyy). (*See* Ex. J to Decl. of Mr. Fox). Bigo is the only entity for which Plaintiff's counsel could find a registration in the United States to do business.  This is a serious point, because if a company is not registered to do business in, for example, the State of California it cannot operate within the State and cannot defend itself in court.  Finally, Bigo admits

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

in their responses to discovery that Likee is a "Sibling Corporation. (*See* Ex.'s H & I to Decl. of Mr. Fox).

The "single-enterprise rule" should be applied in this case.[3] "In effect what happens is that the court, for sufficient reason, has determined that though there are two or more personalities, there is but one enterprise; and that this enterprise has been so handled that it should respond, as a whole, for the debts of certain component elements to it. The court thus has constructed for purposes of imposing liability an entity unknown to any secretary of state comprising assets and liabilities of two or more legal personalities,; endowed that entity with the assets of both and charged it with liabilities of one or both." (2 March's Cal.Corp. Law (3rd Ed 1990) Section 1623, Page 1416, quoting a law review article by Professor Berle, found at 47 Columbia Law Review (1947) Pages 343-350; *Las Palmas Associates v. Las Palmas Center Associates,* 235 Cal.App.3rd 1220, 1249-250 (Ct. App. Cal. 1991)). This law must be applied by the Court in this case or an injustice will occur.[4]

---

[3] (*See e.g. Leek v. Cooper*, 194 Cal.App.4th 399, 411 (Cal. Ct. App. 2011); *Greenspan v. LADT LLC*, 191 Cal.App.4th 486, 512–513 (Cal. Ct. App. 2010); *Tran v. Farmers Group, Inc.*, 104 Cal.App.4th 1202, (Cal. Ct. App. 2002) (wherein the Courts discuss how the single-enterprise rule may operate when otherwise seemingly separate corporations are actually integrated in pursuit of a single business purpose)).

[4] (*See Toho-Towa Co., Ltd. v. Morgan Creek Productions, Inc.*, 217 Cal.App.4th 1096, 1109 (Ct. App. Ca. 2013): "There is substantial evidence for the trial court's finding that MCP, B.V. and Ltd. were part of a single business enterprise…This evidence supports the trial court's conclusion that the Morgan Creek entities, though formed as separate corporations, were operated with integrated resources in pursuit of a single business purpose, and that MCP so dominated the finances, policies and practices of B.V. and Ltd. that the latter had no separate "mind, will or existence" of their own, but were merely conduits through which MCP conducted its business… it would be inequitable to uphold B.V.'s separate existence under the circumstances of this case…Toho–Towa was not told and did not know that B.V.'s financial operations were structured by MCP in such a way that it never received any money from its licensees, and thus would not have funds to meet its payment obligations under the agreement."

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### B. A Company Sued May Not Merely Suspend Operations After Being Sued and Move Their Functions to Another Company Without Violating Many Laws:

It is well established that once an entity is sued, it may not simply avoid liability by suspending its operations and moving its functions and assets and responsibilities to another entity to avoid liability. The "suspension" of a company is not the equivalent of filing for bankruptcy or the appointment of a receiver. If a company is sued in litigation, it must set up a reserve for potential liability as an accounting function. Where is that reserve? When the 30(b)(6) witness says that there are three Bigo entities, and that there is an LA office but she knows nothing about most of it and nothing about the LA office, beyond the fact a single enterprise must be imposed, one cannot sanction a defense premised on suspending the companies sued and rearranging the names of corporations within a vast organization of related companies so at any given time any company can deny liability. In fact, much of this transcend into what are known as fraudulent transfers.

UFTA (California's Uniform Fraudulent Transfer Act – now Uniform Voidable Transactions Act - UVTA) applies to claims before the judgment is secured during pending litigation.[5] Federal Courts within the 9th Circuit equally recognize the

---

[5] (*See Cortez v. Vogt*, 52 Cal.App.4th 917, 931 (Cal. Ct. App. 1997): "Thus it is clear the main thrust of the UFTA, as with the Uniform Fraudulent Conveyance Act, is **that the act permits, but does not require, a creditor to bring suit to set aside a fraudulent transfer before the claim has matured**. Under this scheme of law the question arises: If a party asserting creditor status in a pending action is not required under the UFTA to file suit to set aside an alleged fraudulent transfer until the creditor obtains a final judgment, under what circumstances, and when, does the prescribed limitations period for bringing the attack on the transfer begin to run? In our view, **the fact that the creditor may pursue the unmatured claim to judgment, followed by a suit to set aside the fraudulent transfer**, suggests it would be inappropriate to begin the running of the limitations period for the fraudulent transfer action before the creditor choosing to pursue a judgment actually obtains the judgment." (emphasis added).

---

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

doctrines encapsulated by the UVTA.[6] Essentially, this body of fraudulent transfer and fraudulent conveyance law, operates to void the transfer of assets:

> "[Cal. Civ. Code] Section 3439.04(a)(1) identifies fraud as a basis for voiding a transfer of assets, providing that a transfer by a debtor is voidable if it was made "[w]ith actual intent to hinder, delay, or defraud any creditor of the debtor." Cal. Civ. Code 3439.04(a)(1). The other two sections at issue permit transfers to be voided if reasonable equivalent value is not received and other criteria, such as insolvency, are established. See Cal. Civ. Code §§ 3439.04(a)(2), 3439.05(a). These sections make no reference to fraud."

(*SBC Berlin 2012-2014, Ltd. v. Babywatch, Inc*., 2019 WL 13203776, at *12 (N.D. Cal. Oct. 10, 2019).

The relief is tailored so that one who conspires with a fellow fraudster or tortfeasor, can share liability. (*See Sanger v. Ahn*, 2019 WL 1229660, at *7 (N.D. Cal. March 15, 2019) (Wherein the Court discusses "**the UVTA's broad authority to award "[a]ny other relief the circumstances may require,**" " citing Cal. Civ. Code § 3439.07(a)(3)(C), and held that Plaintiff may bring a claim against 'Lance Ahn' if they can show that "he conspired to violate the UVTA, **even if he was not himself a transferee or beneficiary**.") (emphasis added)). Without the ability to individually structure justice and remedies on a case-by-case basis pertaining to the frauds or

---

[6] (*See e.g. In re Momentum Dev., LLC*, 649 B.R. 333, 340 (9th Cir. 2023): "*Cortez* is not limited to fraudulent transfers made and obligations incurred during a pending lawsuit. Pyramid also argues that *Cortez* is not applicable because the holding of that case is limited to fraudulent transfers that occur during pending litigation. The same argument was rejected by the California appellate court in *Macedo v. Bosio*, 86 Cal. App. 4th 1044, 1051 n.6, 104 Cal.Rptr.2d 1 (2001)."; *See Also In re 3dfx Interactive, Inc.*, 389 B.R. 842, 863–64 (Bankr. N.D. Cal. 2008); *Kremen v. Cohen*, No. 5:11-CV-05411-LHK, 2012 WL 2919332, at *3 (N.D. Cal. July 17, 2012) & the ancillary proceeding *Kremen v. Cohen*, No. 05CV01319 JM (LSP), 2005 WL 8173340, at *1 (S.D. Cal. Nov. 1, 2005).

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

transfers at hand – the UVTA would otherwise leave many Plaintiffs feeling aggrieved.[7]

With all of this in mind, "[e]ven without actual fraudulent intent, a transfer may be fraudulent as to present creditors if the debtor did not receive 'a reasonably equivalent value in exchange for the transfer' and 'the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.' " (*PGA West Residential Assn., Inc. v. Hulven Internat., Inc*., 14 Cal.App.5th 156, 169 (Cal. Ct. App. 2017)).

Nonetheless, fraud is quite a low threshold to confirm herein as Civil Code section 3439 provides that a transfer is fraudulent if the debtor did not receive reasonably equivalent consideration and either "(1) Was engaged or about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or (2) Intended to incur, or believed or reasonably should have believed that he or she would incur, debts

---

[7] (*See e.g. Aghaian v. Minassian*, 59 Cal.App.5th 447, 456 (Cal. Ct. App. 2020):

"Whether a debtor had the actual intent to hinder, delay, or defraud a creditor is a question of fact. [Citations omitted]. Among other so-called badges of fraud indicating such intent, [citations omitted], the fact finder may consider whether: (1) the debtor made the transfer to an insider; (2) the debtor retained possession or control of the property after the transfer; (3) the debtor had been sued before making the transfer; (4) the debtor removed or concealed assets; (5) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred; and (6) the transfer occurred shortly before or shortly after a substantial debt was incurred (Civ. Code, § 3439.04, subd. (b)). None of these factors is determinative, and no minimum or maximum number of factors is required. [Citations omitted].").

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

beyond his or her ability to pay as(a)(2)they became due." (*Mejia v. Reed*, 31 Cal.4th 657, 669-670 (Cal. 2003)).

Given the facts repeatedly mentioned in the pleadings and hearings herein, as well as within this filing, it is apparent that Defendants have no qualms creating legal intricate legal façades in attempt to not only fool this Court, but Plaintiff.

### C. Successor Liability Rules Apply:

When a related entity folds there are principles of successor liability that apply here.[8]  As an aside, Defense Counsel might provide the court a declaration declaring that one Bigo entity does not run Likee, but then which Bigo entity applied for the trademark in the Bigo name for Likee, and which Bigo entity employed and paid all those senior executives who emailed and called Keith Hauprich of BMG claiming to be in charge of copyright issues for Likee, and which Bigo entity is it that has had web page and Wikipedia page claiming it runs Likee? It is time for that gamesmanship to stop.[9]

---

[8] California's Corp. Codes similarly link the principles of successor liability and the UVTA. (*See e.g.* Cal. Corp. Code §§ 6719; 6720(a): "A corporation which is dissolved nevertheless continues to exist for the purpose of winding up its affairs, prosecuting and defending actions by or against it and enabling it to collect and discharge obligations…"; 6720(b): "No action or proceeding to which a corporation is a party abates by the dissolution of the corporation or by reason of proceedings for winding up and dissolution thereof."; 6721(a): "In all cases where a corporation has been dissolved, any person to whom assets were distributed upon dissolution may be sued in the corporate name upon any cause of action against the corporation arising prior to its dissolution."; 6910: "Foreign corporations transacting intrastate business shall comply with Chapter 21 (commencing with Section 2100) of Division 1, except as to matters specifically otherwise provided for in this part and except that Section 2115 shall not be applicable."

[9] Generally, "when a corporation purchases all or most of the assets of another corporation, the purchasing corporation does not assume the debts and liabilities of the selling corporation...There are, however exceptions to this general rule. Successor liability is governed by state law under the Erie doctrine." (*No Cost Conference, Inc. v. Windstream Communications, Inc*., 940 F.Supp.2d 1285, 1298 – 1299 (S.D. Cal. 2013); *citing Me. State Retirement Sys. v. Countrywide Fin. Corp*., No. 10–CV–302, 2011 WL 1765509, *5, 2011 U.S. Dist. LEXIS 53359, at *17 (C.D.Cal. Apr. 20, 2011)).

Parent corporations can be held liable for their own unlawful acts, the unlawful acts of subsidiary companies that act as their agents, and the unlawful acts of predecessor companies. (*See United States v. Bestfoods*, 524 U.S. 51, 64–65 (1998); *See Also Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir.2001); *Monaco v. Bear Stearns Cos.*, No. CV 09–05438–SJO (JCx), 2011 WL 4059801, *19 (C.D.Cal. Sept. 12, 2011)). Specifically, under California law, a successor company has liability for a predecessor's actions if:

> "(1) the successor expressly or impliedly agrees to assume the subject liabilities ... [;] (2) the transaction amounts to a consolidation or merger of the successor and the predecessor[;] (3) the successor is the mere continuation of the predecessor[;] or (4) the transfer of assets to the successor is for the fraudulent purpose of escaping liability for the predecessor's debts."

(*Gerritsen v. Warner Bros. Entertainment Inc.*, 116 F.Supp.3d 1104, 1127 (C.D. Cal. 2015); *citing No Cost Conference, Inc. v. Windstream Communications, Inc.*, 940 F.Supp.2d 1285, 1299 (S.D.Cal.2013); *CenterPoint Energy, Inc. v. Superior Court*, 157 Cal.App.4th 1101, 1120, 69 Cal.Rptr.3d 202 (2007); *City of Los Angeles v. Wells Fargo & Co.*, 22 F.Supp.3d 1047, 1062 (C.D.Cal.2014)).

Under scenario one, the 'de facto merger exception,' liability can attach where one corporation takes all of another's assets without providing any consideration that could be made available to meet claims of the other creditors. (*Franklin v. USX Corp.*, 87 Cal.App.4th 615, 625 (Cal. Ct. App. 2001); *citing Ray v. Alad Corp.*, 19 Cal.3d 22, 28 (Cal. 1977)).

Scenarios two and four are fairly self-explanatory, however scenario three involves a Plaintiff proving that (1) no adequate consideration was given for the predecessor corporation's assets and made available for meeting the claims of its unsecured creditors; and that (2) one or more persons were officers, directors, or

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

stockholders of both corporations. (*See CenterPoint Energy, Inc. v. Superior Court*, 157 Cal.App.4th 1101, 1120 (Cal. Ct. App. 2007)).

Federal courts within the 9th Circuit have recognized the doctrine of successor liability and otherwise discussed how a plaintiff sufficiently pleads a claim for successor liability when the allegations are sufficient to put 'the successor' on notice of the claim against them. (*See e.g. Katzir's Floor and Home Design, Inc. v. M-MLS.com*, 394 F.3d 1143, 1150 – 1151 (9th Cir. 2004); *See also Branzell v. California Cryobank LLC*, 480 F.Supp.3d 1080, 1086 (C.D. Cal. 2020); *City of Los Angeles v. Wells Fargo & Co.*, 22 F. Supp. 3d 1047, 1062 (C.D. Cal. 2014); *Grey Fox, LLC v. Plains All Am. Pipeline, L.P.*, 2019 WL 4196066, at *10 (C.D. Cal. Apr. 8, 2019).

With Defendants even confused about their own corporate structure, it comes as no surprise that Plaintiff experienced prejudice herein. Given Defendants have been utilizing incorporations to simply muddy the waters and otherwise insolate themselves from liabilities – successor liability should apply to redress this unfair and unjust purpose that Defendants are espousing through their actions.

## III.    CLOSING:

Not all cases are cut and dried or how they appear at first, second or third blush to the court. But, when the rights of a large company doing business in the United States are infringed by some convoluted entity that changes shape and form so much its "convoluted" and "vast," then a more careful look is required by the judge and its clerks, and the truth of what has taken place must become evident and justice provided, not merely the processing of a case.

Dated: November 25, 2024          GERARD FOW LAW P.C.

                                   By:    */s/ Gerard P. Fox*
                                          Gerard P. Fox
                                          Attorneys for Plaintiff *BMG Rights Management*

# **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiff BMG ("BMG") certifies that this Memorandum contains 4,530 words, which complies with the word limit of L.R. 11-6.1.

Dated: November 25, 2024                    GERARD FOW LAW P.C.

                                  By:    */s/ Gerard P. Fox*
                                         Gerard P. Fox
                                         Attorneys for Plaintiff *BMG Rights Management*

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## PROOF OF SERVICE

I, Adriana Diaz, am employed in the County of Los Angeles, in the State of California. I am over the age of 18 and not a party to the above-mentioned matter. My business address is: Gerard Fox Law P.C., 1880 Century Park East, Suite 1410, Los Angeles, CA 90067. On November 25, 2024, I served the following documents, described as: **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** on the person(s) listed in the attached Service List. The document was served by the following means:

| | |
|---|---|
| ☐ | **By United States mail**. I enclosed the document in a sealed envelope or package addressed to the people listed in the attached Service List and placed the envelope for collection and mailing following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. |
| ☒ | **By electronic service**: Based on a court order or an agreement of the parties to accept service by electronic transmission, I caused the documents to be sent to the persons at the electronic notification addresses listed in the attached Services List. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful. |

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Date: November 25, 2024                          _/s/ Adriana Diaz_
                                                                 Adriana Diaz

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

1
2

## SERVICE LIST

| | |
|---|---|
| DAVID SPENCER BLOCH<br>blochd@gtlaw.com<br>GREENBERG TRAURIG, P.A<br>101 2nd Street, Suite 2200<br>San Francisco, CA 94105-3668<br>415-590-5110<br>Fax: 415-707-2010<br><br>IAN C BALLON<br>ballon@gtlaw.com<br>REBEKAH S. GUYON<br>guyonr@gtlaw.com<br>EMERSON B LUKE<br>lukee@gtlaw.com<br>GREENBERG TRAURIG LLP<br>1840 Century Park East Suite 1900<br>Los Angeles, CA 90067<br>310-586-7700<br>Fax: 310-586-7800 | *Party Represented:*<br><br>Defendant Bigo Technology Limited, a Delaware corporation |

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT