GREENBERG TRAURIG, LLP
IAN C. BALLON (SBN 141819)
REBEKAH S. GUYON (SBN 291037)
EMERSON LUKE (SBN 307963)
1840 Century Park East, Suite 1900
Los Angeles, CA  90067
Telephone:  310-586-7700
Facsimile:  310-586-7800
E-mail:       *Ballon@gtlaw.com*
                 *GuyonR@gtlaw.com*
                 *Lukee@gtlaw.com*

GREENBERG TRAURIG, LLP
DAVID S. BLOCH (SBN 184530)
101 Second Street, Suite 2200
San Francisco, CA  94105-3668
Telephone:  415-591-5110
Facsimile:   415-707-2010
E-mail: *BlochD@gtlaw.com*

Attorneys for defendant
BIGO Technology Limited

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BMG RIGHTS MANAGEMENT (US) LLC, a Delaware limited liability company,<br><br>            Plaintiff,<br><br>v.<br><br>JOYY INC., a Delaware corporation; BIGO TECHNOLOGY LIMITED, a Delaware corporation, and DOES 1 through 25, inclusive,<br><br>            Defendants. | Case No. 2:22-cv-01578-MCS-RAO<br><br>Assigned to Hon. Mark C. Scarsi<br><br>**DEFENDANT BIGO TECHNOLOGY LIMITED'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:  12/16/2024<br>Time: 9:00 a.m.<br>Place: Courtroom 7C |

BIGO US'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

# **Table of Contents**

I.    INTRODUCTION..................................................................................................1

II.   BMG PRESENTS NO EVIDENCE TO RAISE A GENUINE DISPUTE
THAT THE LIKEE APP IS PROTECTED BY THE DMCA SAFE HARBOR .....1

   **A.   There Is No Genuine Dispute that Likee's Operator is a "Service
Provider" Within the Meaning of the DMCA.** ...................................................2

   **B.   There Is No Genuine Dispute that Likee Meets the Safe Harbor
Eligibility Requirements.** .......................................................................................3

   **C.   There Is No Genuine Dispute that Likee Satisfies the Safe Harbor
Requirements Under § 512(c)(1)-(2).** ..................................................................6

III.  IT IS UNDISPUTED THAT BIGO US DOES NOT OWN OR OPERATE
THE LIKEE APP .....................................................................................................9

   **A.   There Is No Genuine Dispute that Bigo US is Not the Operator of the
Likee App.** .............................................................................................................9

   **B.   There Is No Genuine Dispute that Bigo US is Not an Alter Ego of the
Operator of the Likee App.** .................................................................................11

     1.   BMG's new alter ego, enterprise liability, and successor liability theories
are baseless and untimely.......................................................................................11

     2.   BMG has had all relevant facts for months if not years. ...........................13

IV.   CONCLUSION..................................................................................................15

BIGO US'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*21st Century Fin. Servs., LLC v. Manchester Fin. Bank*,
  255 F.Supp.3d 1012 (S.D. Cal. Jun. 7, 2017).....................................................12

*Cole v. CRST, Inc.*,
  150 F.Supp.3d 1163 (C.D. Cal. Dec. 15, 2015)..............................................1, 11

*Gerritsen v. Warner Bros. Entm't*,
  116 F.Supp.3d 1104 (C.D. Cal. Jun. 12, 2015) ...................................................12

*Lenz v. Universal Music Group*,
  815 F.3d 1145 (9th Cir. 2016) ...............................................................................7

*Nadar & Sons, LLC v. Namvar*,
  2024 U.S. App. LEXIS 14612 (9th Cir. 2024) (unpub.) .....................................12

*Perfect 10, Inc. v. CCBill LLC*,
  488 F.3d 1102 (9th Cir. 2007) ...........................................................................3, 5

*Rosen v. eBay, Inc.*,
  2015 U.S. Dist. LEXIS 49999 (C.D. Cal. Jan. 16, 2015).....................................5

*Rosen v. PCCW Global, Inc.*,
  2010 U.S. Dist. LEXIS 153124 (C.D. Cal. Dec. 29, 2010)...............................4, 7

*Ventura Content, Ltd. v. Motherless, Inc.*,
  885 F.3d 597 (9th Cir. 2018) ..............................................................................4, 7

*Woodard v. Labrada*,
  2021 U.S. Dist. LEXIS 189649 (C.D. Cal. Aug. 31, 2021) ...............................11

**State Cases**

*Toho-Towa Co. v. Morgan Creek Prods.*,
  217 Cal. App. 4th 1096 (2013) ...........................................................................12

BIGO US'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

**Federal Statutes**

17 U.S.C. § 512(i) ...................................................................................................3

17 U.S.C. § 512(k) ..................................................................................................2

**State Statutes**

Cal Civ. Code §§ 3439 *et seq*..............................................................................12

BIGO US'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

## I.    INTRODUCTION

In its opening brief (ECF 147), Delaware corporation Bigo Technology Ltd. ("Bigo US") fully detailed why the Court should grant summary judgment against BMG Rights Management (US) LLC's sole remaining claim for contributory copyright infringement. BMG knowingly sued the wrong parties. And the undisputed facts demonstrate that the Likee social media mobile application (the "Likee app") fully complies with, and therefore is entitled to the safe harbor protections of, the Digital Millennium Copyright Act ("DMCA")—no matter who owns and operates it.

In response, BMG disregards the merits of Bigo US's motion and fails to refute the material facts supporting Likee's DMCA defense. It never explains why BMG's Mr. Hauprich sent letters to Bigo Technology Pte. Ltd. and LikeMe Pte. Ltd. (the registered agent on the Library of Congress's official DMCA list) but sued Bigo US and JOYY Inc. Instead, BMG inexplicably uses the ***entirety*** of its "legal argument" section to revisit its failed alter ego theory of liability.  *See* ECF 154 at 11-18.  But none of those theories are alleged in the operative Fourth Amended Complaint (ECF 71, the "4AC"), and "courts routinely hold that 'a plaintiff cannot oppose summary judgment based on a new theory of liability because it would essentially blindside the defendant with a new legal issue after the bulk of discovery has likely been completed." *Cole v. CRST, Inc.*, 150 F.Supp.3d 1163, 1169 (C.D. Cal. Dec. 15, 2015) (Phillips, J.) (citations omitted). There are no material facts supporting BMG's last-ditch argument that the "single enterprise rule" or "successor liability" applies here. And even if they did, the alleged "single enterprise" or "successor" *would be entitled to summary judgment based on the DMCA safe harbor*. The Court should grant summary judgment.

## II.    BMG PRESENTS NO EVIDENCE TO RAISE A GENUINE DISPUTE THAT THE LIKEE APP IS PROTECTED BY THE DMCA SAFE HARBOR

In its summary judgment motion, Bigo US presented undisputed facts demonstrating that the Likee app meets the safe harbor criteria under the DMCA, which

forecloses BMG's claims as a matter of law. BMG does not meaningfully dispute any of these facts in its opposition. **First,** the undisputed evidence shows that—from the time BMG issued its first takedown notice to "copyright@likee.video" in December 2022— Likee's operator expeditiously disabled access to the allegedly infringing material. **Second**, BMG proffers no evidence that Likee's operator receives a financial benefit attributable to the alleged infringement, nor that Likee's operator was in any way involved in suggesting the use of unlicensed works. And ***third***, it is undisputed that Likeme Pte. Ltd. is the designated agent registered with the U.S. Copyright Office website. BMG points to no *facts* sufficient to raise genuine issues of fact on any of these points. The Likee app is fully compliant with the DMCA; its owner and operator therefore is fully protected by the DMCA safe harbor.

**A.** **There Is No Genuine Dispute that Likee's Operator is a "Service Provider" Within the Meaning of the DMCA.**

BMG failed to raise a genuine factual dispute over whether Likee's operator is a "service provider" as defined by the DMCA safe harbor. 17 U.S.C. § 512(k)(1)(B). In its response to Bigo US's Statement of Uncontroverted Facts (ECF 154-1, "SUF Response"), BMG simply "denies" this fact and asserts that "[t]hree or four entities have operated Likee and for the majority of the time this lawsuit was pending several of the many Bigo entities operated it." ECF 154-1 at 5. That assertion, coming from BMG's in-house counsel with no firsthand knowledge, is not evidence. But even if it were true, the number of alleged operators is not at all germane to whether Likee's operator is a "provider of online services or network access, or the operator of facilities therefor." § 512(k)(1)(B). BMG does not even address—and has not otherwise provided contrary evidence to dispute—the fact that "Likee … is a social media application based on user-generated short video content" (*see* ECF 71 ¶ 4; ECF 99 at 2), and "[t]hrough the application, Likee's operator provides an 'intermediary platform developed by LIKEME PTE. LTD ('LIKEME') for users to record and share wonderful moments of life' for millions of

creators" (*see* ECF 141-2). There is no genuine dispute that Likee's operator falls within the broad definition of "service provider" under the DMCA. ECF 148-1, Bigo US's Statement of Uncontroverted Facts and Conclusions of Law ("SUF") ¶ II.1.

**B.    There Is No Genuine Dispute that Likee Meets the Safe Harbor Eligibility Requirements.**

BMG also fails to present any relevant or admissible evidence that raises a genuine dispute that the Likee app meets the requisite conditions for DMCA safe harbor eligibility. It is undisputed that Likee maintained a repeat infringer policy, did not prevent BMG from collecting information needed for DMCA notices, and did not block standard technical measures; and likewise it is undisputed that Likee reasonably implemented its DMCA infringer policies.

***First,*** BMG admits that "Likee's operator has adopted and informed its users of a repeat infringer policy" as required by 17 U.S.C. § 512(i)(1)(A). SUF Response ¶ II.2 ("Admit that in a boilerplate posting on Likee some type of repeat infringer policy is stated. Nothing more."). Despite its quibble, BMG does not care to allege what more it thinks was required. Nor does BMG dispute that "[a]t all relevant times, Likee's repeat infringer policy was publicly posted as part of its Intellectual Property Policy," which included specific "Repeat Infringement" disclosure terms and further Community Guidelines outlining the applicable penalties for violations. ECF 147 at 16-17; SUF ¶ II.2.

Furthermore, BMG does not allege that Likee's operator actively prevented copyright owners from collecting information needed to issue DMCA notifications. *See generally* 4AC (ECF 71); *see also Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1109 (9th Cir. 2007) ("*CCBill*"). BMG only says that "[f]or a long time, the operators of the Likee app failed to designate a DMCA agent." SUF Response ¶ II.9. Setting aside the facts that BMG did not even send a DMCA-compliant notice until *after* the lawsuit was pending (ECF 71-1), that it only sent DMCA notices at all because this Court directed it

1    to (ECF 51), and that the Likee app had a listed DMCA agent[1] at all times relevant to

2    BMG's complaint (ECF 141-3), BMG completely disregards the fact that each of the

3    Intellectual Property Policy and Community Guidelines has *always* informed users of the

4    proper procedures for notifying Likee's operator of any infringing activity on the app,

5    including email correspondence to Likeme Pte. Ltd. at copyright@likee.video. ECF 147

6    at 17; SUF ¶ II.9 (citing to BIGO0000263-266, screenshots of the Likee app user interface

7    for reporting music copyright violations). BMG has presented no contrary evidence to

8    dispute this material fact.

9        Relatedly, there is still nothing in the record to indicate that Likee's operator

10   interfered with any standard technical measure that BMG could use to identify or protect

11   copyrighted works. § 512(i)(1)(B); *see also Ventura Content, Ltd. v. Motherless*, Inc.,

12   885 F.3d 597, 615 (9th Cir. 2018) (defining standard technical measures as "enabl[ing]

13   copyright owners to establish some technical means so that service providers can spot

14   and exclude infringing material without substantial expense"). In response to this

15   conclusion of law, BMG makes a perfunctory denial based on the allegation that "Bigo

16   operators of the Likee App never enforced a repeat infringer policy so none of these

17   provisions apply in this instance." SUF Response to Conclusion of Law ¶ 5. BMG's

18   denial misses the mark and—critically—fails to dispute the fact that BMG, *by its own*

19   *allegations*, demonstrated it was capable of collecting and submitting notices of alleged

20   infringing works on the Likee app. ECF 147 at 18 (citing takedown notices included as

21   exhibits to 4AC, ECF 71-1); *see also Rosen v. PCCW Global, Inc.*, 2010 U.S. Dist.

22   LEXIS 153124, *8 (C.D. Cal. Dec. 29, 2010) (Wright, J.) ("*Rosen I*") (noting that the

23   copyright holder "availed himself of [the ISP]'s DMCA Policy by sending his own

24   DMCA notices without difficulty in obtaining information needed to issue such notices").

25

26

27   _____

     [1] Likeme Pte. Ltd., *not* Bigo US. SUF ¶ II.15.

28

**Second,** there is no genuine dispute as to whether Likee's repeat infringer policy was reasonably implemented. BMG does not proffer any legal authority or specific facts and, instead, makes the unsupported allegation that "[t]he operators of Likee simply take down the video" and "they do not remove the infringing audio." SUF Response ¶ II.3. BMG cites to in-house counsel Mr. Hauprich's deposition for this statement (at page numbers and lines 31:6 – 34:4), but the corresponding testimony provides no foundation for that allegation. ECF 154-2 at 108-11 (Ex. L to the Declaration of Gerald P. Fox) (testimony regarding BMG's October 5, 2020 letter and confirming it was emailed to feedback@likee.video).[2] Setting aside the impracticability of taking down only the video portion without removing the allegedly infringing audio (if anything, the Likee app sometimes mutes the *audio* and leaves the *video* intact, *see* SUF ¶ 11.12), and ignoring the fact that the Hauprich testimony lacks foundation and contradicts BMG's oft-repeated complaint that allegedly infringing links have been replaced with a "splash page" (*compare* ECF 71 ¶¶ 90-91 *with* SUF ¶ II.12), BMG's response is irrelevant to the question of whether Likee's operators reasonably implemented a repeat infringer policy. *See CCBill*, 488 F.3d at 1109 ("an implementation is reasonable if, under 'appropriate circumstances,' the service provider terminates users who repeatedly or blatantly infringe copyright."); *Rosen v. eBay, Inc.*, 2015 U.S. Dist. LEXIS 49999, at *20 (C.D. Cal. Jan. 16, 2015) (Fitzgerald, J.) ("the case law is clear that § 512(i) does not require that a service provider reveal its decision-making criteria to its users," nor does "the implementation of a policy need [to] be perfect to render it sufficient[.]").

---

[2] Similarly, in the corresponding response to Conclusion of Law No. 4, BMG bases its opposition on the mere allegation that "[w]riting [a repeat infringer policy] in boilerplate does not meet the standards of the law alone." ECF 154-1 at 12 (citing to Hauprich Dep. at 25:23–26:23). Not only does BMG fail to specify a legal standard that it believes Likee's operator failed to meet (nor can it), the relevant testimony simply confirms BMG's group exhibit that was filed with its 4AC—it does not dispute Likee's policy or that challenged music files were removed. ECF 154-2 at 105-106.

In addition, as detailed in Bigo US's motion, Likee's operator suspended numerous users for copyright-law violations in accordance with its repeat infringer policy. ECF 147 at 17-18 (citing Bigo Supp. Response to Interrogatory 21). This includes user HouseOfBrooklyn— the only Likee account that BMG has ever specified over two and a half years of litigation—who was suspended for a two-week period in September 2023. *See* ECF 147-4 at 10-11 ("Regarding the only individual Likee user identified in BMG's Fourth Amended Complaint, user HouseOfBrooklyn was suspended for a two-week period, 9/5/2023-9/19/2023, for "Music Copyright Infringement" pursuant to Likee's repeat-infringer policies"). BMG offers no contrary facts or evidence to dispute these suspensions or to otherwise raise a genuine issue of fact as to whether Likee's operator reasonably implemented its repeat infringer policy.

## C.  There Is No Genuine Dispute that Likee Satisfies the Safe Harbor Requirements Under § 512(c)(1)-(2).

BMG has further failed to present any evidence that raises a genuine factual dispute over whether the Likee app meets the safe harbor requirements under § 512(c)(1) and (2).

***First,*** the record corroborates the undisputed fact that Likee's operator did not have prior knowledge of alleged infringing activity. BMG has repeatedly admitted that it did not send an actionable DMCA-compliant letter until December 2022. SUF Response ¶ II.14 (admitting that "BMG did not submit a DMCA-compliant notice until December 29, 2022, nine months after it initiated this lawsuit"). And while in the summary judgment process BMG refused to concede that "BMG's October 5, 2020 takedown notice was submitted to feedback@likee.video without any specification or detail regarding any infringing work on the Likee app," *see* SUF Response ¶ II.13, BMG previously admitted the same facts in discovery. ECF 147-2 (BMG Responses to Bigo RFAs 15-17).

Nor has BMG presented any evidence that, in response to each DMCA-compliant notice, Likee's operator failed to expeditiously disable access to the allegedly infringing material. For example, while denying that "Likee's operator responded to each DMCA

compliant takedown notice," BMG provides only the conclusory statement that "[t]he responses were mostly inaccurate, and no response did what was required by law." SUF Response ¶ II.11; *see also id.* ¶ II.12 (summarily denying, without explanation, that "Likee's operator disabled access to the specified works by displaying a splash page [] or by muting the audio on the specified videos"). BMG errs first by disregarding the fact that the letter-responses provided by Likee's operator, within just a day or two of each notice, were courtesy responses that were not legally required. More critically, BMG disregards the actual legal standard, which requires that "the service provider 'expeditiously' removes or *disables access to the content* after receiving [proper] notification." *Lenz v. Universal Music Group*, 815 F.3d 1145, 1151 (9th Cir. 2016) (emphasis added). This is exactly what Likee's operator did. *See* SUF ¶¶ II.11-12 (citing to 4AC, ECF 71-1, and ECF 83-1 ¶¶ 3-6 (Exs. 1-4)); ECF 88 at 7:22-8:21; ECF 147-4 (Bigo Supp. Response to Interrogatory 20). Mr. Hauprich's actual testimony simply does not support BMG's denial of these facts. At best, BMG has offered "[c]onclusory, speculative testimony," which is "insufficient to raise genuine issues of fact and defeat summary judgment." *Rosen I*, 2010 U.S. Dist. LEXIS 153124, at *5.

***Second,*** BMG admits that Likee's operator does not control or receive a direct financial benefit from the alleged infringing activity. *See* SUF Response to Conclusion of Law ¶ 10.[3] To the extent that BMG provides an inconsistent response to SUF ¶ II.4—denying that "Likee's operator does not exercise control over the Likee app other than by general operation of its website"—its statement runs counter to this Court's Order (ECF

---

[3] While BMG tries to qualify this admission by alleging that Likee's operator did not enforce its repeat offender policy, that is not germane to the question of whether Likee's operator was "able to exert 'substantial influence' on its users' activities," which "involves something more than the ability to remove or block access to materials posted on [the Likee app]." SUF Conclusion of Law ¶ 10, citing *Ventura Content*, 885 F.3d at 613. BMG further relies on Mr. Hauprich's testimony for its response but, again, only refers to testimony confirming BMG's exhibit to its 4AC. SUF Response to Conclusion of Law ¶ 10.

99) and is only supported by the unrelated allegation that "[t]he operator of Likee is a single enterprise comprised of three Bigo companies." SUF Response ¶ II.4. It also is inconsistent with BMG's admission that "Likee's users … select the actual songs for use in their videos and upload every work, not Likee's operator." SUF Response ¶ II.5.

Nor does BMG raise a genuine dispute over the fact that Likee's operator does not generate any revenue that is ***distinctly*** attributable to the alleged unlicensed works or that Likee's users were drawn to the app ***specifically*** to access BMG's alleged copyrighted materials. *See* ECF 99 at 6 ("the allegation that Defendant encourage uploading better music *does not mean* Defendants encourage uploading *Plaintiff's* copyrighted music.") (emphasis added). BMG's responses refer back to the 4AC but do not point to facts developed in discovery—because there are none. *See* SUF Response ¶¶ II.6-8 (citing only to "ECF #71 and/or Ex. X to Decl. of Mr. Fox," wherein Ex. X is a copy of the 4AC). There is no factual basis to support a finding that Likee's operator derives revenue distinctly attributable to BMG's alleged music.

***Third,*** there is no genuine dispute that there is a designated agent to receive Likee takedown notifications pursuant to § 512(c)(2). SUF Response ¶ II.15 (admitting that the specified information for Likeme Pte. Ltd "is the email address to which [BMG] sent take down notices starting in early 2023");[4] *see also* ECF 147-4 (BMG Responses to RFAs 1-4); ECF 147-13 (Hauprich Rough Tr. at 28-29)[5]; SUF ¶ II.15 (citing ECF 141-3).

***

---

[4] BMG's response also asserts that "Bigo executives then called Mr. Hauprich to announce themselves as senior executives of Bigo in charge of addressing these issues." SUF Response ¶ II.15 (citing to Hauprich Dep. at 63:7–64:3). BMG does not explain why this outreach relates to the identify of the *registered agent*, and also once again ignores the distinction—a distinction the Court has explained in detail—between Bigo *US* and Bigo *SG*.  *See* ECF 142 at 2-3.

[5] Pages 38:19–39:16 of the final Hauprich transcript.

In short, there is no disputed issue of fact that the Likee app complies with the DMCA in all material respects and at all relevant times.  Accordingly, its operator is entitled to DMCA immunity and summary judgment should be granted.

## III.   IT IS UNDISPUTED THAT BIGO US DOES NOT OWN OR OPERATE THE LIKEE APP

### A.    There Is No Genuine Dispute that Bigo US is Not the Operator of the Likee App.

BMG fails to present any legitimate challenge to the fact that Likee's owner and operator is **not** Bigo US or Joyy Inc. Nor has BMG presented any legitimate rationale as to why it pursued the wrong parties for the entirety of this litigation. Indeed, as we near the three-year mark of this action, BMG's allegation on this issue still amounts to information and belief. *See* ECF 154 at 9 ("It appears that **maybe at some point, some hand** that runs these companies **might have** moved the work being done by Bigo to another company **or at least** some paper company in Singapore.") (emphasis added). BMG further alleges, without evidence and in a conclusory manner, that "for most of this litigation if not nearly all of it, Bigo has run the Likee app, and the evidence presented makes that clear." There is no proof at all of that assertion.  Instead, what the evidence makes clear is that: (1) Bigo US dissolved before the proof of service of the summons and complaint was filed in this action; (2) Joyy Inc. dissolved years before BMG even submitted its first notice of alleged infringement; (3) there is no discernible relationship between Bigo US and Joyy Inc.; and (4) BMG knew of and interacted directly with Likee's designated agent, Likeme Pte. Ltd., even before it commenced this action:



ECF 71-1 at 1-2 (BMG's first notice, dated October 5, 2020, directed to Bigo *SG*).



*Id*. at 6 (BMG's first DMCA-compliant notice, dated December 29, 2022, directed to LikeMe Pte. Ltd., Likee's registered DMCA agent).

**B.**      **There Is No Genuine Dispute that Bigo US is Not an Alter Ego of the Operator of the Likee App.**

Instead of responding to the MSJ on the merits, BMG uses its opposition to improperly introduce new theories of liability. As with the belated alter ego theory, "courts routinely hold that 'a plaintiff cannot oppose summary judgment based on a new theory of liability because it would essentially blindside the defendant with a new legal issue after the bulk of discovery has likely been completed." *Cole*, 150 F. Supp. 3d at 1169; *see also Woodard v. Labrada*, 2021 U.S. Dist. LEXIS 189649, **83-84 (C.D. Cal. Aug. 31, 2021) (Bernal, J.) (granting summary judgment where "[t]he FAC ma[de] no allegations of alter ego liability that would have placed [the] Defendants on notice of such a theory"—"Plaintiffs cannot oppose summary judgment on a theory of liability not alleged in the FAC"). Not only did BMG fail to allege its new theories of the single enterprise rule, California's Uniform Voidable Transactions Act ("UVTA"), and successor liability rule in the 4AC (or in the recently denied second attempt at a fifth amended complaint, *see* ECF 153), the opposition to the MSJ is the ***very first*** instance that BMG made the foregoing allegations, and they must fail on that basis alone.

1. **BMG's new alter ego, enterprise liability, and successor liability theories are baseless and untimely.**

Even if BMG's new theories are timely (they are not), there is no rational basis for which BMG could pursue them.

***First,*** the single enterprise rule was part of BMG's presentation of the alter ego theory in its IDC brief. ECF 137 at 2-4 (alleging that "The Entities operate as an Alter Ego/Single-Enterprise for Affiliated/Sister Companies"). This Court has already ruled that this theory should not apply here. ECF 142 at 3 ("BMG has not shown that Bigo US is an alter ego of Bigo SG or any of the other third party entities."). BMG should not be permitted to revive this theory under a different heading.

Further, BMG's own allegations about the supposedly vast and confusing nature of Bigo US would preclude application of the single enterprise theory, which "exists to hold 'one corporation liable for the debts of another affiliated corporation' when the 'latter is so organized and controlled, and its affairs are so conducted, as to make it merely an instrumentality, agency, conduit, or adjunct of another corporation." *Nadar & Sons, LLC v. Namvar*, 2024 U.S. App. LEXIS 14612, *10 (9th Cir. 2024) (unpub.) (citing *Toho-Towa Co. v. Morgan Creek Prods.*, 217 Cal. App. 4th 1096, 1107 (2013)). Moreover, BMG cannot use the single enterprise theory to fill essential evidentiary links that it lacks. *Id*. (citing *21st Century Fin. Servs., LLC v. Manchester Fin. Bank*, 255 F.Supp.3d 1012, 1026 (S.D. Cal. 2017) ("declining to use single enterprise theory to 'fill the evidentiary gap' in a plaintiff's case")).

**Second,** BMG, a New York entity, is suing Bigo US, a dissolved Delaware entity, asserting federal-question jurisdiction. BMG provides no rationale as to why or how a theory of liability arising out of California debtor and creditor laws applies here. Cal Civ. Code §§ 3439 *et seq*. Even on the substance of the law, a UVTA claim gives rise to a claim for relief based on some "fraudulent obligation" that is incurred "where a debtor coneys title to an asset and, in exchange, incurs an obligation in the form of a mortgage, loan, or other instrument that turns out to be fraudulent." *Nadar & Sons, LLC*, 2024 U.S. App. LEXIS 14612, at *8. This is a case brought under federal copyright law, and BMG has no feasible claim to any incurrence of a fraudulent obligation—there is no factual scenario in which the UVTA would apply here.

**Third,** BMG's theory of successor liability is inapposite. Setting aside the fact that BMG is again trying to apply California law where this case arises out of federal copyright law, and none of the cases that BMG relies on is in fact a copyright case, the allegations are wholly deficient to meet the essential pleading standard as established in the authority cited by BMG. *See, e.g.*, *Gerritsen v. Warner Bros. Entm't*, 116 F.Supp.3d 1104, 1128 (C.D. Cal. Jun. 12, 2015) (Morrow, J) (holding that "conclusory allegations

regarding unspecified terms of a purported agreement are insufficient to allege a plausible successor liability claim based on an express assumption of liabilities"). To the extent BMG denies the statement that "Bigo US was a Delaware corporation and subsidiary of Bigo Technology Pte. Ltd," it seems doubly clear that BMG's belated theory of successor liability should fail where, in BMG's view, there is no parent/subsidiary relationship. SUF Response ¶ I.1. BMG cannot have it both ways.

**Finally,** even assuming that BMG's new theories are timely and meritorious, BMG's underlying contributory copyright infringement claim would still fail as against any single enterprise Bigo entity because the Likee app is protected by the DMCA safe harbor. BMG has decided not to respond to the merits of the material facts supporting Likee's DMCA defense and waived any argument that it failed to raise in its opposition by focusing solely on untimely theories of liability.

### 2. BMG has had all relevant facts for months if not years.

BMG alleges that it learned "[a]t the deposition of Keith Hauprich only weeks ago ... that executives who run the Bigo and JOYY entities cause [Bigo US] to be suspended." ECF 154 at 8. That is not true. The document in question, Exhibit 3 to Mr. Hauprich's deposition and submitted to the Court as ECF 147-8, was produced months ago as BIGO0000002. It is, moreover, a public record from the Delaware Secretary of State (which BMG could have accessed at any time over the last two-plus years) that was presented to the Court for judicial notice in early October. ECF 141-5. As the Court noted in an earlier Order, "BMG appears to have been fully aware of Bigo SG since before the inception of this lawsuit. … This is not a situation where a party has hidden the existence of a related entity such that the time to either add that related entity as a party or to seek third-party discovery has run out." ECF 142 at 3-4. And BMG has been aware that Bigo US was defunct since *at least* Bigo US's initial responses to discovery in July. *See* ECF 147-6 (Bigo US Response to BMG Interrogatory No. 7).

BIGO US'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT          13

These facts are also entirely distinguishable from the facts of *McCandless Group, LLC v. The Coy Collective, Inc., et al.*, Case No. LA CV 21-02069-DOC-(KESx), which BMG relies on to argue that it is entitled to yet another bite at the apple through an amended complaint. ECF 154 at 10-11. There, information regarding certain asset transfers between different entities and their relationship was discovered through deposition, which defendants allegedly failed to previously disclose. *McCandless Group*, ECF 179 at 8. Here, the allegedly "new" information was not only publicly available at all times, it was produced by Bigo US directly to BMG. *See also* ECF 142 at 2-4 (acknowledging that Bigo US made the appropriate corporate disclosures "[f]rom its first appearance in this case"). "This is not a situation where a party has hidden the existence of a related entity until such that the time to either add that related entity as a party or to seek third-party discovery has run out." *Id.*

BMG further alleges that the referenced exhibit from the Hauprich deposition "did not say the company was dissolved or terminated, but rather their status was suspended." ECF 154 at 8. This is plainly wrong. The face of the document shows that the entity status is ***surrendered***—not suspended as BMG alleges—and the very first listed entry in the filing history section (in reverse chronological order) is that a "Dissolution – Short Form" was filed in March 2022. BMG cannot create new facts where they simply do not exist. *See also* SUF Response ¶ I.2 (inexplicably denying that "Bigo US dissolved on March 15, 2022" as evidenced by BIGO0000002). At best, BMG's allegations are an implied admission that it has not reviewed any evidence produced by Bigo US in this matter; at worst, they are indicative of a blatant disregard of any fact that does not serve BMG's shifting theory of the case. The Court should deny BMG's backdoor attempt to revive its alter ego theory.

//

//

//

1

## IV.    CONCLUSION

2        This case has lingered far too long.  The Court has given BMG every opportunity

3  – directing it to issue DMCA takedown notices rather than dismissing its initial complaint

4  (ECF 51), allowing it to file *five* complaints despite repeated violations of the local rules

5  (*e.g.*, ECFs 87, 114, 128, 134, 151, 153)[6] – to prove that it has a viable claim.  It does not.

6  Bigo US has nothing to do with the Likee app, and the app's owner and operator is fully

7  compliant with and therefore protected by the DMCA.  Bigo US respectfully requests

8  that the Court grant summary judgment against BMG's sole remaining claim for

9  contributory copyright infringement.

10

11  DATED: December 2, 2024             GREENBERG TRAURIG, LLP

12

13                              By    */s/ David S. Bloch*

14                                    Ian C. Ballon
                                      Rebekah S. Guyon
15                                    David S. Bloch

16                                    Attorneys for Defendant BIGO Technology
                                      Limited
17

18

19

20

21

22

23

24

25

---

26  [6] Even its opposition, ECF 154, fails to comply with Local Rule 11-6.1.  *Cf.* ECF 153 at

27  1 n. 1 ("If Plaintiff files another document that is not compliant with this Court's rules, the Court will order Plaintiff to show cause as to why sanctions are not warranted.").

28

## **WORD COUNT CERTIFICATION [L.R. 11-6.2]**

Pursuant to Local Rule 11-6.1, the undersigned certifies that this brief contains 4,672 words (not including captions and signatures) as counted by Microsoft Word's word-count feature.

DATED: December 2, 2024                    GREENBERG TRAURIG, LLP

                                    By    /s/ David S. Bloch
                                          David S. Bloch

                                          Attorney for Defendant BIGO Technology
                                          Limited